1  COOLEY LLP
   TRAVIS LEBLANC (251097) (tleblanc@cooley.com)
2  MATTHEW D. BROWN (196972) (brownmd@cooley.com)
   3 Embarcadero Center
3  20th Floor
   San Francisco, CA 94111
4  Telephone: (415) 693-2000
   Facsimile: (415) 693-2222
5
   TIANA DEMAS (*pro hac vice*) (tdemas@cooley.com)
6  110 N. Wacker Drive, Suite 4200
   Chicago, IL 60606
7  Telephone: (312) 881-6500
   Facsimile: (312) 881-6598
8
   BARRETT J. ANDERSON (318539) (banderson@cooley.com)
9  10265 Science Center Drive
   San Diego, CA 92121
10 Telephone: (858) 550-6000
   Facsimile: (858) 550-6420
11
   *Attorneys for Defendant AARP*
12

13              UNITED STATES DISTRICT COURT NORTHERN

14                     DISTRICT OF CALIFORNIA

15                        OAKLAND DIVISION

16

17 JAN MARKELS and ALLEN ZIMAN,          Case No. 4:22-cv-05499-YGR
   individually and on behalf of all others
18 similarly situated,                    **DEFENDANT AARP'S NOTICE OF MOTION
                                          AND MOTION TO DISMISS THE COMPLAINT**
19              Plaintiffs,
                                          Hearing:     February 21, 2023
20      v.                                Time:        2:00 P.M.
                                          Courtroom:   1– 4th Floor
21 AARP,                                  Judge:       Hon. Yvonne Gonzalez Rogers

22              Defendant.                Action Filed: September 27, 2022
                                          Trial Date:   Not Assigned
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

    A.    AARP and Its Website .............................................................. 3

    B.    The Meta Pixel ......................................................................... 4

    C.    Plaintiffs ................................................................................... 5

    D.    The Complaint .......................................................................... 5

LEGAL STANDARD ................................................................................................ 6

ARGUMENT .............................................................................................................. 7

    I.    The Complaint Fails to Plead a Facially Plausible VPPA Claim ........................... 7

        A.    Plaintiffs fail to allege a disclosure that "concerned" them as "consumers" ........................................................................... 7

        B.    AARP is not a "video tape service provider" ........................... 10

            1.    Plaintiffs do not adequately allege that AARP.org hosts "prerecorded video cassette tapes or similar audio visual materials" .......................................................................... 10

            2.    The Complaint fails to plead that AARP is "in the business of" renting, selling, or delivering video content ..................... 11

        C.    AARP did not knowingly disclose Plaintiffs' PII ..................... 12

            1.    Plaintiffs fail to allege "personally identifiable information" ....... 12

            2.    Plaintiffs fail to allege that AARP disclosed information "knowingly" .................................................................... 14

        D.    VPPA's "ordinary course of business" exception applies ......... 15

    II.    Plaintiffs Fail to Allege a California UCL Violation ................................. 16

        A.    Plaintiffs do not have standing under the UCL ......................... 16

        B.    The Complaint does not state a UCL "unlawful" claim ............. 17

        C.    The Complaint does not state a UCL "unfair" claim .................. 17

    III.    Plaintiffs Fail to Allege a Rhode Island DTPA Violation ......................... 19

    IV.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed ..................... 20

    V.    The Complaint Must Be Dismissed Under Rule 8 ................................. 21

    VI.    The Complaint Is Wholly or Partly Time-Barred ................................. 22

        A.    Plaintiffs fail to allege when any alleged disclosure occurred ..... 22

        B.    Plaintiffs cannot invoke the discovery rule or fraudulent concealment doctrine ............................................................ 24

CONCLUSION ........................................................................................................ 25

**Page(s)**

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
   529 F. Supp. 3d 1059 (N.D. Cal. 2021) ...................................................................... 20

*In re Aftermarket Filters Antitrust Litig.*,
   2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)................................................................ 20

*Ambrose v. Boston Globe Media Partners LLC*,
   2022 WL 4329373 (D. Mass. Sept. 19, 2022) ............................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................... 6

*Austin-Spearman v. AMC Network Ent. LLC*,
   98 F. Supp. 3d 662 (S.D.N.Y. 2015)............................................................................. 8

*Barreiro v. Jef Booth, P.C.*,
   2009 WL 982412 (D.R.I. Apr. 10, 2009) .................................................................... 20

*Bautista v. Los Angeles Cnty.*,
   216 F.3d 837 (9th Cir. 2000) ......................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 6

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
   2017 WL 3727230 (S.D.N.Y. Aug. 11. 2017) ............................................................ 14

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
   688 F. Supp. 2d 940 (N.D. Cal. 2010) ........................................................................ 25

*Boudreau v. Automatic Temperature Controls, Inc.*,
   212 A.3d 594 (R.I. 2019) ............................................................................................ 23

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) ................................................................ *passim*

*Brown v. Madison Reed, Inc.*,
   2022 WL 3579883 (N.D. Cal. Aug. 19, 2022)...................................................... 24, 25

*California Sansome Co. v. U.S. Gypsum*,
   55 F.3d 1402 (9th Cir. 1995) ...................................................................................... 24

*Calip v. M.E.I.C.*,
   2015 WL 5996365 (N.D. Cal. Oct. 15, 2015)............................................................. 23

*Cappello v. Walmart Inc.*,
2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ........................................................ 16

*Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal.4th 163 (1999) ...................................................................................... 17, 18

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ............................................................................................. 10

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ................................................................................... 6

*Comet Theatre Enterprises, Inc. v. Cartwright*,
195 F.2d 80 (9th Cir. 1952) ................................................................................. 21

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013) ............................................................................... 6

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ................................................................................. 6

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ......................................................................... 17, 18

*Diaz v. Wells Fargo Bank*,
2015 WL 7180617 (N.D. Cal. Nov. 16, 2015) ..................................................... 22

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ..................................................................... 7, 12, 13

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) ............................................................................. 9

*Ellis v. Cartoon Network, Inc.*,
2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ........................................................ 13

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ......................................................................................... 10

*Erickson v. Pardus*,
551 U.S. 89 (2007) ................................................................................................. 6

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................. 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) ............................................................................................ 24

*Gollehon v. Mahoney*,
626 F.3d 1019 (9th Cir. 2010) ............................................................................... 10

*In re Google Assistant Priv. Litig.*,
546 F. Supp. 3d 945 (N.D. Cal. 2021) ................................................................... 17

*Hensler v. City of Glendale*,
8 Cal.4th 1 (1994) .................................................................................................. 22

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ............................................................................ 17, 18

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ................................................................... 14

*In re Hulu Priv. Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ............................................ 9, 11, 14

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ...................................................... 16

*Janda v. T-Mobile, USA, Inc.*,
2009 WL 667206 (N.D. Cal. Mar. 13, 2009) ........................................................ 19

*Johnson v. Glock, Inc.*,
2021 WL 1966692 (N.D. Cal. May 17, 2021) .................................................. 24, 25

*Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*,
2017 WL 4286577 (C.D. Cal. Sept. 20, 2017) ...................................................... 21

*Kelley v. Cowesett Hills Associates.*,
768 A.2d 425 (R.I. 2001) ....................................................................................... 19

*Kennedy v. Acura*,
2002 WL 31331373 (R.I. Super. Aug. 28, 2002) ................................................... 22

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal.4th 1134 (2003) .......................................................................................... 21

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 (2011) ............................................................................................ 16

*Laccinole v. Assad,*
2016 WL 868511 (D.R.I. Mar. 7, 2016) .................................................................. 19

*Lebakken v. WebMD, LLC,*
2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ......................................................... 12

*Louth v. NFL Enterprises LLC,*
2022 WL 4130866 (D.R.I. Sept. 12, 2022) ............................................................. 12

*Low v. Linkedin Corp.,*
2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ....................................................... 17

*Low v. LinkedIn Corp.,*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................... 9

*Merck & Co. v. Reynolds,*
559 U.S. 633 (2010) ................................................................................................ 23

*Mir v. City of Torrance,*
2018 WL 6133712 (C.D. Cal. Oct. 17, 2018) ........................................................ 21

*Mollett v. Netflix, Inc.,*
2012 WL 3731542 (N.D. Cal. Aug. 17, 2012) ....................................................... 14

*In re Nickelodeon Consumer Priv. Litig.,*
2014 WL 3012873 (D.N.J. July 2, 2014) ............................................................... 13

*Norgart v. Upjohn Co.,*
21 Cal.4th 383 (1999) ............................................................................................. 23

*O'Donnell v. U.S. Bancorp Equip. Fin., Inc.,*
2010 WL 2198203 (N.D. Cal. May 28, 2010) ....................................................... 22

