UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAN MARKELS, ET AL.,**<br><br>      Plaintiffs,<br><br>    v.<br><br>**AARP,**<br><br>      Defendant. | Case No.: 4:22-cv-5499-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS WITH LEAVE TO AMEND** |

Plaintiffs Jan Markels and Allen Ziman bring this putative class action against defendant AARP alleging four counts of privacy violations: (1) violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (3) violation of Rhode Island's Deceptive Trade Practices Act ("DTPA"), R.I. Gen. Laws § 6-13.1-1, *et seq.*; and (4) unjust enrichment. (Dkt. No. 1, "Compl." at 1.) This case is part of a new wave of VPPA cases in the digital context. The VPPA was originally enacted in 1988 after the historic Supreme Court nomination hearings regarding the of Robert Bork revealed disclosure of video choices from brick-and-mortar stores.

Pending before the Court is defendant's motion to dismiss. (Dkt. No. 22, "MTD.") Having carefully considered the parties' arguments, and for the reasons set forth herein, the motion is **GRANTED WITH LEAVE TO AMEND.**[1]

---

[1] Defendant presents nine documents in support of its motion to dismiss. (Dkt. No. 22-2.) For each, defendant requests that the Court take judicial notice or incorporate the document by reference. Plaintiff generally does not oppose this request. Where the Court takes judicial notice, it does not do so for the truth asserted within the documents. (Dkt. No. 23.) Judicial notice is appropriate for "adjudicative fact[s]" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b). Defendant requests

**I.    BACKGROUND**

The Court summarizes the allegations relevant to the disposition of this motion. The complaint alleges and the judicially-noticed materials provide:

Defendant AARP is a "nonprofit organization that helps people navigate ageless realities—financial well-being, health, how to contribute to society and local communities, and how to fully enjoy life." (Compl. at 5 ¶ 10.)[2] As part of this mission, AARP's website "offers content such as videos, podcasts, and games." (*Id.*)

Plaintiffs are AARP members and subscribers who have watched videos posted on AARP's website. (Compl. at 3 ¶¶ 17–18 and 4 ¶¶ 1–2.) They also have Facebooks on which they include information such as their names.

Since January 1, 2013 (*id.* at ¶ 35), AARP has transmitted their information to Meta, Inc. ("Meta"), which owns Facebook, through a tool called the Meta Pixel ("Pixel"). The Pixel, which "AARP voluntarily chose to install" on its website, (*id.* at 7 ¶ 22), "sends to Meta data relating to the interactions a user takes on a particular website" (*id.* at 6 ¶ 18). This transmission includes plaintiffs' Facebook Profile ID, which can be used to access the user's Facebook page and identifying information included there, and the title of each video accessed. (*Id.* at 4 ¶ 25 and 5 ¶ 8.) AARP transmitted its users' information "without obtaining consent through a standalone consent

---

the Court take notice of nine exhibits: (A) the AARP.org homepage; (B) the "About AARP" webpage from AARP.org; (C) the "About Us" webpage from AARP.org; (D) the "U.S. Surgeon General Dispels 4 Common COVID-19 Myths" webpage from AARP.org; (E) the "Who Will Care for the LGBTQ Community?" webpage from AARP.org; (F) the "Membership" webpage from AARP.org; (G) the "Our Privacy Policy, Your Privacy Rights" webpage from AARP.org; (H) the "Specifications for Meta Pixel standard events" webpage from Meta, Inc.'s Business Help Center; and (I) the "How usernames and user IDs are used on Facebook Profiles" from Meta's Facebook Help Center. (Dkt. No. 22-2.) The Court will not take judicial notice of any disputed facts. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Further, by defendant's own admission, all nine exhibits are not incorporated by reference. (Dkt. No. 22-2 at 5–6.) The complaint never references anything within Exhibits D, E, and F. Accordingly, the Court will not treat those exhibits as incorporated and the motion in that regard is denied.

[2] Cites to "¶" refer to paragraphs in the complaint. The complaint, however, restarts the paragraph number on page 4 and therefore contains two sets of paragraphs number 1–26. AARP cites paragraphs number 1–26 with the page number for clarity. The Court does the same. To the extent the complaint is amended, plaintiffs shall correct the numbers.

form." (*Id.* at 5 ¶ 8.) Plaintiffs allege that "AARP's conduct has resulted in economic harm," (*id.* ¶ 30), to them because their personal information "constitutes valuable data in the digital advertising-related market." By sharing it, AARP deprived plaintiffs from control over that information and "prevented them from realizing its full value for themselves." (*Id.* at ¶ 29.) Furthermore, plaintiffs paid for access to AARP's website in part because "they trusted that AARP's privacy practices comported with their privacy preferences." (*Id.* ¶ 32.) By selling their information when plaintiffs watched videos on AARP's website, AARP diminished the value of the services for which plaintiffs subscribed. (*Id.* at ¶ 31.)

