Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAN MARKELS, WILLIAM MARTIN, and LYNN SEDA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>      v.<br><br>AARP,<br><br>               Defendant. | Case No. 4:22-cv-05499-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     Hon. Yvonne Gonzalez Rogers<br>Date:      September 9, 2025<br>Time:      2:00 pm<br>Courtroom:  Courtroom 1 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..................................................................................... IX

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

I.    INTRODUCTION ...............................................................................................................1

II.   STATEMENT OF THE ISSUE TO BE DECIDED ...........................................................2

III.  FACTUAL AND PROCEDURAL BACKGROUND..........................................................2

    A.    Plaintiffs' Allegations. .............................................................................................2

    B.    AARP's Challenges to Plaintiffs' Complaints...........................................................2

    C.    Fact and Expert Discovery.........................................................................................3

    D.    Plaintiffs' Motion for Class Certification .................................................................4

    E.    The Settlement Negotiations......................................................................................4

IV.   SUMMARY OF SETTLEMENT TERMS .........................................................................5

    A.    The Class....................................................................................................................5

    B.    Settlement Consideration. .........................................................................................5

    C.    Distribution of Settlement Fund. ...............................................................................6

    D.    Objections and Opt-outs ............................................................................................8

    E.    Class Notice and CAFA Notice. ................................................................................9

    F.    Release of Claims. ...................................................................................................10

    G.    Attorneys' Fees and Expenses, and Service Awards for the Class
          Representatives. .......................................................................................................10

    H.    The Claims Administrator and Escrow Agent. ........................................................11

V.    ARGUMENT ....................................................................................................................11

    A.    The Settlement is Fair, Reasonable, and Adequate. ................................................11

          1.    The Proposed Settlement Is the Product of Arm's Length Negotiations
                Among Experienced Counsel. ...................................................................12

i

2.    The Settlement Treats All Class Members Equitably...........................................13

3.    The Relief Under the Proposed Settlement is Adequate.....................................14

B.    The Court Will Be Able to Certify the Class for Purposes of Settlement. .....................20

1.    Class Members Are Too Numerous to Be Joined...............................................20

2.    There Are Common Questions of Law and Fact. ...............................................20

3.    Plaintiffs' Claims Are Typical of the Class. ......................................................21

4.    Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Protect the Interests of the Class. ......................................................................................21

5.    The Requirements of Rule 23(b)(3) Are Met. ....................................................22

a.    Common Issues of Law and Fact Predominate.....................................22

b.    A Class Action is a Superior Means of Resolving This Controversy.............................................................................................23

C.    The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should be Approved. .........................................................................................24

VI.    CONCLUSION.................................................................................................................25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

**TABLE OF AUTHORITIES**

**Cases**

*Aarons v. BMW of N. Am., LLC*,
  2014 WL 4090564 (C.D. Cal. 2014) .................................................................17

*Aikens v. Malcolm Cisneros*,
  2019 WL 3491928 (C.D. Cal. July 31, 2019).....................................................18

*Alcazar v. Fashion Nova, Inc.*
  2022 WL 19975445 (N.D. Cal. Sept. 6, 2022) ..............................................23, 24

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ...........................................................................12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)............................................................................................20

*Carlotti v. ASUS Computer Int'l*,
  2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ...................................................25

*Castro v. ABM Indus., Inc.*,
  325 F.R.D. 332 (N.D. Cal. 2018)........................................................................22

*Chess v. Volkswagen Grp. of Am., Inc.*,
  2021 WL 5507177 (N.D. Cal. Nov. 24, 2021) ...................................................12

*Cottle v. Plaid Inc.*,
  340 F.R.D. 356 (N.D. Cal. 2021)........................................................................25

*Coulter-Owens v. Time, Inc.*,
  308 F.R.D. 524 (E.D. Mich. 2015) .....................................................................23

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
  2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................................18

*Ellis v. Harder Mech. Contractors, Inc.*,
  2022 WL 3638165 (N.D. Cal. Aug. 23, 2022) ...................................................12

*Fed. Ins. Co. v. Caldera Med., Inc.*,
  2016 WL 5921245 (C.D. Cal. Jan. 25, 2016) .....................................................12

*Feldman v. Star Trib. Media Co. LLC*,
  2024 WL 3026556 (D. Minn. June 17, 2024).....................................................15

*Feltzs v. Cox Comm's Cal., LLC*,
  2022 WL 2079144 (C.D. Cal. Mar. 2, 2022).......................................................18

*Foster v. Adams & Assocs., Inc.*,
  2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) .....................................................15

*Gold v. Lumber Liquidators, Inc.*,
  323 F.R.D. 280 (N.D. Cal. 2017)........................................................................22

*Haney v. Recall Ctr.*,
  282 F.R.D. 436 (W.D. Ark. 2012) ......................................................................23

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 21

*Hendricks v. StarKist Co.*,
   2015 WL 4498083 (N.D. Cal. 2015) ..................................................................... 17

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) .......................................................................... 21

*Hopkins v. Stryker Sales Corp.*,
   2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ........................................................... 10

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ................................................... 12, 21

*In re Domestic Airline Travel Antitrust Litig.*,
   322 F. Supp. 3d 64 (D.D.C. 2018) ........................................................................ 25

*In re Facebook Biometric Info. Priv. Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018) .......................................................................... 23

*In re Facebook Biometric Info. Priv. Litig.*,
   522 F. Supp. 3d 617 (N.D. Cal. 2021), *aff'd*, No. 21-15553WL 822923 (9th Cir. Mar. 17,
   2022) ...................................................................................................................... 14

*In re Haier Freezer Consumer Litig.*,
   2013 WL 2237890 (N.D. Cal. 2013) ..................................................................... 18

*In re Hulu Priv. Litig.*,
   2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................ 18

*In re Oracle Sec. Litig.*,
   1994 WL 502054 (N.D. Cal. 1994) ....................................................................... 13

*In re Sony PS3 "Other OS" Litig.*,
   2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) ...................................................... 25

*In re Toys R Us-Delaware, Inc.*
   300 F.R.D. 347 (C.D. Cal. 2013) .......................................................................... 23

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
   2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ........................................................ 17

*In re Yahoo Mail Litigation*,
   2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ...................................................... 22

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   2016 WL 3648478 (N.D. Cal. 2016) ..................................................................... 14

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   2016 WL 6778406 (N.D. Cal., 2016) .................................................................... 13

*In re: Vizio, Inc., Consumer Privacy Litig.*,
  2019 WL 12966638 (C.D. Cal. July 31, 2019) ................................................................. 15

*J.L. v. Cissna*,
  2019 WL 415579 (N.D. Cal. 2019) .................................................................................. 20

*Jancik v. WebMD LLC*,
  2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ................................................................ 21, 23

*Kacsuta v. Lenovo (U.S.) Inc.*,
  2014 WL 12585783 (C.D. Cal. 2014) ........................................................................ 13, 22

*Kulesa v. PC Cleaner, Inc.*,
  2014 WL 12581769 (C.D. Cal. 2014) .............................................................................. 13

*LaGarde v. Support.com, Inc.*,
  2012 WL 13034899 (N.D. Cal. Nov. 2, 2012) .................................................................. 13

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 12

*Mendoza v. Hyundai Motor Co.*, Ltd,
  2017 WL 342059 (N.D. Cal. 2017) .................................................................................. 14

*Mergens v. Sloan Valve Co.*,
  2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) ................................................................ 21

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ......................................................................................... 22

*Montera v. Premier Nutrition Corp.*,
  2025 WL 751542 (N.D. Cal. Mar. 10, 2025), *appeal docketed*, No. 25-2133 (9th Cir. Apr. 7,
  2025) ............................................................................................................................... 19

*Morris v. FPI Mgmt., Inc.*,
  2022 WL 3013076 (E.D. Wash. Feb. 3, 2022) ................................................................ 14

*One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*,
  2011 WL 13128375 (C.D. Cal. 2011) .............................................................................. 23

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................................................................... 21

*Pigford v. Veneman*,
  355 F. Supp. 2d 148 (D.D.C. 2005) ................................................................................. 25

*Ramirez v. TransUnion, LLC*,
  2022 WL 2817588 (N.D. Cal. July 19, 2022) .................................................................. 13

*Roberts v. Source for Pub. Data*,
  2009 WL 3837502 (W.D. Mo. Nov. 17, 2009) ................................................................ 23

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ......................................................................................... 20

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................. 19

*Rogers v. BNSF Ry. Co.*,
    680 F. Supp. 3d 1027 (N.D. Ill. 2023) .................................................... 16