*Perry v. Cable News Network, Inc.,*
854 F.3d 1336 (11th Cir. 2017) ......................................................................... 8, 13

*Robinson v. Disney Online,*
152 F. Supp. 3d 176 (S.D.N.Y. 2015) .................................................................... 13

*Rodriguez v. Sony Comput. Ent. Am.,*
LLC, 801 F.3d 1045 (9th Cir. 2015) ...................................................................... 15

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
72 Cal. App. 4th 861 (1999) ................................................................................... 18

*Simila v. Am. Sterling Bank*,
2010 WL 3988171 (S.D. Cal. Oct. 12, 2010) ........................................................ 18

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ............................................................................... 6

*Stark v. Patreon, Inc.*,
2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) ........................................... 11, 12, 13

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............................................................................ 6

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ......................................................................... 15, 16

*Tatro v. Sterling Jewelers, Inc.*,
2018 WL 11395478 (S.D. Cal. Mar. 8, 2018) ...................................................... 22

*Throneburg v. Charter Commc'ns, Inc.*,
2019 WL 5085872 (E.D. Mo. Oct. 10, 2019) ................................................. 23, 25

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ........................................................................... 16

*Vasconcellos v. Sara Lee Bakery*,
2013 WL 4014520 (N.D. Cal. Aug. 5, 2013) ...................................................... 21

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................... 9, 11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................................ 22

*Wilson v. Triller, Inc.*,
2022 WL 1138073 (S.D.N.Y. Apr. 18, 2022) ..................................................... 13

*Wu v. Sunrider Corp.*,
793 F. App'x 507 (9th Cir. 2019) ...................................................................... 24

**Statutes & Rules**

18 U.S.C.
§ 2710 .......................................................................................................... 1, 5
§ 2710(3) ........................................................................................................ 22
§ 2710(a)(1) ................................................................................................. 8, 9
§ 2710(a)(2) .................................................................................................... 15
§ 2710(a)(3) ............................................................................................... *passim*
§ 2710(a)(4) .................................................................................................... 10
§ 2710(b)(1) ....................................................................................... 8, 12, 14
§ 2710(b)(2)(E) .............................................................................................. 15

Cal. Bus. & Prof. Code
§ 17200 .................................................................................................... 5, 18
§ 17204 ........................................................................................................... 16
§ 17208 ........................................................................................................... 22

Cal. Civ. Code
§ 1798.100(a) ................................................................................................. 18
§ 1798.140(c) ................................................................................................. 18

Cal. Civ. Proc. Code
§ 338 ............................................................................................................... 22
§ 338(a) .......................................................................................................... 22

California Consumer Privacy Act of 2018 .................................................... 18

California Consumers Legal Remedies Act ................................................... 17

California Unfair Competition Law ....................................................... *passim*

Fed. R. Civ. P.
8 ............................................................................................................ *passim*
8(a)(2) .............................................................................................................. 6
9(b) ................................................................................................................. 24
12(b)(6) .................................................................................................... 1, 1, 6
23(b) ............................................................................................................... 22

R.I. Gen. Laws
§ 6-13.1-1 ........................................................................................................ 5
§ 6-13.1-2 ...................................................................................................... 19
§ 9-1-14(b) ..................................................................................................... 22

Rhode Island Deceptive Trade Practices Act ....................................... *passim*

Stored Communications Act ......................................................... 9

Video Privacy Protection Act ................................................. *passim*

**Other Authorities**

Stephen Advokat, *Publication of Bork's Video Rentals Raises a Privacy Issue*,
    Chi. Tribune (Nov. 20, 1987) .................................................. 7

Black's Law Dictionary (6th ed. 1990) ........................................ 10

S. Rep. No. 100-599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342 .................................... *passim*

Cooley LLP
Attorneys at Law
San Francisco

**NOTICE OF MOTION**

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**:

      **PLEASE TAKE NOTICE** that on February 21, 2023, at 2:00 p.m., or as soon thereafter as this matter may be heard, at the Oakland Federal District Courthouse, 1301 Clay Street, Courtroom 1, Fourth Floor, Oakland, CA 84612 before the Honorable Yvonne Gonzalez Rogers, Defendant AARP will and does hereby move this Court (the "Motion") for an Order dismissing the Class Action Complaint (Dkt. 1 (the "Complaint")).

      AARP requests that this Court dismiss the Complaint in its entirety pursuant to Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure and applicable statutes of limitations. The Motion is based on the Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Barrett J. Anderson, all attached exhibits, any supplemental papers that may be filed, any oral arguments made by counsel, such matters of which this Court must or may take judicial notice, and any other materials and arguments that may be appropriately presented by the parties or the Court otherwise properly considers in deciding this Motion.

**ISSUES TO BE DECIDED**

1. Whether the Complaint should be dismissed for failure to state a claim upon which relief may be granted under Rule 12(b)(6).

2. Whether the Complaint should be dismissed for failure to plead the essential elements of the causes of action under Rule 8.

3. Whether the Complaint should be dismissed in whole or in part as time-barred under applicable statutes of limitations.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This lawsuit is one drop in a nationwide flood of litigation filed by plaintiffs' attorneys seeking to deploy the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ("VPPA"), against defendants who—unlike the corner video store that disclosed the names of 146 video tapes rented by Judge Robert Bork during his Supreme Court confirmation hearings—neither rent nor sell feature-length films. AARP is plainly not a video rental store like Blockbuster or Potomac Video. Plaintiffs, however, attempt to apply the VPPA to the alleged disclosure of unidentified video clips they allegedly viewed on a public website maintained by AARP, a nonprofit organization, through a labored chain of assumptions bereft of well-pled facts. Plaintiffs' unprecedented theory, if accepted by the Court, would extend the VPPA far beyond its intended scope and expose every website that hosts video clips (a hefty percentage in today's modern world) to unforeseen liability and enormous damages claims. Further, the Complaint fails to plead sufficient facts to sustain Plaintiffs' claims, including what video clips they supposedly watched, whether any such clips were only viewable by paying AARP members, or when disclosure of their information purportedly occurred. Plaintiffs' failure to allege *when* their information was allegedly disclosed is dispositive here, both because it flouts Federal Rule of Civil Procedure 8's "fair notice" requirement and because it prevents the Court from applying the statutes of limitations, which (once applied) would entirely or partly bar all of Plaintiffs' claims.

*First*, the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Congress adopted the VPPA with a particular goal in mind: to prevent a video tape service provider ("VTSP") from knowingly disclosing to third parties the titles of specific videos requested or obtained by a specific individual. Under that proper reading, the VPPA does not apply to this case. Here, Plaintiffs allege they created Facebook accounts, chose to stay logged into those accounts, and then (at unspecified dates and times) viewed (unidentified) video clips on AARP.org, on which AARP allegedly had installed the "Meta Pixel"—a "snippet of programming code" that (purportedly) has the ability to log "interactions a user takes on a particular website." (¶ 18 at 6.)[1]

---

[1] Citations to "¶" refer to paragraphs in the Complaint. However, the Complaint re-starts paragraph

Plaintiffs allege the Pixel automatically sent (without AARP's specific oversight or approval of each transmission) Plaintiffs' Facebook IDs—which are "string[s] of numbers"—and information about video clips they viewed to Facebook. (¶ 13 at 5.) These conclusory allegations do not establish, for VPPA purposes, that the information "concerns" Plaintiffs as "consumers," that AARP is a VTSP, that AARP disclosed Plaintiffs' "personally identifiable information," or that AARP did so "knowingly." Further, such a disclosure (if it happened) was "incident to [AARP's] ordinary course of business" and thus exempt from liability under the VPPA. The Complaint also fails to adequately plead Plaintiffs' tagalong state-law claims under California's Unfair Competition Law ("UCL"), Rhode Island's Deceptive Trade Practices Act ("DTPA"), or unjust enrichment. Plaintiffs fail to allege the requisite economic harm or that AARP's alleged conduct is unlawful or unfair, and unjust enrichment is not a standalone claim under California law.

*Second*, the Complaint fails to satisfy Rule 8, which requires plaintiffs to plead "when the actionable misconduct occurred." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 135 (N.D. Cal. 2020). All of Plaintiffs' claims arise from AARP's alleged disclosure of their video-viewing history on AARP.org, but the Complaint does not allege a single date on which Plaintiffs viewed a video clip or AARP purportedly disclosed they did. Absent that essential element, AARP is unable "to defend itself effectively," which necessitates dismissal. *Id.* (internal quotation marks omitted).