## II.  LEGAL FRAMEWORK

The parties do not dispute the motion to dismiss standard which is well-known and well-established. Fed. R. Civ. P. 12(b)(6); *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor do they dispute the pleading requirements of Fed. R. Civ. P. 8.

## III.  ANALYSIS

Plaintiffs assert four causes of action resting on the allegation that AARP impermissibly shares with a third-party, Meta, the video content plaintiffs watched on AARP's website. In response, defendant moves to dismiss all claims, each on various grounds.

With respect to the VPPA, defendant attacks plaintiffs' allegations of the elements of the claim.  With regarding to the UCL, defendant challenges standing and the pleading of the elements of the "unlawful" and the "unfair" prongs.  In a more cursory fashion, defendant also challenges the Rhode Island DTPA claim (one page), unjust enrichment claim (one page), remarkably raises a Rule 8 argument (one page), and finally invokes the statute of limitations (two pages).  The Court addresses each.

### A.  Video Privacy Protection Act

The VPPA states that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). Exceptions exist.  Relevant here, a provider

may disclose a consumer's personally identifiable information "if the disclosure is incident to the ordinary course of business of the video tape service provider." *Id.* § 2710(b)(2)(E).

To state a claim for unlawful disclosure under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). As VPPA claims have proliferated in recent years, courts have disputed how some of these elements may be pled. The Court incorporates its explanation of the law and this Court's stance on these issues in *Ghanaat v. Numerade*, 4:23-cv-00833-YGR, Dkt. No. 34 (hereinafter cited as "*Ghanaat*").

AARP argues the VPPA claim fails for four independent reasons: (1) plaintiffs are not "consumers," as required by the VPPA; (2) AARP is not a "video tape service provider," as defined by the VPPA; (3) plaintiffs failed to allege that AARP "knowingly" disclosed their "personally identifiable information"; and (4) in the alternative, AARP's conduct, as alleged, falls within the VPPA's "ordinary course of business" exception. The Court considers each.

### 1. "Consumer"

A "consumer" is defined by the VPPA as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). As explained in *Ghanaat*, this Court finds that where users exchanged personal information in return for a service, they are consumers. Defendants argue that this threshold is not met because plaintiffs do not allege that they needed to provide their information or payment to access AARP's videos. Rather, the videos are readily available to anyone who visits the site. The Court agrees with defendant that there must be some nexus between the plaintiff and defendant and the video content provided. Accordingly, the motion to dismiss the VPPA claim is **GRANTED**. Dismissal is **WITH LEAVE TO AMEND** to the extent plaintiffs can allege they exchanged something of value, like their information, for the video content.

### 2. "Video Tape Service Provider"

To be a video tape services provider, a defendant must be engaged in the business of renting, selling, or delivering audio visual materials. This means the defendant must be "substantially involved in the conveyance of video content to consumers but also significantly tailored to serve that purpose." *Ghanaat* at 3 (collecting cases finding same). Here, none of plaintiffs' allegations indicate that providing video content is a substantial or significant purpose of AARP. Plaintiff proffers that it is sufficient that AARP is substantially involved in the conveyance of its video content (i.e. that it creates and maintains the content rather than relying on a third-party to do so). These allegations are not included in the complaint. Even if they were, the Court does not find it plausible that any company that creates its own video content, however ancillary to the company's purpose, is "engaged in the business of" delivering audio visual content. Accordingly, the motion to dismiss the VPPA claim is **GRANTED**. Dismissal is **WITH LEAVE TO AMEND** to the extent plaintiffs can meet this standard.[3]

### 3. Personally Identifiable Information

AARP next asserts that Facebook IDs and video names are not sufficient to constitute personally identifiable information. As explained in *Ghanaat*, such information can constitute personally identifiable information under the "ordinary person test." *Ghanaat* at 8. The Court further finds that plaintiffs have adequately alleged so here.