*Sandoval v. Cnty. of Sonoma*,
    2015 WL 1926269 (N.D. Cal. Apr. 27, 2015) ........................................... 5

*Schaffer v. Litton Loan Servicing, LP*,
    2012 WL 10274679 (C.D. Cal. 2012) ..................................................... 16

*Shin v. Plantronics, Inc.*,
    2020 WL 1934893 (N.D. Cal., 2020) ...................................................... 18

*Solomon v. Flipps Media, Inc.*,
    136 F.4th 41 (2d Cir. 2025) ................................................................... 17

*Spann v. J.C. Penney Corp.*,
    314 F.R.D. 312 (C.D. Cal. 2016) ............................................................ 16

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
    251 U.S. 63 (1919) ................................................................................ 16

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................. 21

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .......................................................................... 22

*Van Lith v. iHeartMedia + Entm't, Inc.*,
    2017 WL 1064662 (E.D. Cal. 2017) ....................................................... 13

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................ 10

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ................................................................ 16

*West v. California Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. 2017) ........................................................... 20

*Wilcox v. Swapp*,
    330 F.R.D. 584 (E.D. Wash. 2019) ......................................................... 23

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ................................................................ 23

**Statutes**

18 U.S.C. § 2710 ..................................................................................... 1, 6, 16

28 U.S.C. § 1715 ........................................................................................ ix, 10

Cal. Bus. And Prof. Code § 17200 .................................................................... 2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

**Other Authorities**

Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1 ............................................ 2

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................... 2

Fed. R. Civ. P. 23(a) .......................................................................................................... ix, 20

Fed. R. Civ. P. 23(a)(1) ............................................................................................................ 20

Fed. R. Civ. P. 23(a)(2) ............................................................................................................ 20

Fed. R. Civ. P. 23(a)(3) ............................................................................................................ 21

Fed. R. Civ. P. 23(a)(4) ............................................................................................................ 21

Fed. R. Civ. P. 23(b)(3) ...................................................................................................... ix, 24

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 24

Fed. R. Civ. P. 23(e) ............................................................................................. ix, 18, 20

Fed. R. Civ. P. 23(e)(1) ............................................................................................................ 20

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................................ 12, 24

Fed. R. Civ. P. 23(e)(2) ...................................................................................... 11, 12, 13, 14

Fed. R. Civ. P. 23(e)(3) ............................................................................................................ 14

Fed. R. Civ. P. 30(b)(6) .............................................................................................................. 4

Fed. R. Civ. Pro. 23(e)(2)(D) .................................................................................................. 14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

**NDCA LR CLASS ACTION GUIDANCE TABLE**

| Guidance Section | Guidance Topic | Location Where Guidance Topic is Discussed |
|---|---|---|
| 1(a) | Differences Between Settlement Class and Classes in Complaint | Page 5 |
| 1(b) | Difference Between Released Claims and Claims in Complaint | Page 10<br>Grille Decl., ¶ 57 |
| 1(c) | Recovery Under Settlement; Potential Exposure; Discount | Pages 5-6, 14-19<br>Grille Decl., ¶¶ 18-21 |
| 1(d) | Other Cases Affected by Settlement | Grille Decl., ¶ 22 |
| 1(e) | Proposed Allocation Plan | Pages 6-7<br>Grille Decl., ¶¶ 23-33 |
| 1(f) | Claims Rate | Pages 7-8, 14-15 |
| 1(g) | Reversion | Pages 1, 5<br>Grille Decl., ¶ 19 |
| 2(a) | Claims Administrator | Page 11<br>Grille Decl., ¶¶ 35-41 |
| 2(b) | Class Member Data; Costs of Administration | Simpluris Decl. ¶¶ 5-9, 11 |
| 3 | Notice | Pages 9-10, 24-25<br>Grille Decl., ¶¶ 44-53<br>Settlement Agreement, Exs. 3, 6, 7<br>Simpluris Decl. ¶¶ 13-40 |
| 4 | Opt-outs | Page 8<br>Grille Decl., ¶¶ 54-58<br>Simpluris Decl. ¶ 45 |
| 5 | Objections | Page 8<br>Grille Decl., ¶¶ 54-58<br>Simpluris Decl. ¶ 45 |
| 6 | Fees and costs | Pages 6,10<br>Grille Decl., ¶¶ 61-64, 66 |
| 7 | Service awards | Pages 6, 11<br>Grille Decl., ¶ 65 |
| 8 | *Cy Pres* Award | Page 7 |
| 9 | Timeline | Page ix |
| 10 | CAFA Notice | Page 10 |
| 11 | Comparable Outcomes | Pages 7-8, 15<br>Grille Decl., Ex. B |

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on September 9, 2025 at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Plaintiffs Jan Markels, William Martin, and Lynn Seda, will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for entry of the proposed Preliminary Approval Order, and request that the Court set the following schedule:

| Event | [Proposed] Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of the motion for preliminary approval |
| Notice Date | No later than 35 calendar days after entry of preliminary approval order |
| Plaintiffs to move for final approval of the settlement and submit declaration of Claims Administrator providing overview of notice process and specifying costs and expenses incurred to date | 75 calendar days after entry of preliminary approval order |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | 75 calendar days after entry of preliminary approval order |
| Deadline to file a claim | 110 calendar days after entry of preliminary approval order |
| Deadline for the submission of objections and requests for exclusion ("Objection or Opt-out Deadline") | 110 calendar days after entry of preliminary approval order |
| Reply briefs in support of final approval and motion for attorneys' fees, expenses, and service awards and updated declaration of Claims Administrator | 125 calendar days after entry of preliminary approval order |
| Final Fairness Hearing | At least 140 calendar days after entry of preliminary approval order |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the Declarations of Simon S. Grille ("Grille Decl.") and Simpluris Inc. in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Simpluris Decl.") filed

herewith, the record in this action, the argument of counsel, and any other matters the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs sued AARP under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, for disclosing its subscribers' viewing choices and personal information to Meta Platforms, Inc. ("Meta") without obtaining their consent in the form required under the VPPA. Plaintiffs now seek preliminary approval of a Settlement[1] that would require Defendant AARP ("AARP") to pay $12.5 million on a non-reversionary basis and conform its use of the Meta Pixel to the requirements of the VPPA. Notice will be given by mail and email, supplemented by digital notice. To participate, Class Members need only submit a simple online claim. Based on claims rates in similar settlements, and subject to the usual caveats, Plaintiffs project individual payments in the range of $47 to $237.

The settlement follows two motions to dismiss, extensive written discovery, consultation with computer science and online advertising experts, and seven depositions, including six depositions of AARP employees and a deposition of critical non-party, Meta Platforms, Inc. ("Meta"), in addition to Plaintiffs' class certification motion. There were two mediations. A first session before the Hon. Edward A. Infante (Ret.) was unsuccessful. After further factual development and briefing on Plaintiffs' motion for class certification, the Parties held a second successful mediation before the Hon. Jeremy D. Fogel (Ret.).

The Settlement provides an excellent result for the Class, as continued litigation carries the risk of a lower recovery or none at all. Since 2021, there have been several hundred VPPA cases filed in connection with the use of Meta's Pixel, and the case law is evolving rapidly. In addition to the risks associated with class certification, summary judgment, and trial in this case, Plaintiffs face the risk of adverse developments in unrelated VPPA cases that could reduce or eliminate the prospects for a favorable resolution in this case. The Settlement delivers a favorable result on a risk-adjusted basis, and in absolute terms represents one of the largest settlement funds to date under the VPPA. The Settlement also ensures Class Members' rights under VPPA will be respected going forward, and is thus a

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement, filed concurrently herewith as Exhibit A.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

1    successful outcome for Class Members.  The Parties negotiated the Settlement in conformity with the

2    elements of Rule 23 and the Northern District's Procedural Guidance for Class Action Settlements

3    ("Procedural Guidance").[2]

4    Therefore, as set forth in further detail below, Plaintiffs respectfully request that the Court enter

5    the proposed order to authorize notice to the class and schedule a final fairness hearing.

6    **II.    STATEMENT OF THE ISSUE TO BE DECIDED**

7    Should the Court, pursuant to Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure,

8    preliminarily approve the Parties' Settlement, authorize notice to the proposed class, and enter Plaintiffs'

9    proposed schedule of further settlement proceedings?