*Third*, each of Plaintiffs' four claims is subject to a statute of limitations ranging from two to four years. Yet Plaintiffs allege a class period beginning on January 1, 2013 (¶ 35) and improperly seek to hold AARP liable for alleged conduct extending back nearly a decade. Because AARP "raise[s] the non-frivolous possibility of multiple statute of limitations defenses," but Plaintiffs "fail[] to plead the approximate date of alleged misconduct," the Complaint must be dismissed. *Brodsky*, 445 F. Supp. 3d at 135. Additionally, Plaintiffs fail to plead any facts—let alone with the requisite particularity—to sustain their allegations that these statutes of limitations should be tolled. The Court should reject their effort to radically expand the scope of the case.

---

numbering on page 4 and therefore contains two sets of paragraphs numbered 1–26. AARP cites paragraphs numbered 1–26 with the page number for clarity. AARP does not concede that any allegation in the Complaint is true and recites them only for purposes of this motion to dismiss.

# FACTUAL BACKGROUND

## A.     AARP and Its Website

AARP is a nonprofit organization dedicated to "empower[ing] people to choose how they live as they age" and "help[ing] people navigate ageless realities — financial well-being, health, how to contribute to society and local communities, and how to fully enjoy life." (¶ 11 at 2; ¶ 10 at 5; *see generally* Exs. A–C (describing AARP's mission.)[2]  AARP member benefits include access to certain group insurance products, subscriptions to *AARP The Magazine* and *The AARP Bulletin*, and discounted products and services. (Ex. A at 2; Ex. F at 1–2.)  AARP also provides community services to its members, organizes member events in local communities, and maintains the public website at the center of this lawsuit: https://www.aarp.org. (¶ 17 at 3; ¶ 1 at 4.)

AARP.org provides information on health, money, entertainment, and other topics through articles, video clips, podcasts, and games. (¶ 10 at 5; *see also*, *e.g.*, Exs. A–F (AARP.org webpages).)  For instance, the website discusses how to obtain assistance in preparing and filing income taxes, opportunities to mentor children in learning to read, and AARP's work helping "older adults build economic opportunity" and engaging in "nationwide, state and community [advocacy] efforts." (Ex. B at 1; *see also* Ex. C.)  A small portion of the offerings on AARP.org are short video clips that anyone who visits the website may freely view. (*See, e.g.*, Ex. D (example video clip); Ex. E (example article with embedded video clip.)  On a separate login-only part of the website, AARP provides some services and products to registered subscribers and paying members. (Ex. F (AARP.org membership webpage).)  Plaintiffs do not allege that they watched any specific video clips on AARP.org or that any of those clips were exclusively available to AARP members.

Additionally, AARP maintains a privacy policy applicable to all AARP.org visitors ("AARP Privacy Policy"), which states that AARP may "disclose [users'] personal data to a third-party for a business purpose or sell [users'] personal data," including by "shar[ing] personal data with social media networks." (Ex. G at 3.)  It further explains to users that "[i]f you are logged in to your social media account" when visiting AARP.org, then "those social media companies may collect certain information about you, such as . . . which pages you visited on [AARP's] websites."

---

[2] Citations to "Ex." refer to the Exhibits filed with the Declaration of Barrett J. Anderson.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(*Id.* at 7.)  The AARP Privacy Policy was "[e]ffective February 5, 2018" and "last updated November 11, 2022" to "include links to Licensed Service Providers."  (*Id.* at 1.)  As argued in AARP's concurrently filed Request for Judicial Notice, the AARP Privacy Policy is incorporated by reference into the Complaint and properly subject to judicial notice.

### B.    The Meta Pixel

Facebook is a social-media network owned by Meta Platforms, Inc. ("Meta").  (¶ 12 at 5.) People who create and maintain Facebook accounts may choose, of their own accord, to include on their Facebook profiles "a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details."  (¶ 5 at 1.)  Meta also assigns each of its users a "Facebook Profile ID, a string of numbers unique to each Facebook profile."  (¶ 13 at 5.)

The Meta Pixel is "an advertising and analytics tool" in the form of "a snippet of programming code" that may be "installed on a webpage."  (¶ 18 at 6.)  If a Facebook user chooses to stay "logged in to Facebook" (¶ 24 at 4; ¶ 7 at 24; ¶ 34) and then navigates to a website that has the Pixel installed, the Pixel is capable of "send[ing] to Meta data relating to the interactions a user takes on a particular website."  (¶ 18 at 6.)  Plaintiffs allege that such data could include the individual's Facebook ID, "what searches they performed[,] and which items they have clicked on or viewed."  (¶ 3 at 1.)  "As of January 2022, more than 30 percent of popular websites have an embedded Meta Pixel."  (¶ 21 at 6.)

The Complaint alleges that, on an unknown date, AARP installed the Pixel on AARP.org, which purportedly shared with Meta "specific names of video content viewed by users, as well as the user's Facebook Profile ID."  (¶ 13 at 5; ¶ 20 at 6.)  The Complaint also alleges that AARP received data "in Meta's 'Events Manager,' which works with the Meta Pixel to provide website operators with a summary of user activity captured by the Meta Pixel."  (¶ 24 at 7.)  The Complaint does not specify whether the Pixel installed on AARP.org operated under its default settings, which only discloses to Meta "if someone visits a web page's URL, but not what they do or see on that web page" (such as clicking play on a particular video clip).  (Ex. H at 2 ("View content").)  It also does not allege any specific dates on which the Pixel purportedly shared such data with Meta.

## C. Plaintiffs

Plaintiffs Jan Markels and Allen Ziman reside in California and Rhode Island, respectively, and maintain Facebook accounts on which they have chosen to include, among other information, their "name[s] and other personal details." (¶¶ 9–10 at 2; ¶ 21 at 3; ¶ 5 at 4.) Plaintiffs allegedly "used [their] internet-connected devices and the browser installed on those devices to visit and watch video clips on AARP's website . . . during the Class Period." (¶ 17 at 3; ¶ 1 at 4.) The Complaint alleges a class period ranging from "January 1, 2013 to the present." (¶ 35.) The Complaint does not plead any specific video clips, either by title or substance, that Plaintiffs purportedly watched on AARP.org and it does not plead any specific dates on which Plaintiffs allegedly viewed those clips.

Plaintiffs allege they are AARP members and subscribers who pay a $16 annual fee. (¶¶ 18–19 at 3; ¶¶ 2–3 at 4.) The Complaint does not allege that Plaintiffs viewed any video clips on AARP.org that were exclusively available to AARP members.

## D. The Complaint

Plaintiffs assert four causes of action: (1) violation of the VPPA, 18 U.S.C. § 2710; (2) violation of the UCL, Cal. Bus. & Prof. Code § 17200; (3) violation of the DTPA, R.I Gen. Laws § 6-13.1-1; and (4) unjust enrichment. (¶¶ 46–81.) All four claims rest on the core allegation that AARP shared Plaintiffs' Facebook IDs and video-viewing history with Meta via the Pixel. (*See, e.g.*, ¶¶ 12–13 at 5; ¶¶ 17, 21 at 6; ¶¶ 25–26 at 7.) The Complaint also alleges a nationwide class and subclasses of California and Rhode Island residents. (¶¶ 34–35; ¶ 55.)

The Complaint alleges that Plaintiffs purportedly were harmed because they were: "deprived . . . of control over" their information, "prevented . . . from realizing its full value for themselves," and that their information was "diminished in value," thereby "diminishing the value of services for they paid AARP," including "access to AARP's website." (¶¶ 29–32.) For these alleged harms, Plaintiffs seek statutory damages of $2,500 per VPPA violation and $500 per DTPA violation, punitive damages, restitution or disgorgement for any unjust enrichment, and injunctive relief and/or declaratory relief. (¶¶ 56, 76, 81; Prayer for Relief at 17.)

## LEGAL STANDARD

Under Rule 8, a pleading must contain a "short and plain statement showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), which is designed to provide defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555). "To comply with Rule 8," a plaintiff must allege "the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000) (affirming dismissal of action under Rule 8). "Rule 8's requirement [that a pleading] 'contain sufficient allegations of underlying facts'" is designed "to give fair notice and to enable the opposing party to defend itself effectively.'" *Brodsky*, 445 F. Supp. 3d at 135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Factual allegations must create "more than a sheer possibility that a defendant has acted unlawfully," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and thereby "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. In other words, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff, the "court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). And the Court need not "accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (same).