Defendants' arguments to the contrary are unavailing. First, defendants argue that plaintiffs do not allege "*how* an ordinary person could identify someone with just a user's Facebook Profile ID." (MTD at 13.) Plaintiffs do. They state that anyone with their Facebook ID can link to their Facebook Profiles, which contain uniquely identifying information. (Compl. at 5–6 ¶¶ 15–16.) Defendants further argue that a judicially-noticed article from Facebook's Help Center states that a Facebook ID is not personally-identifying. (Ex. I.) The article does more: even though a Facebook ID "doesn't personally identify you" it does allow "someone with the ID to see your profile." (*Id.*) In other words, the article clarifies that, though the random string of numbers making up a

---

[3] The Court disagrees with defendant's additional argument that AARP is not a video tape service provider because it does not provide "feature length videos." *See Ghanaat* at 6.

5

Facebook ID would not identify someone, that ID links to a Profile which could. That is what plaintiffs are alleging. The Court does not resolve ultimate issues of fact at this stage. Drawing all reasonable inferences in their favor at this stage, the allegations with respect to this element are sufficient to proceed.

### 4.     Knowing Disclosure

Defendant argues that plaintiffs fail to adequately allege defendant knowingly disclosed Facebook IDs and video names to Meta because they do not allege facts indicating that AARP knew that it was transmitting consumer identities, the identify of specific videos, and whether a user requested or obtained such videos. At this stage, plaintiffs' allegations that defendant knowingly installed the Pixel and shared plaintiffs' information is adequate. *See Ghanaat* at 8 (citing cases finding same).[4]

### 5.     Ordinary Course of Business Exception

The VPPA exempts disclosures made "incident to the ordinary course of business of the video tape service provider." 18 U.S.C. § 2710(b)(2)(E). Under the VPPA, the term "ordinary course of business means *only* debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2) (emphasis supplied).

AARP contends that, if considered a video tape service provider, the "ordinary course of business" exception applies as the allegations merely concern "order fulfillment" and "request processing." Here, AARP focuses on the allegations that the Pixel is used as an "advertising and analytics tool" that allows AARP to "track visitor actions" to "target more specific ads" to its users.

---

[4] AARP contends that plaintiffs have not plausibly pled it purposefully divulged their information in part by pointing to Exhibit H to its motion to dismiss. (MTD at 14.) This argument raises a factual argument not appropriate at this stage.

In short, Exhibit H, according to defendants, notes that in Pixel's "default settings," it only shares what URL page is visited, not the particular content viewed. (*Id.*) Relying on this exhibit, defendant argues that just because it chose to use Pixel does not necessarily establish that it knowingly disclosed plaintiffs' watch history. (*Id.*) As previously noted, the Court will not take notice of any disputed facts contained within a document. *See Khoja*, 899 F.3d at 999. Furthermore, the cited Exhibit does not establish that Pixel never shares what a user watched on a webpage; it merely states that sometimes the software shares only the URL visited, not what users see or do on that webpage. (*Id.*)

6

(Compl. at 6 ¶ 19; see also ¶ 23.) Thus, AARP argues, Pixel is a "tool provided by a service provider" for "quintessential marketing services."

AARP's argument is inconsistent with the plain language of the statute. While the terms "order fulfillment" and "request processing" are not defined in the VPPA, AARP does not explain how "marketing" falls under order fulfillment or request processing.

AARP's alleged use does not fall within the exception. On that basis, AARP's motion to dismiss is **DENIED.**

### 6. UCL

AARP argues that plaintiffs lack standing to bring a UCL claim because they did not suffer any economic harm from the alleged information-sharing.

To state a UCL claim, plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact; and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (internal citation and quotations omitted).

Here, plaintiffs respond that they suffered two types of economic harm: (1) they paid more for their membership than they would have if they had known that AARP was sharing their video-watching history, and (2) by sharing their personal information, AARP diminished its value. Both of plaintiffs' theories are premised on a cognizable violation of the VPPA, which the Court finds they do not have. Neither proffered theory persuades independently. Further, a UCL claim must be grounded in an "unfair" or "unlawful" practice. Plaintiffs offer nothing other than the VPPA violation discussed above and therefore the claims that hinge on that theory must also be dismissed.

Moreover, plaintiffs' theories raise more questions than they answer. Nowhere in the complaint do plaintiffs state that the AARP videos they watched were for subscribers only. If the videos were freely available, member or not, then AARP could not have diminished the value of plaintiffs' subscription by sharing their viewing history with Meta. In that case, the videos simply were not part of the paid-for subscription. Plaintiffs do not acknowledge this gap in their complaint.