10    **III.    FACTUAL AND PROCEDURAL BACKGROUND**

11    **A.    Plaintiffs' Allegations.**

12    Plaintiffs filed a Class Action Complaint on September 27, 2022, alleging that AARP disclosed

13    to Meta the specific video materials its subscribers requested or obtained from its website without first

14    obtaining their consent in the form required under the VPPA. ECF No. 1. Plaintiffs also asserted claims

15    against AARP for unjust enrichment and violations of California's Unfair Competition Law ("UCL"),

16    Cal. Bus. And Prof. Code § 17200, *et seq.*, and Rhode Island's Deceptive Trade Practices Act

17    ("DTPA"), R.I. Gen. Laws § 6-13.1-1, *et seq. Id.*

18    **B.    AARP's Challenges to Plaintiffs' Complaints.**

19    AARP moved to dismiss the Complaint on December 6, 2022, challenging the sufficiency of

20    Plaintiffs' allegations in support of their VPPA, UCL, DTPA, and unjust enrichment claims, and

21    arguing that the applicable statute of limitations barred Plaintiffs' claims. ECF No. 22. On August 29,

22    2023, the Court granted in part and denied in part the motion to dismiss with leave to amend. ECF No.

23    36. The Court dismissed Plaintiffs' VPPA claims, finding that while Plaintiffs had adequately alleged

24    that AARP "knowingly disclosed" their "personally identifiable information" and that AARP's

25    conduct did not fall within the "ordinary course of business" exemption, Plaintiffs had failed to

26    sufficiently allege that they were VPPA "consumers" or that AARP was a video tape service provider.

27

28

---

[2] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

1    *Id.* The Court dismissed Plaintiffs' UCL and DTPA claims to the extent they relied on the VPPA

2    claim, and because Plaintiffs failed to establish that they suffered any economic harm from AARP's

3    conduct. *Id.* The Court also dismissed Plaintiffs' unjust enrichment claim, reasoning that Plaintiffs had

4    not alleged the elements of the claim because AARP's privacy policy "informs users that their

5    information may be shared with social media networks for advertising purposes." *Id.*

6         Plaintiffs filed a First Amended Complaint ("FAC") on September 19, 2023, adding another

7    Plaintiff to the litigation and addressing the Court's August 29 motion to dismiss order. ECF No. 38.

8    Plaintiffs elected not to re-plead their unjust enrichment and DPTA claims. *See id.* AARP moved to

9    dismiss the FAC on October 17, 2023. ECF No. 40. Plaintiffs opposed on November 16, 2023, and

10   AARP replied on December 7, 2023. ECF Nos. 41, 42. On December 18, 2023, the Court issued an

11   Order denying AARP's second motion to dismiss, finding that Plaintiffs sufficiently alleged their

12   VPPA and UCL claims. ECF No. 43.

13        On June 14, 2024, Plaintiffs moved to voluntarily dismiss former Plaintiff Ziman's individual

14   claims over AARP's objection. ECF Nos. 67, 71, 72. On July 31, 2024, the Court granted Plaintiffs'

15   Motion and dismissed Mr. Ziman. ECF No. 76.

16        Plaintiffs filed a Second Amended Complaint ("SAC") on July 19, 2024, adding another

17   Plaintiff to the litigation but otherwise leaving the allegations and claims asserted against AARP

18   unchanged. ECF No. 75.

19        **C.    Fact and Expert Discovery.**

20        Settlement negotiations followed factual development through formal and informal discovery.

21   Plaintiffs propounded thirty-eight document requests, sixteen interrogatories, and thirty-two requests

22   for admission to AARP. Grille Decl., ¶ 13. The Parties conducted thorough, iterative exchanges

23   regarding the search terms AARP used to identify responsive documents, leading AARP to produce

24   approximately 14,400 documents. *Id.* Plaintiffs' Counsel reviewed and analyzed AARP's document

25   production, which provided critical information about AARP's operations and use of the Meta Pixel

26   and served as the foundation for Plaintiffs' strategy for depositions, class certification, expert analysis,

27   and settlement. *Id.*

28

Plaintiffs' Counsel deposed six current and former AARP employees, including three Rule 30(b)(6) witnesses. *Id.* Plaintiffs invoked the Court's joint discovery letter procedure to address a dispute about the relevant time period and two definitions in Plaintiffs' Rule 30(b)(6) deposition notice. *Id.* ¶ 14; ECF Nos. 85, 88. The Court ordered AARP to provide 30(b)(6) deposition testimony for the full time period noticed by Plaintiffs and adopted Plaintiffs' definitions for the disputed terms. Grille Decl., ¶ 14; ECF No. 91. Plaintiffs' Counsel also defended the depositions of Plaintiffs Jan Markels, William Martin, and Lynn Seda, as well as the deposition of Plaintiffs' expert Zubair Shafiq. Grille Decl. ¶ 13. Each Plaintiff responded to one set of document requests and one set of interrogatories. *Id.* ¶ 13.

Plaintiffs also served a subpoena seeking critical documents and testimony from Meta. After extensive negotiations, Plaintiffs ultimately received four productions and deposed Meta's corporate designee in a proceeding consolidated with an unrelated VPPA matter. Grille Decl., ¶ 15.

### D.    Plaintiffs' Motion for Class Certification

On January 14, 2025, Plaintiffs moved for class certification. ECF No. 92. Plaintiffs' class certification motion was supported by the expert report of Dr. Zubair Shafiq. Grille Decl. ¶ 12; ECF No. 93-9. On April 15, 2025, AARP opposed Plaintiffs' class certification motion and filed a motion to strike the expert opinions of Dr. Shafiq. ECF Nos. 100, 101. Plaintiffs were preparing to oppose AARP's motion to strike and file their reply in support of class certification when the parties reached an agreement in principle to resolve this matter. Grille Decl., ¶ 12.

### E.    The Settlement Negotiations.

The Parties held a first mediation before the Honorable Edward A. Infante (Ret.) on June 26, 2024. *Id.* ¶ 16. There was little progress. The Parties returned to settlement discussions during briefing on Plaintiffs' class certification motion (*see* ECF No. 92) and mediated before the Honorable Jeremy D. Fogel on May 9, 2025, at which time the Parties reached an agreement in principle. *Id.* ¶¶ 16-17. The Parties then negotiated the settlement agreement in the following weeks and executed it on July 25, 2025. *Id.*

## IV.    SUMMARY OF SETTLEMENT TERMS

### A.    The Class.

The Class consists of all persons in the United States who, between September 27, 2020, and the date of Preliminary Approval, requested or obtained video content on AARP.org while in the United States and at a time the person had a Facebook account and was either an AARP member or a registered user of AARP.org. Grille Decl., ¶ 18; SA at § 1.10. The Class is coextensive with the nationwide class alleged in Plaintiffs' operative complaint with the exception that the class period was shortened to conform to the statute of limitations. Claims outside the statute of limitations period are not being released. *See* ECF No. 75 at ¶¶ 117-18; ECF No. 22 at 22-23 (arguing that Plaintiffs are time-barred from bringing any VPPA claim that accrued prior to September 27, 2020); *see also Sandoval v. Cnty. of Sonoma*, 2015 WL 1926269, at *2 (N.D. Cal. Apr. 27, 2015) (stating "[t]here is no rule that the definition of a certified class must exactly match the definition contained in a complaint" and allowing plaintiffs to narrow the definition when moving for class certification). The class definition also uses the VPPA's "requested or obtained" language rather than "viewed." *See* ECF No. 75 at ¶ 107; *cf.* Grille Decl., ¶ 18. The Settlement Class includes all members of the class that Plaintiffs moved to certify. *See* ECF No. 92 at 10 (moving to certify "a Class of all persons residing in the United States who subscribed to AARP and requested or obtained prerecorded video content on AARP.org while logged into their Facebook account on the same browser from June 19, 2021 to the present").

The Class excludes AARP, its parents, subsidiaries, affiliates, officers, directors, and employees, and employees of AARP's parents, subsidiaries, or affiliates; any entity in which AARP has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members. SA at § 1.10.

### B.    Settlement Consideration.

Under the Settlement, AARP will make a non-reversionary $12.5 million payment for the benefit of Class Members. SA at §§ 1.40, 2.1. To the extent approved by the Court, notice costs, administration expenses, attorneys' fees and costs, and service awards will be deducted from the fund.

1  The balance (the "Net Settlement Fund") will be applied to pay claims. SA at § 1.23. Plaintiffs will

2  seek up to 30% of the fund in attorneys' fees, up to $270,000 to reimburse expenses, and a service

3  award of up to $10,000 for each Class Representative. Grille Decl., ¶¶ 62, 64-65; SA at §§ 8.1-8.8.