**ARGUMENT**

**I.      The Complaint Fails to Plead a Facially Plausible VPPA Claim**

Congress adopted the VPPA in 1988 with the narrow purpose of prohibiting brick-and-mortar video rental stores from disclosing the titles of full-length feature films that a specific customer requested or obtained on a specific occasion.  The VPPA stemmed from a single incident: a local video store's disclosure of U.S. Supreme Court nominee Judge Robert Bork's video-rental history during his Senate confirmation proceedings.  S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342 ("Senate Rep.")).[3]  To that end, the VPPA applies only to "specific video materials or services" with respect to "prerecorded video cassette tapes or similar audio visual materials," which a Senate Report recommending adoption of the VPPA identified as, for example, "laser discs, open-reel movies, and CDI technologies."  *Id.* at 11–12.  These examples illustrate Congress' intent for the VPPA to cover full-length feature films, not minutes-long online video clips, which did not exist in 1988.  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage.").  Plaintiffs' claim does not fit the statute.

The claim is also not adequately pleaded.  Stripped of its conclusory allegations, the Complaint fails to state a plausible VPPA claim for four independent reasons: (1) Plaintiffs do not plead a disclosure "concerning" them as "consumers," as required by the VPPA; (2) AARP is not a "video tape service provider," as defined in the VPPA; (3) Plaintiffs fail to allege that AARP "knowingly" disclosed their personally identifiable information ("PII"); and (4) AARP's conduct, as alleged, falls within the VPPA's "ordinary course of business" exception.

**A.      Plaintiffs fail to allege a disclosure that "concerned" them as "consumers"**

Plaintiffs are not "consumers" under the VPPA because they do not allege that an AARP membership is required to access video clips on AARP.org.  To state a claim under the VPPA, a plaintiff must plead facts demonstrating there was disclosure of PII "concerning any consumer."

---

[3] The films Bork rented included "Ruthless People," "The Man Who Knew Too Much," and "A Day at the Races," among others.  Stephen Advokat, *Publication of Bork's Video Rentals Raises a Privacy Issue*, Chi. Tribune (Nov. 20, 1987), *available at* https://www.chicagotribune.com/news/ct-xpm-1987-11-20-8703270590-story.html.

Cooley LLP
Attorneys at Law
San Francisco

18 U.S.C. § 2710(b)(1). PII "includes information which identifies a person as having requested or obtained specific video materials from a video tape service provider." *Id.* § 2710(a)(3). And a "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). Because Plaintiffs do not allege that they rented or purchased videos, the only way the VPPA could apply to them is if they are "subscriber[s]." *Id.* "[A]n individual must do more than simply take advantage of a provided service—even if doing so alone allows a provider to access her information—in order to have acted as a 'subscriber' of the provider." *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 671 (S.D.N.Y. 2015). As Congress recognized when it enacted the statute, "[the VPPA] allows consumers to maintain control over personal information divulged and generated *in exchange* for receiving services from video tape service providers." Senate Rep. at 8 (emphasis added).

Here, Plaintiffs do not sufficiently plead they were "subscribers" because they do not claim they provided something of value—for example, money or information—in order to watch unidentified video clips on AARP.org. The Complaint alleges that Plaintiffs paid an annual membership fee to AARP (¶ 51) and, separately, viewed unspecified video clips on AARP.org (¶ 17 at 3; ¶ 1 at 4). But it pointedly does *not* allege that the membership fee was *required* to view any video clips. That is fatal to the claim because—as is obvious to anyone who navigates to nearly all pages of AARP.org (a website incorporated into the Complaint and properly subject to judicial notice)—the vast majority of short video clips it hosts are freely available to anyone with an Internet connection, not just paying AARP members. (*See, e.g.*, Exs. D, E.) Consequently, AARP membership fees are "distinct and set apart" from AARP's "provision of videos," *Austin-Spearman*, 98 F. Supp. 3d at 671, and no court has deemed a plaintiff a "subscriber" when the gap between an alleged payment and provision of video clips is so wide.

The Eleventh Circuit's decision in *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), is instructive. The plaintiff in that case alleged he was a VPPA "subscriber" because he accessed media content on CNN's mobile app using a subscription that he purchased from his cable provider. *Id.* at 1338–39. The court ruled that the plaintiff was not a "consumer" under the VPPA because "if his cable television provider removed CNN from [plaintiff's] cable package, it

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

would not affect [his] ability to use the CNN App for free video content." *Id.* at 1343. The same is true here: Plaintiffs do not allege that they were required to pay AARP membership fees to view any particular video clips on AARP.org. Plaintiffs have thus failed to plead they are "subscribers" under the VPPA. *Id.* at 1344; *see also Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1258 (11th Cir. 2015) (finding plaintiffs not "subscribers" where they allegedly downloaded free app).[4]

Courts that have found plaintiffs to be VPPA subscribers prove the point that something more is necessary than simply alleging that one has visited a website to view video content. For example, in *In re Hulu Privacy Litigation*, Judge Beeler noted that the plaintiffs alleged detailed facts showing they "more than just visit[ed] Hulu's website," such as that Hulu "resurrected previously-deleted cookies allow[ing] their data to be tracked 'regardless of whether they were registered and logged in'" and assigned users special "'Hulu profile identifiers' linked to their 'individual Hulu profile pages that included name, location preference information designated by the user as private, and Hulu username.'" 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012). And in *In re Vizio, Inc., Consumer Privacy Litigation*, the court found the plaintiffs were subscribers because "they allege they *do* pay for Vizio's [video] applications." 238 F. Supp. 3d 1204, 1223 (C.D. Cal. 2017). Plaintiffs allege no similar facts here.

The VPPA's history further underscores that Plaintiffs do not qualify as "consumers." "Simply because a business is engaged in the sale or rental of video materials does not mean that all of its products or services fit within the scope of the bill." Senate Rep. at 12. Thus, "a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products." *Id.* Because the VPPA limits the definition of "consumer" to a "subscriber of goods or services *from a video tape service provider*," 18 U.S.C § 2710(a)(1) (emphasis added), the only circumstance in which one can be a "subscriber" is where the subscription itself relates to video tapes or similar audio visual materials.

---

[4] *See also*, *e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1023 (N.D. Cal. 2012) (analyzing claim under Stored Communications Act—passed just two years before VPPA and contained in same U.S. code chapter—and reasoning "whether an entity is acting as a [remote computing service] or [electronic communication service] is context dependent, and depends, in part, on the information being disclosed," and "the key is the provider's *role* with respect to a particular copy of a particular communication, *rather than the provider's status in the abstract*" (internal citations omitted and emphases added)).

Cooley LLP
Attorneys at Law
San Francisco

Plaintiffs do not allege that they needed to pay the annual AARP membership fee to watch video clips on AARP.org.  They are therefore not subscribers, or consumers, under the VPPA.

### B.    AARP is not a "video tape service provider"

The VPPA applies only to "video tape service providers," defined as entities "in the business of . . . rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C § 2710(a)(4).  The Complaint does not establish that AARP is in that line of business or that its website hosts that type of material.

### 1.    Plaintiffs do not adequately allege that AARP.org hosts "prerecorded video cassette tapes or similar audio visual materials"

The VPPA precludes disclosure of specific video materials that an identifiable person has requested or obtained from a VTSP; *i.e.*, an entity dealing in "prerecorded video cassette tapes or similar audio visual materials."  *Id.* § 2710(a)(4).  Plaintiffs do not allege the disclosure of prerecorded video cassette tapes; instead ask the Court to make the unsupported inference that that the short video clips on AARP.org—such as the one minute and fifty second clip titled "U.S. Surgeon General Dispels 4 Common COVID-19 Myths" (Ex. D)—are "similar to" the feature films rented by Judge Bork.  The Complaint's allegations do not support this inferential leap.

The short video clips on AARP.org are not "similar audio visual materials" to the prerecorded, feature-length video cassette tapes of 1988.  "To determine the plain meaning of a statute, [the Ninth Circuit] traditionally refer[s] to dictionaries in use at the time of the statute's enactment." *Gollehon v. Mahoney*, 626 F.3d 1019, 1023 (9th Cir. 2010).  Around the time Congress adopted the VPPA, the word "similar" was defined as "[n]early corresponding; resembling in many respects' somewhat like; having a general likeness."  Black's Law Dictionary (6th ed. 1990).  Further, under the *ejusdem generis* canon of statutory interpretation, "where . . . a more general term follows more specific terms in a list, the general term is usually understood to 'embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001)).  Because the short video clips embedded on AARP.org are different in kind than feature-length films contained on video cassette tapes like those rented by Judge Bork, any video

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

clips Plaintiffs purportedly watched fall outside the scope of the VPPA.