7

1  Second, plaintiffs failed to allege how the value of their personal information was diminished. To proceed on this theory, plaintiffs would have to show that their "personal information had inherent economic value and the mere disclosure of such data constitutes a loss of money or property." *Capello v. Walmart, Inc.*, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019). Several courts have found that in this context they cannot. *Id.* (collecting cases); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F.Supp.3d 767, 785 (N.D. Cal. 2019) (holding that plaintiffs lacked standing to bring a claim that they were "deprived of the economic value of their personal information as a result of its dissemination").

The two cases on which plaintiffs rely do not compel a different result. *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688 (Cal. 2007) was abrogated and in any case has nothing to do with the issue here. The other, *In re Anthem, Inc. v. Data Breach Litig.*, 2016 WL 3029783 (N.D. Cal. May 27, 2016), involved a cyberattack on a medical database containing users' social security numbers, names, and dates of birth, among other sensitive information, which plaintiffs alleged could be sold to identity thieves. Though the court in *In re Anthem* did find that plaintiffs could recover damages for the "diminution in value" of their personal information, this was because there was a real risk that plaintiffs' stolen information would be fraudulently used to cause them economic harm. *Id.* at *14–*15. There is no allegation of such potential misuse here.

The motion is therefore **GRANTED WITH LEAVE TO AMEND**.

### B. DTPA

Plaintiffs' Rhode Island DTPA claim fails for much of the same reason their UCL claim does. Much like California's UCL, Rhode Island's DTPA is a consumer protection statute which prohibits "unfair or deceptive" activities and provides legal recourse to "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, *as a result* of the use or employ by another person of a method, act, or practice declared unlawful by [the DTPA]." R.I. Gen. Laws § 6-13.1-5.2 (emphasis supplied). As explained above, because plaintiffs have failed to allege any ascertainable economic harm resulting from AARP's allegedly unlawful practices, their claim cannot proceed. The motion as to this claim is **GRANTED WITH LEAVE TO AMEND**.

8

### C. Unjust Enrichment

Finally, the parties dispute whether in California there is a standalone cause of action for unjust enrichment and, if there is, whether plaintiffs have stated such a claim. The California Supreme Court has clarified that plaintiffs can bring independent unjust enrichment claims. *Bruton v. Gerber Products Co.*, 703 Fed. App'x 468, 470 (9th Cir. 2017). The elements of an unjust enrichment claim are "the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1593 (Cal. 2008). However, "[t]here is no equitable reason for invoking restitution when the plaintiff gets the exchange he expected." *Id.* (internal citation and quotations omitted).

Plaintiffs acknowledge that AARP's privacy policy, which the complaint incorporated by reference, informs users that their information may be shared with social media networks for advertising purposes. (Ex. G at 3, 7.) That is precisely what plaintiffs allege AARP did here. Because plaintiffs have not alleged the elements of the claim, the motion is **GRANTED WITH LEAVE TO AMEND**.

### D. Rule 8 and Statute of Limitations

In what the Court considers throw-away arguments, AARP raises a Rule 8 and statute of limitations argument. Rule 8 requires that a complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Courts do at times "dismiss claims under Rule 8 when plaintiffs fail to allege approximately when the actionable misconduct occurred." *Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 135 (N.D. Cal 2020) (collecting cases). That is not this case by a long shot. Counsel is cautioned not to waste judicial resources by merely piling on arguments which the opposing party, and the Court, are required to address. Further, given the factual nature of a statute of limitations, this ground should rarely be raised unless the defendant can demonstrate untimeliness as a matter of law. Here, the conduct at issue is recent and ongoing. Whether or not it violates a statute is separate from whether it was brought within the statute of limitations. The motion on these grounds is denied.

## IV. CONCLUSION

For the foregoing reasons, the motion is **GRANTED WITH LEAVE TO AMEND** as to plaintiffs' claims under the VPPA, UCL, unjust enrichment, DTPA.

Plaintiffs shall file an amended complaint within twenty-one (21) days of this order and shall comply with paragraph 13 of this Court's Standing Order in Civil Cases. Defendant shall file a response within twenty-one (21) days of the filing of the amended complaint. It shall not renew arguments which this Order has denied and shall not raise any new arguments which could have been raised in the instant motion.

This terminates Docket No. 22.

**IT IS SO ORDERED**.

Date: **August 29, 2023**

_____
**YVONNE GONZALEZ-ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**