4  AARP will also agree to new limits on its use of the Meta Pixel. Specifically, within 45 days of

5  Preliminary Approval, AARP will cease or limit the operation of the Meta Pixel on any pages on the

6  AARP.org website that include video content, where the information transmitted via the Meta Pixel

7  identifies a person as having requested or obtained specific video materials on that page, unless: (a) the

8  VPPA is amended or repealed in relevant part, judicially invalidated in relevant part, or judicially

9  construed not to be violated by use of the Meta Pixel or other website tracking technology in similar

10  circumstances; or (b) AARP obtains consent in the form required by the VPPA, 18 U.S.C.

11  § 2710(b)(2)(B); or (c) the disclosure of information to Meta via the Meta Pixel would not violate the

12  prevailing legal standard under U.S. Supreme Court or Ninth Circuit law. Grille Decl., ¶¶ 20-21, SA at

13  §§ 2.4-2.6. AARP's obligation does not apply to situations where the Meta Pixel transmits information

14  about pages on the AARP.org website where video content is included along with other content,

15  including without limitation text, editorial content, pictures, infographics, self-help tools, or listing

16  directories, provided that no specific video materials are identified in any URL for such a page. Grille

17  Decl., ¶¶ 20-21; SA at §§ 2.4, 2.5.

18  **C.    Distribution of Settlement Fund.**

19  Requesting or obtaining a video on AARP.org during the Class Period, by itself, does not

20  qualify an individual as a member of the Class. To be eligible to receive a payment, Class Members

21  must have requested or obtained video content on AARP.org as an AARP member or registered user of

22  AARP.org while in the United States and while the Claimant had an active Facebook account. Grille

23  Decl., ¶ 26. Thus, to prove Class membership, Claimants are asked to attest that they requested or

24  obtained video content on the AARP website while in the United States between September 27, 2020

25  and Preliminary Approval, at a time when they both had a Facebook account and were either an AARP

26  member or a registered user of AARP.org. *Id.* ¶ 27; SA at § 3.2. Class Members must provide a link to

27  their Facebook profile, which they can easily paste in the Claim Form. Grille Decl., ¶ 25; SA at § 3.3.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

The claims process is designed to ensure recovery is limited to Class Members. *Id.* ¶ 26. Submitting a link to a Claimant's Facebook profile serves as a reasonable proxy for Class Membership when combined with AARP's records of persons who accessed video content and the Class Member's attestation. *Id.* It further offers Class Members a simple way to participate and expedites payment to eligible Class Members, while avoiding the delay and expense of a forensic data retrieval exercise over nonparty Meta's objections. *Id.* Plaintiffs' Counsel intend the claim procedure to balance the imperative of encouraging participation with the need to limit recovery to eligible Claimants and reduce the potential for fraud. The Claim Form is simple and easily understandable.

The Claims Administrator will audit a sample of claims. *Id.* ¶ 28; SA at § 3.4. If the Claims Administrator determines a Claim is inadequately supported, suspicious, or contains indicia of fraud, the Claims Administrator may request additional supporting documentation or deny the Claim. *Id.* The Claims Administrator will provide Claimants with a reasonable opportunity to cure defective claim submissions during a period of up to 60 days ("Cure Period"). Grille Decl., ¶ 29; SA at § 3.5. After the expiration of the Claim Period and Cure Period, the Claims Administrator will divide the Net Settlement Fund by the total number of valid claims. Grille Decl., ¶ 31; SA at § 3.8. The Claims Administrator will pay each eligible Claimant their share within 15 business days from the Effective Date. Grille Decl., ¶ 31; SA at § 3.8.

Payments will be made electronically via PayPal, Zelle, Venmo, or ACH or via physical check. Grille Decl., ¶ 31. All cash payments to Approved Claimants that have not been claimed within 90 days of issuance will be redistributed *pro rata* to Class Members who cashed the payment during the initial distribution round (after deducting necessary administration expenses from the residual fund). SA at § 3.11. The Settlement Agreement does not contemplate a *cy pres* award. *See* SA § 3.11.

Projecting claim rates in class actions is an inexact science, as rates are driven by external publicity, consumer interest, claim procedures, and other factors. After consulting with the Claims Administrator and evaluating claim rates in similar VPPA-Pixel class action settlements and in other analogous cases, Plaintiffs' Counsel project a claims rate of 1% to 5% of the noticed population, equating to approximately 1.5% to 7.3% of eligible Class Members. *See Stark v. Patreon, Inc.*, No.

7

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

3:22-cv-03131 (N.D. Cal. 2024), ECF No. 197 (1.3% of the noticed population); *Guida v. Gaia, Inc.*, No. 1:22-cv-02350 (D. Colo. 2024), ECF No. 87 (1.47% claims rate); *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502 (D. Mass. 2022), ECF No. 72 (3.3% claims rate); *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS (D. Mass. 2022), ECF Nos. 63, 67 (estimated 2.6% claims rate); *Beltran, Jr. v. Sony Pictures Ent. Inc.*, No. 1:22-cv-04858 (N.D. Ill. 2022), ECF No. 53 (1.75% claims rate); *see also* Grille Decl., Ex. B (Chart Summarizing Comparable Class Settlements).

AARP's records reflect that approximately 3.27 million AARP members and registered users accessed video content on AARP.org while in the United States during the Class Period. Grille Decl., ¶ 44. But not all of these people are Class Members because they did not all simultaneously maintain a Facebook account. Based on publicly available data from the Pew Research Center regarding Facebook usage among adults in the United States during the Class Period, Plaintiffs estimate that about 68.7% of the 3.27 million, or approximately 2.25 million people, are Class Members. *Id.* Based on the estimated claims rate of 1% to 5% of the noticed population, Plaintiffs' Counsel anticipates that eligible Class Members are likely to receive between $47 and $237 each. *Id.* ¶ 45. The actual amount will be determined once all claims have been submitted. *Id.*

### D. Objections and Opt-outs

The Preliminary Approval Order sets a deadline for objections and opt-outs. SA at §§ 7.1, 7.3. Objections and opt-out notices must be in writing. *Id.* Opt-out notices must be submitted individually and must include information necessary to ensure the notice was submitted by a member of the Class. Grille Decl., ¶¶ 54-58; *See Ade v. Viki, Inc.*, No. 3:23-cv-02161 (N.D. Cal. June 3, 2025), ECF No. 103 (approving similar opt-out and objection procedures).

The Parties must respond to objections no later than fifteen (15) days after the Objection or Opt-out Deadline. SA at § 7.2. Within fourteen (14) days of the Objection or Opt-out Deadline, the Claims Administrator will provide counsel with the number of persons who have timely and validly excluded themselves from the Settlement. SA at § 7.5.

E.    **Class Notice and CAFA Notice.**

AARP has email addresses, mailing addresses, or both for approximately 83.2% of AARP members and AARP.org registered users who accessed video content on AARP.org while in the United States and while their subscription was active during the Class Period. Grille Decl. ¶ 46. AARP will provide the Claims Administrator with a list of names and mailing addresses, email addresses, or both for these AARP members and registered users. *Id.*; SA at § 6.1. The Claims Administrator will send direct notice via email to each Class Member for whom AARP has a valid email address. Grille Decl. ¶ 48; SA at § 6.3. If the email bounces back, the Claims Administrator will use a reverse look-up or similar process to obtain an alternative email address and attempt to re-send the notice. Grille Decl. ¶ 48; SA at § 6.3. If the reverse look-up is unsuccessful but a mailing address is available, notice will be mailed. Grille Decl. ¶ 48; SA at § 6.3.

The Claims Administrator will send notice by U.S. mail to Class Members for whom there is only a mailing address. Grille Decl., ¶ 50; SA at § 6.5. If the initial mailing is returned, the Claims Administrator will use a reverse look-up or similar process to obtain an alternative mailing address or an email address and make a second attempt to send the notice. Grille Decl., ¶ 50; SA at § 6.5. Notice will also be posted on the settlement website. A toll-free telephone number and email address will be available to Class Members for assistance. Grille Decl., ¶ 52. The Claims Administrator will send email reminders of the Claims Deadline and Objection and Opt-Out Deadline. *Id.* ¶ 49; SA at § 6.4. The reminder email will include links to the Notice and the electronic Claim Form. *Id.* Any person who does not receive direct notice of the Settlement can submit a claim by providing the Claims Administrator with documentation demonstrating his or her membership in the Class. Grille Decl., ¶ 53; SA at § 6.2.