Other courts have applied the same reasoning.  For example, the court in *In re Hulu* found that the VPPA applied to movie content streamed over the Internet because it fell within the scope of "similar audio visual materials."  2012 WL 3282960 at *4–6.  In reaching its decision, the court made clear that the VPPA was meant to address new technologies, like streaming, but only those akin to the films Judge Bork rented.  *Id.* at *6 ("Considering both together does not suggest—as Hulu argues—an intent to limit the VPPA to tangible materials but—as Plaintiffs argue—instead suggests Congress's intent to cover new technologies for pre-recorded content."); *see also In re Vizio*, 238 F. Supp. 3d at 1221 (applying VPPA to provider of Smart TVs capable of streaming *movies*).[5]  Applying the same logic here, the short clips on AARP.org fall outside the materials covered by the VPPA, and Plaintiffs' claim fails.

> **2.   The Complaint fails to plead that AARP is "in the business of" renting, selling, or delivering video content**

The Complaint avers only a single conclusory allegation that AARP qualifies as a VTSP under the VPPA.  (¶ 48.)  That bald claim does not suffice to demonstrate that AARP is "in the business" targeted by Congress when it adopted the VPPA.

To be "engaged in the business" of delivering prerecorded video cassette tapes or similar audio visual materials, a defendant must be "*substantially* involved in the conveyance of video content to consumers [and] *significantly* tailored to serve that purpose."  *In re Vizio*, 238 F. Supp. 3d at 1221 (emphasis added).  Conversely, "developers of many other products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider."  *Id.* at 1221–22.  Thus, a quintessential VTSP is one that sells televisions capable of streaming online movies, *id.* at 1221; operates a social-media website that "regularly delivers video content to users," *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 798 (N.D. Cal. 2019) (quotation marks omitted); or maintains

---

[5] The recent decision in *Stark v. Patreon, Inc.* does not alter the analysis because the defendant in that case did not dispute whether the video content at issue was "similar" to prerecorded videocassette tapes.  2022 WL 7652166, at *6 (N.D. Cal. Oct. 13, 2022).

a website that hosts content behind a paywall, *Stark*, 2022 WL 7652166, at *7.[6]

AARP does not fit this paradigm; it is a nonprofit organization with the mission to "help[] people navigate ageless realities – financial well-being, health, how to contribute to society and local communities, and how to fully enjoy life." (¶ 10.)  It does so through advocating for age-friendly public policies, pressing for needed change at all levels of government, establishing programs to enable older Americans to live their best lives as they age, making available products and services of interest to its members, and fighting age discrimination wherever it is found.  (*See, e.g.*, Exs. A–C.)  Posting video clips on AARP.org thus is, at best, only a very small part of *how* AARP accomplishes its primary mission, not the mission itself.  AARP therefore is not a VTSP.

### C.     AARP did not knowingly disclose Plaintiffs' PII

The VPPA  regulates only the disclosure of "information which *identifies a person* as having requested or obtained specific video materials or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(3) (emphasis added).  And the VPPA imposes liability only when a VTSP "*knowingly* discloses" such information.  *Id.* § 2710(b)(1) (emphasis added).  Plaintiff does not sufficiently plead these elements.

### 1.     Plaintiffs fail to allege "personally identifiable information"

To qualify as PII under the VPPA, a plaintiff must plead that the information at issue "readily permits an *ordinary person* to identify a particular individual as having watched certain videos." *Eichenberger*, 876 F.3d at 985 (cleaned up and emphasis added).  This "ordinary person" test focuses on the actual information that was allegedly disclosed, as opposed to "what the recipient of that information decides to do with it."  *Id.*  For example, a device serial number is not PII because it "cannot identify an individual unless it is combined with other data in [a defendant's]

---

[6] Cases from courts outside this District confirm that AARP does not fit the paradigm of a VTSP. Examples include: a health and medical-news company that sends video content "via its e-newsletter and its website" directly to individuals who created an account and provided an "email address and birthday," *Lebakken v. WebMD, LLC*, 2022 WL 16716151, at *3 n.2 (N.D. Ga. Nov. 4, 2022); a media company requiring that "individuals must pay for a digital subscription" to access video content, *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *1–2 (D. Mass. Sept. 19, 2022); and a sports league offering a free app to watch video content that also tracks a user's "location through the mobile device's GPS," *Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *1 (D.R.I. Sept. 12, 2022).  Given the stark differences between the facts alleged in those cases and the Complaint, the Court should decline to apply them.

possession." *Id.* at 986 (reasoning "that, at some point, the linkage of information to identity becomes too uncertain to trigger liability under the VPPA" (internal quotation marks omitted)).

The Complaint alleges that the information sent by the Pixel was "the user's Facebook Profile ID and the title of the video that the user watched." (¶ 5 at 1.) Because the title of a video clip does not identify a particular person, the only possible identifying information alleged in this case is a Facebook ID: "a string of numbers unique to each Facebook profile." (¶ 13 at 5.) However, "an anonymous string of numbers . . . is insufficient" by itself "to qualify as personally identifiable information." *Perry*, 2016 WL 4373708 at *4 (ruling app identification number is not PII); *see also Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (holding device identification number is not PII); *In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) (finding IP address and unique device identifier not PII).

Plaintiffs attempt to get around this deficiency by speculating that "[a]nyone who possesses a Facebook Profile ID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which may contain a vast amount of personal information." (¶ 14 at 4.) But Plaintiffs do not explain *how* an ordinary person could identify someone with just a user's Facebook ID, which is fatal to the claim. Moreover, that conclusory allegation is contradicted by an incorporated and judicially noticeable document: an article from Facebook's Help Center that explains to users that their Facebook "ID is a string of numbers that *doesn't personally identify you* but does connect to your Facebook profile." (Ex. I at 1 (emphasis added).) That a Facebook ID connects to a profile is of no moment; it is not enough under the "ordinary person" test for Plaintiffs to allege that a string of numbers is PII when "the third party must 'pair' [the numbers] with information from a user's [] profile page, which may or may not contain various personal information about the user." *Wilson v. Triller, Inc.*, 2022 WL 1138073, at *6 (S.D.N.Y. Apr. 18, 2022). Thus, because the Complaint does not sufficiently aver that an ordinary person could use Facebook IDs to identify Plaintiffs, the Complaint fails to plead any PII here.[7]

---

[7] The Court should decline to follow the *Stark* decision, where the court incorrectly sustained a PII allegation resting on the bald claim that someone could use a Facebook ID to find a "Facebook profile, which in turn can reveal a user's name." 2022 WL 7652166, at *8. The *Stark* court's reasoning improperly depends on the recipient of the information "'reverse engineer[ing]' a disclosure using data gathered from other sources," *Robinson v. Disney Online*, 152 F. Supp. 3d

Cooley LLP
Attorneys at Law
San Francisco

2. **Plaintiffs fail to allege that AARP disclosed information "knowingly"**

The VPPA mandates that a plaintiff sufficiently plead that a defendant has "knowingly" transmitted PII. 18 U.S.C. § 2710(b)(1). "Knowingly" in this context "means consciousness of transmitting the private information." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). Thus, a defendant must have consciously transmitted: "1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *Id.* (quoting 18 U.S.C. § 2710(a)(3)). "It is not enough . . . that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is doing.'" *Id.*; *see also Mollett v. Netflix, Inc.*, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012) (dismissing VPPA claim in part because it was unreasonable to infer Netflix knowingly disclosed PII from conclusory allegations).

The Complaint falls short of pleading any facts showing that AARP had the requisite actual knowledge. While Plaintiffs baldly assert that "AARP knowingly caused personal viewing information . . . to be disclosed to Meta" and was "aware that the disclosures to Meta . . . identified Plaintiffs" (¶¶ 50, 54), those simple conclusory statements are unsupported by fact. The allegation that on some unknown date "AARP voluntarily chose to install the Meta Pixel within the code of its website" (¶ 22 at 7) does not allow for a plausible inference that AARP *knew* it was specifically disclosing Plaintiffs' identities and their video-viewing history to Facebook. Quite the opposite. As the Facebook Help Center article states: a "User ID is a string of numbers that doesn't personally identify you." (Ex. I at 1.) And the Pixel's default settings would only have shared "if someone visits a web page's URL, but not what they do or see on that web page." (Ex. H at 2.) This distinction is critical for webpages that, for example, contain written articles with embedded video clips, like some on AARP.org. (*See e.g.,* Ex. E.) Plaintiffs do not explain how navigating to any

---

176, 183 (S.D.N.Y. 2015). The Court should also not apply the ruling in *In re Hulu Privacy Litigation*, where the court denied a motion for summary judgment merely because it found "a material issue of fact that the information transmitted to Facebook was sufficient to identify individual consumers." 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014). The Court should follow the lead of the court in *Bernardino v. Barnes & Noble Booksellers, Inc.*, which distinguished *In re Hulu* and reasoned that "a triable issue of fact" did not establish (for purposes of a preliminary injunction) that the movant "ha[d] a clear and substantial likelihood of success on the merits." 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11. 2017).