The Claims Administrator will also implement a paid media notice plan using various forms of digital media. Grille Decl., ¶ 51; SA at § 6.6; Simpluris Decl., ¶¶ 27-38. First, the Claims Administrator will execute a social media advertising campaign on Meta's platforms (Facebook and Instagram) intended to target AARP users who consumed video content. Simpluris Decl., ¶ 37. Next, the Claims Administrator will execute a programmatic banner advertising campaign targeted at

individuals with similar characteristics to the Class. *Id.* ¶¶ 34-36. Finally, the Claims Administrator will display advertisements containing a link to the settlement website to persons who conduct a Google search for keywords related to the case or Settlement. *Id.* ¶ 38.

The Claims Administrator will provide notice to the Attorneys General of each state in which Class Members reside, the Attorney General of the United States, and any other required government officials, consistent with 28 U.S.C. § 1715. SA at § 5.2.

### F.    Release of Claims.

The release is limited to claims arising from the facts underlying the claims and allegations in this action. SA at §§ 1.34-1.38, 4.1-4.5. In accordance with the Procedural Guidance for Class Action Settlements, the release tracks the claims in the SAC. Grille Decl., ¶ 60.

### G.    Attorneys' Fees and Expenses, and Service Awards for the Class Representatives.

Plaintiffs' Counsel will apply for an award of attorneys' fees and reimbursement of litigation costs, together with service awards for the class representatives, at least 35 days before the due date for objections, in accordance with the Procedural Guidance. *Id.* ¶ 61. Plaintiffs' Counsel expects to apply for a fee of up to 30% of the common fund. *Id.* ¶ 62. Plaintiffs' Counsel's total lodestar, through July 15, 2025, is approximately $2,007,457.50 using current rates and representing 3,027.1 hours of work on this matter. *Id.* Thus, if Plaintiffs' Counsel were to submit their fee application now, the multiplier on the fee award would be approximately 1.87, comfortably within the range approved by the District Court for the Northern District of California. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (finding that, in approximately 83% of the cases surveyed by the court, the multiplier was between 1.0 and 4.0 with a "majority . . . 54% . . . in the 1.5—3.0 range"); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); Grille Decl., ¶ 62-63. Plaintiffs' Counsel also will seek reimbursement of case expenses, including payments to expert witnesses, in an amount not to exceed $270,000. *Id.* ¶ 64. The Parties have reached no agreement on the amount of fees and expenses that Plaintiffs' Counsel will seek, and AARP takes no position as to the amount of fees and expenses to be sought. Grille Decl., ¶ 66; SA at § 8.2.

1    Plaintiffs' Counsel also intend to apply for service awards of up to $10,000 for each of the

2    Class Representatives. Grille Decl., ¶ 65; SA at § 8.6. Each Plaintiff devoted substantial time to this

3    case, including in preserving documents and electronic records, reviewing pleadings, communicating

4    with Plaintiffs' Counsel about case developments, responding to written discovery requests, gathering

5    and producing documents, and preparing and sitting for a deposition. *See* Grille Decl., ¶¶ 13, 65.

6    ### H.    The Claims Administrator and Escrow Agent.

7    The settlement administrator's compensation will be deducted from the settlement fund. SA at

8    §§ 1.23, 1.26, 2.2. Plaintiffs' Counsel sent an RFP to five leading class action administrators and

9    received proposals from each of them. Grille Decl., ¶ 35. After reviewing the proposals, and subject to

10    the Court's approval, Plaintiffs' Counsel selected Simpluris based on its qualifications and competitive

11    bid. *Id.* ¶ 36.  Based on information provided by the parties to date, Simpluris anticipates notice and

12    administration expenses not to exceed $701,210. *Id.* ¶ 41. Of this amount, approximately 62% is

13    attributable to direct mail notice (including postage), 12% is attributable to email notice, and 22% is

14    attributable to claims processing and related activities. Simpluris Decl. ¶ 11. In addition to managing

15    the notice program and receiving and processing claims and opt-outs, Simpluris will maintain a

16    dedicated settlement website containing links to the Notice, Claim Form, and all other relevant

17    Settlement documents. Grille Decl., ¶ 39. Plaintiffs' Counsel also sent an RFP to five national banks

18    and received proposals from each of them to serve as escrow agent. Grille Decl., ¶ 42. After reviewing

19    the proposals, and subject to the Court's approval, Plaintiffs' Counsel selected Citibank based on its

20    qualifications and competitive bid. *Id.* ¶ 43.

21    ## V.    ARGUMENT

22    ### A.    The Settlement is Fair, Reasonable, and Adequate.

23    The Settlement satisfies the requirements for preliminary approval. Rule 23(e)(2) directs the

24    Court to consider whether "the class representatives and class counsel have adequately represented the

25    class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate";

26    and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

27    These enumerated factors under Rule 23(e)(2) "focus the court and the lawyers on the core concerns of

28

procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

At preliminary approval, courts generally ask whether "the proposed settlement (1) appears to be the product of serious informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Chess v. Volkswagen Grp. of Am., Inc.*, 2021 WL 5507177, at *7 (N.D. Cal. Nov. 24, 2021) (citation omitted); *see also* Fed. R. Civ. P. 23(e)(1)(B). Because the Court cannot fully assess these factors until the final approval hearing, "a full fairness analysis is unnecessary at this stage." *Ellis v. Harder Mech. Contractors, Inc.*, 2022 WL 3638165, at *4 (N.D. Cal. Aug. 23, 2022) (citation omitted). These factors demonstrate that the settlement here is fair, reasonable, and adequate, in the best interests of the Class, and will likely merit final approval.

### 1.    The Proposed Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.

Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel adequately represented the class and whether the settlement proposal was negotiated at arm's length. To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

This Settlement follows several years of hard-fought litigation: motion practice, technical investigation of the Meta Pixel on AARP's website, and thorough discovery. The Settlement was also reached only after thorough analysis and two formal mediation sessions supervised by two retired judges. *See* Grille Decl., ¶¶ 16-17; Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that "involvement of a neutral" in negotiations "may bear on whether they were conducted in a manner that would protect and further the class interests."); *see also Fed. Ins. Co. v. Caldera Med., Inc.*, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) (whether "the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations" is one factor in determining whether preliminary approval is appropriate). Further, the Parties settled this matter following critical discovery from AARP and nonparty Meta regarding the functionality of AARP's Pixel, AARP's knowledge of the Pixel's implementation and capabilities, and how the Meta Pixel was integrated into AARP's marketing efforts. *See, e.g.*, *LaGarde v. Support.com, Inc.*, 2012 WL 13034899, at *7 (N.D. Cal. Nov. 2, 2012) (robust discovery indicates plaintiffs were sufficiently informed during settlement negotiations). Plaintiffs' expert investigated the technical operation of the Pixel on AARP's website and the data collected from AARP users. Plaintiffs' expert prepared a report that detailed how he tested AARP's website to confirm the alleged conduct occurred. *See Kacsuta v. Lenovo (U.S.) Inc.*, 2014 WL 12585783, at *5 (C.D. Cal. Sep. 15, 2014) (that class counsel hired engineering experts to test and analyze the computers at issue weighed in favor of the settlement).

Plaintiffs' Counsel's discovery and expert work enabled them to "enter[] the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions and which are necessary for a robust negotiation." *Kulesa v. PC Cleaner, Inc.*, 2014 WL 12581769, at *10 (C.D. Cal. Feb. 10, 2014); *Van Lith v. iHeartMedia + Entm't, Inc.*, 2017 WL 1064662, at *16 (E.D. Cal. 2017) ("The adversarial nature of these negotiations and the discovery performed by the parties indicate that the settlement process is procedurally adequate."). Plaintiffs thus satisfy the first factor of Rule 23(e)(2).

In sum, because the Settlement is "the product of serious, informed, non-collusive negotiations" conducted by experienced counsel, this factor weighs in favor of preliminary approval. *Ramirez v. TransUnion, LLC*, 2022 WL 2817588, at *4 (N.D. Cal. July 19, 2022).