1  AARP.org webpage would reveal whether it contains an embedded video clip or, if so, whether a

2  user clicked "play" on that clip, which is the only way a user can "request or obtain" video content

3  under the VPPA in the online context. Without more, Plaintiffs' knowledge allegations fall flat.

4  **D. VPPA's "ordinary course of business" exception applies**

5       Even assuming that Plaintiffs adequately allege a knowing disclosure of PII concerning any

6  consumer and that AARP is a VTSP (they have not), the VPPA claim must still be dismissed

7  because AARP's alleged conduct falls within the VPPA's "ordinary course of business" exception.

8  18 U.S.C. § 2710(b)(2)(E). That is because the Pixel, as alleged, is a tool provided by a service

9  provider. The Ninth Circuit interprets the "ordinary course of business" exception in light of the

10 "unremarkable fact that no business is an island and that video tape service providers, like many

11 other businesses, 'may use third parties in their business operations.'" *Rodriguez v. Sony Comput.*

12 *Ent. Am.*, LLC, 801 F.3d 1045, 1054 (9th Cir. 2015) (quoting Senate Rep. at 14). "The functions

13 performed by these third parties fall within the definition of 'order fulfillment' or 'request

14 processing.'" *Id.*; *see also* 18 U.S.C. § 2710(a)(2) (permitting disclosure of consumer's PII as part

15 of business operations including "order fulfillment" and "request processing"); Senate Rep. at 14

16 (acknowledging company's business operations include hiring "mailing houses, warehouses,

17 computer services, and similar companies for marketing to their customers").

18      The Complaint's allegations demonstrate that AARP uses Meta for "order fulfillment" and

19 "request processing" services to market to users of AARP.org. For example, the Complaint avers

20 that the "Pixel is an advertising and analytics tool" that "benefits AARP by providing it with

21 analytical data about its website and improving its ability to promote its content and service to its

22 users." (¶¶ 19, 24.) Such quintessential marketing services fall squarely within the exception.

23      The Seventh Circuit applied similar reasoning when it dismissed a VPPA claim under the

24 ordinary course of business exception in *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618 (7th

25 Cir. 2014). There, the plaintiffs alleged that Redbox, which operated self-service DVD kiosks, had

26 violated the VPPA by disclosing to a third-party customer service provider Redbox's entire

27 customer database, including customer names and the titles of movies they had rented. *Id.* at 621.

28 The court recognized: "when the [VPPA] was passed, Congress assuredly had a brick-and-mortar

video rental store in mind," and the ordinary course of business for such stores would involve an employee "access[ing] an individual customer's rental history, address, and other personal information during the checkout process." *Id.* at 625. Thus, "the permissibility of disclosure under the VPPA turns on the underlying purpose for which [the defendant] provides the information to a third party." *Id.* at 626. Here, as alleged in the Complaint, AARP's underlying purpose in installing the Pixel was for website analysis and advertising. (¶ 24.) Such activity is plainly protected from VPPA liability. To hold otherwise would expand the VPPA far past its intended scope and restrict the ability of companies to hire vendors to perform their ordinary business functions.

## II.    Plaintiffs Fail to Allege a California UCL Violation

Plaintiffs also fail to adequately plead any of their tagalong state-law claims, including under California's UCL. The Complaint fails to state a UCL claim because it does not plead an economic injury and fails to allege unlawful or unfair conduct.[8]

### A.    Plaintiffs do not have standing under the UCL

To state a UCL claim, a plaintiff must "'(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048–49 (9th Cir. 2017) (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011)) (emphasis omitted); *see also* Cal. Bus. & Prof. Code § 17204. Here, Plaintiffs allege no facts showing that they suffered economic injury as a result of any Pixel-related disclosure.

Plaintiffs' allegation that they suffered "economic harm" by paying annual fees for an AARP membership (¶ 31) is insufficient because Plaintiffs do not allege that they were required to have a paid AARP membership to view any of the video clips they allegedly viewed. Further, Plaintiffs' bare assertion that AARP's alleged sharing of information with Meta "deprived Plaintiffs . . . of control over [their] information" (¶ 29) is inadequate. "Plaintiffs must allege more than a loss of personal information to establish standing under the UCL." *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019); *see also In re iPhone Application Litig.*, 2011 WL

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[8] Plaintiffs do not allege a claim under the UCL's "fraudulent" prong. (*See* ¶¶ 57–65.)

4403963, at *14 (N.D. Cal. Sept. 20, 2011) (dismissing UCL claim based on alleged improper access to private user information because "[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL"). Finally, Plaintiffs' claim that the alleged disclosures "prevented them from realizing [the information's] full value for themselves" (¶ 29) should be rejected as "purely hypothetical" because Plaintiffs do not allege that they planned to, or could, sell their video-viewing history for money. *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 972 (N.D. Cal. 2021) (rejecting UCL standing because "there are no facts to suggest that Plaintiffs intended to monetize their individual voice recordings, nor is there any facts that suggest there is a market in which Plaintiffs could sell such recordings"); *see also Low v. Linkedin Corp.,* 2011 WL 5509848 at *5 (N.D. Cal. Nov. 11, 2011) (holding plaintiff lacked UCL standing premised on his theory he was "foreclosed from capitalizing on the value of his personal data"). These deficiencies doom Plaintiffs' UCL claim.

### B. The Complaint does not state a UCL "unlawful" claim

"To be 'unlawful' under the UCL, [a defendant's] conduct must violate another 'borrowed' law." *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d at 973 (citation omitted). Plaintiffs allege that AARP's purported conduct was unlawful because it "violate[d] the VPPA" (¶ 60), a claim that fails for the reasons set out above (*see* Section I, *supra*). The Complaint also references "California's Consumers Legal Remedies Act" (¶ 60) but does not explain how AARP could have violated that law and does not otherwise support that conclusory assertion.

### C. The Complaint does not state a UCL "unfair" claim

"The UCL does not define the term 'unfair,'" and "the proper definition of 'unfair' conduct against consumers is currently in flux among California courts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865–66 (9th Cir. 2018) (cleaned up). Some courts apply the *Cel-Tech* test, under which "'unfair' means 'conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169–70 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999)). The *Cel-Tech* test "further require[s] that

1    'any finding of unfairness to competitors under section 17200 be tethered to some legislatively

2    declared policy or proof of some actual or threatened impact on competition.'" *Id.* at 1170 (quoting

3    *Cel-Tech*, 20 Cal.4th at 186–87). Other courts apply a "balancing test" that weighs "the utility of

4    the defendant's conduct against the gravity of the harm to the alleged victim." *Id.* at 1169 (citing

5    *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999)).

6         The unfair claim fails under either approach. Under the *Cel-Tech* test, Plaintiffs allege that

7    disclosure of their video-viewing history from AARP.org "violates California's and the nation's

8    legislatively declared public policy in favor of protection of consumer privacy." (¶ 61.) The only

9    two sources it cites for that policy are legislative reports, not enactments. *See Simila v. Am. Sterling*

10   *Bank*, 2010 WL 3988171, at *6 (S.D. Cal. Oct. 12, 2010) (dismissing UCL unfair claim as "not

11   sufficiently 'tethered' . . . to any underlying law"). Moreover, the first report is the 1988 Senate

12   Report recommending adoption of the VPPA, and the Court should reject it for the same reasons

13   as Plaintiffs' VPPA and UCL unlawful claims. (*See* Sections I & II.B, *supra*.) The second report

14   is a bill analysis of California's Consumer Privacy Act of 2018 ("CCPA"), a law that chiefly allows

15   consumers to find out what data for-profit companies collect about them. Unlike the VPPA, the

16   CCPA does not expressly forbid disclosure of data about video rentals, Cal. Civ. Code

17   § 1798.100(a), and does not apply to nonprofits like AARP, *id.* § 1798.140(c). The "general

18   policy" expressed by the CCPA bill analysis thus does not have a sufficiently "close nexus" to serve

19   as the basis for Plaintiffs' unfair claim. *Hodsdon*, 891 F.3d at 866–67 (rejecting UCL unfair claim

20   where "the challenged action was too far removed from the legislative policy").