### 2.    The Settlement Treats All Class Members Equitably.

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1-2 (N.D. Cal. June 18, 1994)). Plaintiffs' proposal for allocation of the Settlement Fund readily satisfies this standard

because all Class Members are treated equally and those who submit a valid claim will receive a proportional share of the Net Settlement Fund. *See* Grille Decl., ¶ 31; SA at § 3.8; *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 629 (N.D. Cal. 2021), *aff'd*, No. 21-15553, 2022 WL 822923 (9th Cir. Mar. 17, 2022) ("Other than the incentive awards . . . , there are no proposals to treat any class member differently from any other. Each class member who has submitted a valid claim will receive a *pro rata* share of the common fund, less court-approved fees, expenses and other payouts. This factor weighs in favor of final approval."). The settlement "treats class members equitably relative to each other," Fed. R. Civ. Pro. 23(e)(2)(D), in that Plaintiffs sought uniform statutory damages under the VPPA and thus each Class Member receives an equal share of the Net Settlement Fund. *See Morris v. FPI Mgmt., Inc.,* 2022 WL 3013076, at *4 (E.D. Wash. Feb. 3, 2022) ("Because the application and screening fees charged by Defendant to the Class Members were the same, it follows that the settlement award amount would also be the same for each Class Member.").

### 3.    The Relief Under the Proposed Settlement is Adequate.

In determining whether the class-wide relief is adequate under Rule 23(e)(2), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[3] Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Mendoza v. Hyundai Motor Co., Ltd.*, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (citation omitted). Further, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. July 7, 2016) (cleaned up).

Based on AARP's records and publicly available information regarding Facebook usage, Plaintiffs estimate that the Class consists of approximately 2.25 million individuals. Grille Decl., ¶ 44. Given claims rates in similar cases, Plaintiffs' Counsel estimates that eligible Class Members will

---

[3] There are no side agreements to disclose under Rule 23(e)(3).

receive between $47 and $237. *Id.* ¶ 45. The estimated payment *per class member* is consistent with comparable cases. *See Stark v. Patreon, Inc.*, No. 3:22-cv-03131 (N.D. Cal. Jan. 30, 2025), ECF No. 204 (approximately $40 per claimant); *Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524 (S.D.N.Y. May 2, 2024), ECF No. 59 (approximately $9); *Beltran, Jr. v. Sony Pictures Entertainment Inc.* ("*CrunchyRoll*"), No. 1:22-cv-04858 (N.D. Ill. Dec. 7, 2023), ECF No. 52 (approximately $31); *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502 (D. Mass. Feb. 16, 2024), ECF No. 72 (approximately $85); *In re: Vizio, Inc., Consumer Privacy Litig.*, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (estimated payment of $16.50).

The total settlement amount also falls within the upper range of settlements in other comparable VPPA cases. *See, e.g.*, *Ade v. Viki, Inc.*, No. 3:23-cv-02161 (N.D. Cal. June 3, 2025), ECF No. 103 (preliminarily approving $8 million settlement in VPPA case); *Gregory v. Tubi Inc.*, No. 2024-LA-0000209 (Ill. Cir. Ct., Winnebago Cnty. Jan. 24, 2025) (approving $19.99 million settlement in VPPA case); *Stark*, No. 3:22-cv-03131 (N.D. Cal. June 5, 2025), ECF No. 227 (approving $7.25 million settlement in VPPA case); *Feldman v. Star Trib. Media Co. LLC*, 2024 WL 3026556, at *6 (D. Minn. June 17, 2024) (approving $2.9 million settlement in VPPA case); *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195 (D. Mass. Sep. 8, 2023), ECF No. 70 (approving $4 million settlement of VPPA claim); *CrunchyRoll*, No. 1:22-cv-04858 (N.D. Ill. Jan. 17, 2024), ECF No. 57 (approving $16 million settlement in VPPA case for class of over 19 million class members); *Fiorentino*, No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024), ECF No. 76 (approving $2.625 million settlement of VPPA claim); *see also Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *7 (N.D. Cal. Oct. 21, 2021) (the fact the settlement amount was "consistent" with those in other similar cases favored approving the settlement). As of this filing, Plaintiffs are aware of only two VPPA-Pixel cases (*Gregory* and *CrunchyRoll*) that involved a larger total settlement fund.

If Plaintiffs prevailed at trial and in a post-trial appeal, AARP would in theory be exposed to a judgement in excess of $5 billion. While the Settlement represents less than 1% of these potential trial damages, the prospects for recovering a multi-billion-dollar judgment are remote. Setting aside AARP's ability to pay, AARP would argue that damages under the VPPA are discretionary. *See* 18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

U.S.C. § 2710(c)(2)(A) (A "court *may* award actual damages but not less than liquidated damages in an amount of $2,500) (emphasis added; *Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1041 (N.D. Ill. 2023) (finding that the Illinois Biometric Information Privacy Act's use of "may" meant that damages were discretionary). Second, AARP would argue that a $5+ billion judgment violates its due process rights because aggregated statutory damages, even if constitutional on a per-violation basis, may be limited when they become "wholly disproportion[ate]" and "obviously unreasonable" in relation to the statute's goals and prohibited conduct. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)); *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *23 (N.D. Cal. June 17, 2014) (explaining that the aggregation of VPPA statutory damages in a class action may raise due process concerns).

Moreover, "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012). While Plaintiffs are confident in the strength of their case, AARP has vigorously denied liability from the outset. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."). AARP has attacked virtually every aspect of Plaintiffs' VPPA claims and has strenuously opposed class certification. Grille Decl., ¶ 68; *see also* ECF Nos. 22, 100. For instance, AARP claims that whether the Pixel transmitted any particular user's Facebook ID to Meta cannot be determined by common evidence, as it would require an individualized inquiry into each user's browser and privacy settings, as well as their Facebook log-in status. *See* ECF No. 100 at 11-12, 18. AARP further asserts that determining whether the Pixel transmitted a particular user's video information to Meta would require a manual review of each identified AARP webpage to confirm (1) that the page contained video content and (2) that the information transmitted to Meta sufficiently identifies the video content on that page. *See id.* at 19-20. Taken together, these arguments and the challenges with sustaining class certification through trial indicate Plaintiffs face substantial risk if they continue to litigate this matter. *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10

1  (C.D. Cal. Apr. 29, 2014) (risk of "battle of the experts" at trial weighed in favor of settlement

2  approval).

3      Claims applying the VPPA to the use of the Meta Pixel are relatively untested and thus

4  inherently risky. *See In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460, at *5

5  (N.D. Cal. Aug. 2, 2011) ("[F]act-intensive inquiries and developing case law present significant risks

6  to Plaintiffs' claims and potential recovery."). AARP has vigorously contested Plaintiffs' VPPA

7  claims, including disputing that it is a "video tape service provider" and that it "knowingly" disclosed

8  its users' personal information to Meta via the Meta Pixel. *See, e.g.*, ECF No. 22 at 12-15. Although

9  Plaintiffs prevailed on these issues at the pleading stage, AARP likely would have reasserted these

10 arguments at summary judgment and trial. *See* ECF No. 100 at 13 n.9 (arguing that "Plaintiffs would

11 face merits obstacles to making the necessary showings that also need to establish that AARP is a

12 'video tape service provider'"). Rebutting AARP's arguments would require Plaintiffs to explain

13 complex computer science and website coding concepts to a lay jury. In addition, AARP could be

14 expected to argue that the information transmitted by the Pixel is insufficient to identify individual

15 AARP users or the video material they requested or obtained. *See, e.g.*, ECF No. 22 at 12-15; ECF No.

16 100 at 15-18. Moreover, the VPPA landscape is rapidly shifting, and the law Plaintiffs rely on could

17 erode before this action reaches a final judgment. *See, e.g., Solomon v. Flipps Media, Inc.*, 136 F.4th

18 41, 54-55 (2d Cir. 2025) (holding that a Facebook ID was insufficient to allow an ordinary person to

19 identify a particular person and thus did not qualify as "personally identifiable information" under the

20 VPPA). In light of AARP's defenses and the uncertain future of VPPA-Pixel claims, the Settlement

21 delivers a timely and substantial recovery for the class. *See Linney*, 151 F.3d at 1242 (settlement

22 amounting to a fraction of the potential total recovery was reasonable given the significant risks of

23 going to trial); *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015)

24 (settlement representing "only a single-digit percentage of the maximum potential exposure" was

25 reasonable given the risks).