21        The unfair claim fails under the balancing test, too. AARP's alleged conduct is not

22   "unethical, unscrupulous, offensive, and substantially injurious" (¶ 62) because AARP informs

23   users in its Privacy Policy that it "may share personal data with social media networks to facilitate

24   their delivery of [AARP's] customized advertising." (Ex. G at 3.) The Ninth Circuit has rejected

25   UCL "unfair" claims in similar contexts. *Hodsdon*, 891 F.3d at 867 (affirming dismissal of UCL

26   unfair claim where *inter alia* information allegedly not disclosed by defendant was "accessible on

27   [defendant's] website"); *Davis*, 691 F.3d at 1170–71 (affirming dismissal of UCL "unfair" claim

28   premised on nondisclosure of fees because defendant disclosed fees in its terms and conditions).

And district courts have likewise dismissed such claims. *Janda v. T-Mobile, USA, Inc.*, 2009 WL 667206, at *6–9 (N.D. Cal. Mar. 13, 2009) (dismissing UCL "unfair" claim based on allegedly hidden fees where contract terms disclosed fees would be charged), *aff'd*, 378 F. App'x 705 (9th Cir. 2010). The Court should similarly reject the UCL unfair claim here.

## III. Plaintiffs Fail to Allege a Rhode Island DTPA Violation

To allege a DTPA claim, "a plaintiff must establish [1] that he or she is a consumer, and [2] that defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce." *Kelley v. Cowesett Hills Associates.*, 768 A.2d 425, 431 (R.I. 2001). A plaintiff also must allege [3] he or she "suffered an ascertainable loss of money or property as a result of the deceptive practice." *Laccinole v. Assad*, 2016 WL 868511, at *7 (D.R.I. Mar. 7, 2016) (citing R.I. Gen. Laws § 6–13.1–5.2)). Plaintiffs allege none of these three elements.

*First*, to be a "consumer" under the DTPA, the Complaint must allege a link between the payment and the service, such as a "contract" or that "consideration was exchanged." *Kelley*, 768 A. 2d at 431. Here, Plaintiffs allege that they paid AARP membership fees and, separately, that they viewed unidentified video clips on AARP.org, but they do *not* allege that the membership fees were *necessary* for them to view the video clips. Absent such a link, "[t]he role of the respective parties in this case cannot reasonably be construed to establish a consumer/vendor relationship necessary to invoke the [DTPA]." *Id.*

*Second*, the Complaint does not allege either an unfair or deceptive act or practice arising from AARP's alleged disclosure of Plaintiffs' information to Meta via the Pixel. Plaintiffs' DTPA "unfair" claim is deficient for the same reasons their UCL "unfair" claim is deficient. (*See* Section II.C, *supra*.) And the "deceptive" conduct in the Complaint is premised entirely on the baseless allegation that, "[i]n describing its services and privacy policies, AARP misrepresented and/or omitted the true nature of its information-sharing practices." (¶ 71.) But the AARP Privacy Policy expressly discloses to users that AARP may share their data with "social media networks" to allow for *inter alia* targeted advertising. (Ex. G at 3, 7.) Ultimately, the DTPA claim boils down to a sweeping complaint with modern Internet marketing: the sharing of users' data for advertising purposes. The DTPA is a consumer protection statute, not a comprehensive law regulating the

Cooley LLP
Attorneys at Law
San Francisco

Internet, and thus cannot support liability for Plaintiffs' generalized grievance. *Barreiro v. Jef Booth, P.C.*, 2009 WL 982412, at *3 (D.R.I. Apr. 10, 2009) (finding alleged conduct "does [not] appear to fall within the defined unlawful acts and practices that the DTPA is intended to prevent").

*Third*, Plaintiffs fail to plead an "ascertainable loss of money or property, real or personal, as a result of" AARP's purported disclosure of information to Meta. *Id.* Intangible harms—like the privacy injury asserted by Plaintiffs (¶¶ 71–74)—do not qualify as "money or property" for DTPA purposes. *See Barreiro*, 2009 WL 982412, at *3 (rejecting alleged harms of "mental suffering, embarrassment and attorneys fees" as basis for DTPA claim). The only other harm Plaintiffs allege is "overpayment for their memberships" (¶ 75) but the Complaint lacks a tenable, non-conclusory link between Plaintiffs' AARP membership fees and the alleged disclosure. For example, it does not allege Plaintiffs were required to purchase an AARP membership to view the unidentified video clips they supposedly watched. The conclusory claim that Plaintiffs paid for "AARP's services, which provide video content to users on its website" (¶ 69) misses the mark because it elides that *anyone* may view the vast majority of video clips on AARP.org. Plaintiffs thus fail to show that their alleged overpayment of membership fees was "a result of" AARP's alleged disclosure of information. The DTPA claim should be dismissed.

## IV.     Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

"California does not recognize a separate cause of action for unjust enrichment" and "courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky*, 445 F. Supp. 3d at 132–33 (collecting California and federal cases); *see also Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2021) (ruling "unjust enrichment is not a cause of action under California law" and dismissing claim).[9] Although some "courts have construed purported claims for unjust enrichment as quasi-contract claims seeking restitution," *Brodsky*, 445 F. Supp. 3d at 133, such a claim fails here where the Complaint does not plead a specific contractual relationship between AARP and Plaintiffs. Further illustrating the point: Plaintiffs "seek

---

[9] AARP assumes Plaintiffs assert an unjust enrichment claim under California law because this Court sits in California. It should also be dismissed insofar as Plaintiffs attempt to plead a "national unjust enrichment claim" because "it is impossible for this claim to be brought as a nationwide class." *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009).

Cooley LLP
Attorneys at Law
San Francisco

restitution" and "restitutionary disgorgement" of AARP's alleged "profit from advertising revenue" (¶ 79–81), but Plaintiffs do not plead (nor could they) an "ownership interest" in AARP's advertising revenue and thus that money cannot be "return[ed]" to them as "restitution," *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1149 (2003).

The Court also should dismiss the unjust enrichment claim because "[t]here is no equitable reason for invoking restitution when[,]" as here, "the plaintiff gets the exchange which he expected." *Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952). The AARP Privacy Policy informs people visiting AARP.org that their data could be shared with social media networks for advertising purposes. (Ex. G at 3, 7.) Finally, the unjust enrichment claim is not supported by facts and should be dismissed for the same reasons as the UCL claim. (*See* Section II, *supra*); *see also Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017) ("Because Plaintiff has failed to state claims under the California consumer protection statutes, the unjust enrichment claim fails as well.").

## V.     The Complaint Must Be Dismissed Under Rule 8

The Complaint is also fatally flawed under Rule 8 because it fails to allege when Plaintiffs allegedly viewed any of the unidentified video clips or when AARP purportedly disclosed their viewing history. "Courts often dismiss claims under Rule 8 when plaintiffs fail to allege approximately *when* the actionable misconduct occurred." *Brodsky*, 445 F. Supp. 3d at 135 (emphasis added) (collecting cases). All four of Plaintiffs' claims rest on AARP's alleged disclosure of their data to Meta *via* the Pixel (*see, e.g.*, ¶¶ 55, 63, 74, 79), but nowhere in the Complaint do Plaintiffs aver any date on which these disclosures purportedly occurred. AARP cannot effectively defend itself without fair and adequate notice of the claims alleged against it, which includes that necessary element. The Complaint should be dismissed on that ground alone. *Brodsky*, 445 F. Supp. 3d at 135 (dismissing case under Rule 8 for "failure to plead when any alleged misconduct occurred"); *Mir v. City of Torrance*, 2018 WL 6133712, at *1 (C.D. Cal. Oct. 17, 2018) (dismissing complaint under Rule 8 because *inter alia* "Plaintiff has not . . . alleged when most of [the acts] occurred, leaving the Court and Defendants to attempt to parse out who is accused of doing what and when," which "is improper" (citations omitted)); *Vasconcellos v. Sara Lee*

*Bakery*, 2013 WL 4014520, at *2 (N.D. Cal. Aug. 5, 2013) (dismissing complaint under Rule 8 for failure to "allege when plaintiff worked for defendants, when plaintiff became injured or engaged in protected activity, or when the alleged misconduct occurred"); *O'Donnell v. U.S. Bancorp Equip. Fin., Inc.*, 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) (dismissing action under Rule 8 because "[plaintiff] has not alleged any dates in her complaint").[10]

## VI. The Complaint Is Wholly or Partly Time-Barred

### A. Plaintiffs fail to allege when any alleged disclosure occurred

Each of Plaintiffs' four claims is subject to a statute of limitations, ranging from two to four years. For the VPPA claim, "[n]o action may be brought . . . unless [it] is begun within 2 years from the date of the act complained of or the date of discovery." 18 U.S.C. § 2710(3). For the UCL claim, "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208. For the DTPA claim, "[a]ctions . . . shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after." 9 R.I. Gen. Laws Ann. § 9-1-14(b).[11] And for the unjust enrichment claim, a claim must be filed "[w]ithin three years" of its accrual. Cal. Civ. Proc. Code § 338.[12] Plaintiffs filed the Complaint on September 27, 2022. Plaintiffs are thus time-barred

---

[10] Plaintiffs' failure to allege such basic facts—like what video clips they supposedly watched, when they did so, and whether an AARP membership was required to view those clips—also casts serious doubt on the viability of any later motion they may file to certify a class because it suggests that questions specific to each individual will predominate over common issues. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (requiring plaintiff's claims to "depend upon a common contention . . . that is capable of classwide resolution"); Fed. R. Civ. P. 23(b) (providing plaintiff may maintain class action only if it is more efficient than separate actions, defendant "has acted or refused to act on grounds that apply generally to the class," or "questions of law or fact common to class members predominate over any questions affecting only individual members").