26     In contrast to the risks and delays of litigation, the Settlement here ensures eligible Class

27 Members will receive monetary compensation for the violation of their VPPA rights. SA at §§ 2.1, 3.8.

28

17

1   Class Members will also benefit from AARP's agreement to cease or limit the operation of the Meta

2   Pixel on any web page on the AARP.org website that contains video content, unless such usage

3   complies with the VPPA. SA at §§ 2.4-2.6. The settlement "relief is directly targeted to the harm

4   suffered by the class and adequately redresses their injuries." *Shin v. Plantronics, Inc.*, 2020 WL

5   1934893, at *3 (N.D. Cal. Jan. 31, 2020). The parties' Settlement provides prompt relief to the Class

6   Members, including "a significant, easy-to-obtain benefit to class members" in the form of a cash

7   payment to any Class Member with a valid claim. *In re Haier Freezer Consumer Litig.*, 2013 WL

8   2237890, at *4 (N.D. Cal. May 21, 2013); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

9   (9th Cir. 2000) ("difficulties in proving the case" favored settlement approval).

10        Finally, the Settlement eliminates the delay and additional cost associated with continued

11  litigation. *See Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct.

12  22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation

13  and will produce a prompt, certain, and substantial recovery for the Plaintiff class."); *Feltzs v. Cox

14  Comm's Cal., LLC*, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) ("A[ ] central concern [when

15  evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a

16  litigated outcome.") (quoting Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes [modifications in

17  original]). The Settlement guarantees that Class Members will receive tangible benefits at the earliest

18  opportunity while avoiding the inherent risks of litigating class certification, any related appellate

19  proceedings, summary judgment, trial, and appeal. *Aikens v. Malcolm Cisneros*, No. 5:17-CV-02462-

20  JLS-SP, 2019 WL 3491928, at *7 (C.D. Cal. July 31, 2019) ("Settlement eliminates the risks inherent

21  in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide

22  the last opportunity for Class Members to obtain relief.").

23        When adjusted for the risks and delays associated with continuing litigation through final

24  judgment and recovery, the Settlement provides a favorable result for the Class on both a total

25  recovery and per class member basis. Even if Plaintiffs have a 60% likelihood of certifying a class,

26  AARP's merits defenses, adverse developments in VPPA case law, and the difficulties associated with

27  explaining technical concepts to a jury raise significant barriers to Plaintiffs' ability to succeed on the

28

18

merits at summary judgment and at trial, and if successful, to preserve any verdict on appeal. Thus, assuming that Plaintiffs have a 50% likelihood of success at summary judgment and trial, and a 30% likelihood of success on appeal, their cumulative probability of success is equal to 4.5%. However, even if Plaintiffs preserved a favorable verdict through appeal, Plaintiffs' $5.625 billion statutory damages award likely would be substantially reduced in light of potential due process concerns and there is a significant risk that Plaintiffs could not actually collect. Assuming a 90% reduction in the statutory damages award (*see, e.g.*, *Montera v. Premier Nutrition Corp.,* No. 16-CV-06980-RS, 2025 WL 751542, at *7 (N.D. Cal. Mar. 10, 2025), *appeal docketed*, No. 25-2133 (9th Cir. Apr. 7, 2025) (applying *Wakefield* and reducing statutory damages award by 90%)) results in a maximum total recovery of approximately $561.8 million, though it is unlikely that Plaintiffs could successfully collect more than 60% of such an award (approximately $337 million) in a best-case scenario. Applying the probabilities of success for each stage and assuming that Plaintiffs could still obtain a partial settlement if they were unsuccessful at class certification ($250,000) or summary judgment ($125,000) results in a risk-adjusted expected recovery of approximately $15.31 million. However, any such recovery would likely require five or more years of contentious litigation, with one and a half years to trial and judgment, one year of post-judgment proceedings, and two and a half years to resolve appellate proceedings or challenges to class certification. Accordingly, assuming a 5% cost of money and five-year delay, the risk-adjusted present value of the recovery is approximately $11.99 million, which is below the proposed $12.5 million recovery under the Settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (reasonable settlement range is determined by "the likelihood of a [favorable] verdict, the potential recovery, and the chances of obtaining it, discounted to present value"). The reasonableness of the Settlement is further evident when comparing the estimated recovery per class member to the risk-adjusted present value. Assuming the same risk probability, a 5% cost of money and five-year delay, the risk-adjusted present value recovery for each class member's $2,500 VPPA claim is just $5.29; by contrast, the estimated per class member recovery under the Settlement is likely to be eight times that much or more. *See* Grille Decl. ¶ 45.     !

Thus, the settlement falls well within the range of reasonableness for preliminary approval.

1

**B.      The Court Will Be Able to Certify the Class for Purposes of Settlement.**

2

3       Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated)

4   where the Court "will likely be able to" certify the class for purposes of judgment on the proposed

5   settlement. Fed. R. Civ. P. 23(e); *see also id.* 2018 Amendment Advisory Committee Notes. When

6   "[c]onfronted with a request for a settlement-only class certification, a district court need not inquire

7   whether the case, if tried, would present intractable management problems . . . for the proposal is that

8   there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).[4]

9                    **1.      Class Members Are Too Numerous to Be Joined.**

10       The numerosity requirement of Rule 23(a) is met because "joinder of all members is

11  impracticable." Fed. R. Civ. P. 23(a)(1); *see also West v. California Servs. Bureau, Inc.*, 323 F.R.D.

12  295, 303 (N.D. Cal. 2017) (court may make "common-sense assumptions" regarding numerosity)

13  (citation omitted). Plaintiffs estimate that the Settlement Class consists of approximately 2.25 million

14  people. Grille Decl., ¶ 44. This estimate is derived from AARP's records, which show that

15  approximately 3.271 million AARP members and registered users accessed video content on

16  AARP.org while in the United States during the Class Period, and publicly available data indicating

17  that about 68.7% of the 3.271 million subscribers maintained a Facebook account such that the Meta

18  Pixel would pass their video choices and personal information to Meta during the Class Period. *Id.*

19                    **2.      There Are Common Questions of Law and Fact.**

20       Commonality under Rule 23(a)(2) "is construed 'permissively' and is satisfied when class

21  members share 'some . . . legal issues or a common core of facts.'" *J.L. v. Cissna*, 2019 WL 415579, at

22  *9 (N.D. Cal. Feb. 1, 2019) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). The

23  common questions include: (1) whether AARP is a "video tape service provider"; (2) whether the Pixel

24  on AARP's website was configured to transmit information constituting "personally identifying

25  information" under the VPPA; and (3) whether AARP "knowingly" transmitted this information. The

26  answers to these questions, which are at the heart of every Class Member's VPPA claim, are capable

27  _____

28  [4] Plaintiffs refer the Court to their motion for class certification (ECF No. 92) for a further discussion
    of why the Class satisfies Rule 23.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

1   of class-wide resolution and would "resolve an issue that is central to the validity of each one of the

2   claims in one stroke." *In re Chrysler-Dodge-Jeep*, 2019 WL 536661, at *5 (citation omitted); *Jancik v.*

3   *WebMD LLC*, 2025 WL 560705, at *7 (N.D. Ga. Feb. 20, 2025) (finding commonality satisfied in

4   VPPA case and explaining that "at least one common contention exists regarding all class members,

5   including . . . whether the Facebook Pixel disclosed video-viewing behavior to Facebook [and]

6   whether that behavior or any other data constitutes PII"). Hence, commonality is satisfied.

### 3. Plaintiffs' Claims Are Typical of the Class.

8       "Representative claims are 'typical' if they are reasonably co-extensive with those of absent

9   class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

10   1020 (9th Cir. 1998). "The test of typicality" under Rule 23(a)(3) is "whether other members have the

11   same or similar injury, whether the action is based on conduct which is not unique to the named

12   plaintiffs, and whether other class members have been injured by the same course of conduct."

13   *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Here, Plaintiffs and Class

14   Members have the same types of claims stemming from the same alleged violations concerning

15   AARP's transmission of their personal information to Meta via the Pixel, thus satisfying typicality.

16   *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (typicality met when "[a]ll

17   members of the putative class were allegedly injured by the same course of conduct[.]").

### 4. Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Protect the Interests of the Class.

20       Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) Do the

21   representative plaintiffs and their counsel have any conflicts of interest with other class members, and

22   (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the

23   class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs and their counsel do not

24   have any conflicts with Class Members and have vigorously prosecuted this case. Plaintiffs agreed to

25   serve in a representative capacity, communicated with their attorneys, fulfilled their discovery

26   obligations and have acted in the best interests of the other Class Members. *See Mergens v. Sloan*

27   *Valve Co.*, 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where

plaintiff had no interests antagonistic to the class); *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (plaintiffs were adequate when they "have been active participants in the litigation").