[11] "[T]he Rhode Island Supreme Court has held that the period of limitations for DTPA claims depends on the underlying nature of the claim itself" and thus courts "look to the limitations period of the state's most analogous cause of action." *Kennedy v. Acura*, 2002 WL 31331373, at *6 (R.I. Super. Aug. 28, 2002) (internal citations omitted). In Rhode Island, "the statute of limitations for personal injury claims, of which [the statutory] invasion of privacy is included, is three years." *Tatro v. Sterling Jewelers, Inc.*, 2018 WL 11395478, at *3 (S.D. Cal. Mar. 8, 2018).

[12] "Under California law, the applicable statute of limitations depends on the 'substance' or 'gravamen' of the action rather than on the form of the pleading." *Diaz v. Wells Fargo Bank*, 2015 WL 7180617, at *3 (N.D. Cal. Nov. 16, 2015) (quoting *Hensler v. City of Glendale*, 8 Cal.4th 1, 22–23 (1994)). California law imposes a three-year limitations period to "action[s] upon a liability created by statute, other than a penalty or forfeiture." Cal. Civ. Proc. Code § 338(a). Because the "gravamen" of Plaintiffs' case is the alleged violation of "[their] statutorily protected right to privacy in their video-watching habits," (¶ 55), the three-year statute of limitations is apt here.

from bringing the following: (1) any VPPA claim that accrued prior to September 27, 2020; (2) any DTPA or unjust enrichment claim that accrued prior to September 27, 2019; and (3) any UCL claim that accrued prior to September 27, 2018.

To determine whether a statute of limitations applies, the Court also must determine when a given claim accrued. Claims under each of the four causes of action in the Complaint accrue either on the date of the alleged violation or—if the plaintiff chooses to rely on the "discovery rule"—on the date the plaintiff discovered the alleged violation. *Throneburg v. Charter Commc'ns, Inc.*, 2019 WL 5085872, at *3–4 (E.D. Mo. Oct. 10, 2019) (ruling VPPA limitations period runs from "date of the act" or "date of discovery," which "'refer[s] not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know'" (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 645 (2010))); *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397–98 (1999) (holding California limitations periods run from when "the plaintiff discovers the cause of action" or "when he has notice or information of circumstances to put a reasonable person *on inquiry*" (internal citations omitted)); *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 600 (R.I. 2019) (ruling Rhode Island limitations periods run from "the time of the injury" or when, "in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct" (internal citations omitted)).

In this case, the Complaint does not allege any date on which AARP purportedly disclosed information to Meta *via* the Pixel or on which Plaintiffs discovered this was allegedly occurring. That deficiency, as argued above, is reason enough to dismiss the case under Rule 8. It also warrants dismissal for another reason: it prevents the Court from determining whether Plaintiffs' claims accrued in whole or in part outside the limitations periods. *Brodsky*, 445 F. Supp. 3d at 135 (dismissing claims because plaintiffs "fail[ed] to plead the approximate date of the alleged misconduct" and defendant "raised the non-frivolous possibility of multiple statute of limitations defenses"); *Calip v. M.E.I.C.*, 2015 WL 5996365, at *6 (N.D. Cal. Oct. 15, 2015) (dismissing complaint in part because "Plaintiff [does not] state when she was in the hospital and when her child passed away, without which the Court cannot determine whether Plaintiff brought her claims within the applicable statute of limitations period"). The Complaint thus fails as a matter of law.

**B.      Plaintiffs cannot invoke the discovery rule or fraudulent concealment doctrine**

Plaintiffs improperly attempt to evade these statutes of limitations, and drastically expand the scope of this case, by alleging that the limitations periods are tolled by the discovery rule or the doctrine of fraudulent concealment. (¶ 44.) "A plaintiff relying on the discovery rule, must show '(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005)). And to plead fraudulent concealment, "the complaint must allege (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Johnson v. Glock, Inc.*, 2021 WL 1966692, at *3 (N.D. Cal. May 17, 2021) (internal quotation mark and citation omitted). Both doctrines require that a plaintiff plead adequate supporting facts with particularity. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995) ("California law makes clear that a plaintiff must allege specific facts establishing the applicability of the discovery-rule exception."); *Johnson*, 2021 WL 1966692, at *3 (ruling plaintiff must "plead with particularity the facts giving rise to the fraudulent concealment claim" under Federal Rule of Civil Procedure 9(b)).

Astonishingly, Plaintiffs seek to deploy these doctrines to include alleged disclosures from as long ago as January 1, 2013, nearly a decade before they filed the Complaint. (¶ 35.) Neither the discovery rule nor the fraudulent concealment doctrine permits that gambit. As an initial matter, Plaintiffs do not allege "the time and manner of [their] discovery." *Wu*, 793 F. App'x at 510 (citation omitted); *see also Brown v. Madison Reed, Inc.*, 2022 WL 3579883, at *8 (N.D. Cal. Aug. 19, 2022) ("Notably absent are any allegations related to when the alleged discovery occurred or the manner or circumstances under which it did."); *Johnson*, 2021 WL 1966692, at *4 ("Johnson has not adequately alleged when and under what circumstances the discovery of the violation or fraud occurred, let alone with the particularity required."). Plaintiffs also fail to allege facts showing that they were reasonably diligent in pursuing their claims or were not at fault for failing to discover the facts underlying those claims. The Complaint's conclusory allegations that "Plaintiffs . . . could not have reasonably discovered AARP's practices . . . until shortly before this

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

class action litigation commenced" and that tolling is proper because of "AARP's knowing and active concealment and denial of the facts" (¶ 44) do not suffice. *Throneburg*, 2019 WL 5085872, at *4 (rejecting "conclusory" allegation that "[VPPA plaintiff] 'failed to disclose and deliberately concealed' the disclosures" because "he alleges no facts indicating that a reasonable plaintiff could not have discovered the facts underlying these alleged violations sooner"); *Brown*, 2022 WL 3579883, at *8 (finding plaintiffs "failed to provide enough detail" when generally alleging "[they] did not discover, and could not have discovered, through the exercise of reasonable diligence, the [alleged misconduct]" because of defendant's "misleading statements and active concealment"); *Johnson*, 2021 WL 1966692, at *4 (rejecting as "insufficient" the "conclusory allegation that [plaintiff] would not have discovered the alleged violations through reasonable diligence").

The Complaint should be dismissed in its entirety because of Plaintiffs' failure to allege *when* any disclosure occurred. But if the Court does allow the case to proceed to discovery, it should at a minimum expressly bar Plaintiffs from maintaining any claim or part of a claim that rests on alleged disclosures that occurred outside the applicable statutes of limitations periods. *See Throneburg*, 2019 WL 5085872, at *4 (permitting VPPA claims only "for up to a two-year period before the lawsuit was filed"); *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 956 (N.D. Cal. 2010) (allowing claim only "for any allegedly wrongful act committed within the two-year [VPPA] limitations period").[13]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Dated: December 6, 2022                          COOLEY LLP


                                                 By: */s/ Travis LeBlanc*
                                                 Travis LeBlanc

                                                 *Attorneys for Defendant AARP*

---

[13] Plaintiffs' allegation that AARP is "under a continuing duty to disclose . . . its practice of sharing information" (¶ 45) falls flat because AARP *did* disclose that practice. The AARP Privacy Policy— which is freely available to users of AARP.org and was "[e]ffective February 5, 2018"—expressly states that AARP may "disclose [users'] personal data to a third-party for a business purpose or sell [users'] personal data," including to "Social Media Advertising Networks." (Ex. G at 3.) There was nothing more to disclose; there is no basis for a continuing duty.