Plaintiffs' Counsel also have extensive experience successfully representing plaintiffs and classes in complex class action litigation, including matters involving privacy violations. *See, e.g.*, *Ade v. Viki, Inc.*, No. 3:23-cv-02161-RFL-LB (N.D. Cal. June 3, 2025), ECF No. 103 (preliminarily approving $8 million settlement in VPPA case); *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal. June 5, 2025), ECF No. 227 (finally approving $7.25 million settlement in VPPA case); *In re U.S. Office of Personnel Management Data Security Litig.*, No. 1:15-mc-01394-ABJ (D.D.C. Oct. 26, 2022), ECF No. 208 (finally approving $63 million settlement); *In re Yahoo Mail Litigation*, 2016 WL 4474612, at *10 (N.D. Cal. Aug. 25, 2016) (nationwide injunctive relief enforcing CA privacy laws — "Class Counsel achieved these benefits only after several years of litigation," prosecuted "in an effective and cost-efficient manner"); *see also* Grille Decl., Ex. A (firm resume).

**5.    The Requirements of Rule 23(b)(3) Are Met.**

**a.    Common Issues of Law and Fact Predominate.**

The predominance inquiry tests the cohesion of the class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Predominance is ordinarily satisfied, for settlement purposes, when the claims arise out of the defendant's common conduct. *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288 (N.D. Cal. 2017) (predominance satisfied where claims were based on "the same deceptive conduct"); *Kacsuta*, 2014 WL 12585783, at *3 (common issues "significantly outweigh any individual questions" where the claims arise out of the "same alleged course of conduct" by the defendant).

This Class is also cohesive. To establish liability under the VPPA, a plaintiff must show that "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Each Class Member's personal information was allegedly transmitted to Meta via

AARP's Pixel without consent in violation of the VPPA. So, whether AARP violated the VPPA in its implementation of the Meta Pixel can be determined in a single class proceeding. *See Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *2 (N.D. Cal. Sept. 6, 2022) ("Whether Fashion Nova's website complies with those laws or whether it violates them can be answered in one fell swoop.").

Predominance has similarly been found in cases alleging violations of the VPPA and analogous statutes. *See, e.g., Jancik v. WebMD LLC*, 2025 WL 560705, at *9 (N.D. Ga. Feb. 20, 2025) (granting class certification to VPPA claim and finding the statutory elements of the VPPA present common questions that predominate); *Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 537 (E.D. Mich. 2015) (certifying class as to Michigan Video Rental Privacy Act claim); *Wilcox v. Swapp*, 330 F.R.D. 584 (E.D. Wash. 2019) (granting class certification for Driver's Privacy Protection Act claim); *Haney v. Recall Ctr.*, 282 F.R.D. 436 (W.D. Ark. 2012) (same); *Roberts v. Source for Pub. Data*, 2009 WL 3837502, at *1 (W.D. Mo. Nov. 17, 2009) (same). Predominance is further met because the VPPA's statutory damages obviate the need for complex, individualized damages calculations. *See In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013) ("Courts have been more willing to find predominance where, as here, the class seeks only statutory damages.").

> ### b.    A Class Action is a Superior Means of Resolving This Controversy.

The superiority inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*, 2011 WL 13128375, at *4 (C.D. Cal. 2011). When, as in this case, individual recoveries would be relatively small and individual litigation would needlessly duplicate discovery and expert work, it is "an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). Class Members have little incentive to pursue their own VPPA claims against AARP—and there have not been any other cases to date—when it will entail litigating highly technical issues over the implementation of the Meta Pixel on AARP's website and AARP has strenuously defended itself at every stage of the case. The amount of each Class Member's potential recovery is also dwarfed by the costs necessary to individually litigate Class Members' claims. *See In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) (statutory damages not

1  enough to incentivize individual litigation due to high cost of discovery and Facebook's vigorous

2  defense); *Alcazar*, 2022 WL 19975445, at *4 (availability of $4,000 in statutory damages was not

3  enough to incentivize individual litigation because "that sum pales in comparison with the cost of

4  pursuing litigation") (citation omitted).

5        Therefore, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the

6  Settlement Class in this case.

### C.    The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should be Approved.

9        Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members

10  who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(b)(3), the Court must

11  "direct to class members the best notice that is practicable under the circumstances, including individual

12  notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

13        Notice here comports with Rule 23 and the due process mandates. Using plain language, the

14  proposed notice provides all information required under Rule 23(c)(2)(B). The proposed notice program

15  provides for direct email and mail notice as well as follow-up mechanisms for directly notifying Class

16  Members of the settlement. Plaintiffs modeled the Long-Form and Summary Notices on well-accepted

17  notice templates to simplify and format the proposed Notices in an easy-to-read manner. Grille Decl., ¶

18  47. Similar Notice formats have been repeatedly approved in the Northern District of California,

19  including for online privacy cases. *Id.*; *see, e.g.*, *Ade v. Viki, Inc.*, Case No. 3:23-cv-02161-RFL-LB

20  (N.D. Cal.), ECF No. 103; *In re Juul Labs, Inc., Mktg. Sales Prac., & Products Liab. Litig.*, Case No.

21  3:19-md-02913 (N.D. Cal), ECF Nos. 3381, 3391; *Stark v. Patreon, Inc.*, Case No. 3:22-cv-03131

22  (N.D. Cal.), ECF Nos. 191-92; *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, Case No. 3:20-cv-03131

23  (N.D. Cal.), ECF Nos. 613, 614.

24        The settlement website will also be a useful resource for Class Members—consistent with the

25  Procedural Guidance, it will post the Claim Form, the long-form notice, and key documents in the case

26  including Plaintiffs' Counsel's attorneys' fee application once it is filed. The Claims Administrator will

also establish an email inbox and a toll-free number for Class Members to contact the Claims Administrator with questions. The notice will also include contact information for Plaintiffs' Counsel.

The combination of direct notice via email and U.S. mail is the best practicable means of providing notice in this case given the combined print and online nature of AARP's business and because these are the primary methods by which AARP communicated with Class Members. *See, e.g.*, *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 377 (N.D. Cal. 2021) (approving notice plan involving notice "by email to individuals for whom an email address is available and by postcard to a physical mailing address for those for whom no email address is available"); *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019) (approving plan where "[c]lass members w[ould] be notified by email if Defendants ha[d] an email address for them; by postcard via First Class U.S. Mail if Defendants ha[d] their physical address but not an email address").

The Claims Administrator will supplement the direct notice plan with a paid media notice plan consisting of social media ads, banner ads, and Google Search ads. Grille Decl., ¶ 49. Publishing notice through digital advertising channels ensures a comprehensive approach to alerting potential Class Members of the Settlement, enhancing the notice plan's effectiveness. *See In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 72 (D.D.C. 2018) (approving notice plan as the "best notice practicable" in part due to the large proportion of internet users in the class "and considering that the e-mail notification will be supplemented by publication"); *In re Sony PS3 "Other OS" Litig.*, No. 10-cv-01811-YGR, 2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) (granting preliminary approval where notice was to be disseminated via email, on settlement website, and published in online and print publications to be agreed upon by the parties); *see also Pigford v. Veneman*, 355 F. Supp. 2d 148, 162 (D.D.C. 2005) ("When all class members cannot be identified . . . practical issues of effectuating notice arise and other methods, such as publication in newspapers or periodicals, are deemed sufficient.").

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed Settlement, (2) direct notice to the Class, and (3) set a schedule for settlement proceedings, including the final fairness hearing.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

1    Dated: July 25, 2025

2                                                  Respectfully submitted,

3                                                  */s/ Simon S. Grille*
                                                   Adam E. Polk (SBN 273000)
4                                                  Simon S. Grille (SBN 294914)
                                                   Reid Gaa (SBN 330141)
5                                                  Anthony Rogari (SBN 353784)
                                                   **GIRARD SHARP LLP**
6                                                  601 California Street, Suite 1400
                                                   San Francisco, CA 94108
7                                                  Telephone: (415) 981-4800
                                                   Facsimile: (415) 981-4846
8                                                  apolk@girardsharp.com
                                                   sgrille@girardsharp.com
9                                                  rgaa@girardsharp.com
                                                   arogari@girardsharp.com

10

11                                                 *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on July 25, 2025, I electronically filed the foregoing document with the

3 Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to

4 all counsel of record.

5

        /s/ Simon S. Grille
6        Simon S. Grille

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT
CASE NO. 4:22-CV-05499-YGR