# EXHIBIT A

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE DISTRICT OF NORTHERN CALIFORNIA

10

### OAKLAND DIVISION

11

12  JAN MARKELS, WILLIAM MARTIN, and
13  LYNN SEDA, individually and on behalf of all
    others similarly situated,
14

15              Plaintiffs,
        v.
16

    AARP,
17

18              Defendant.

19

| | |
|---|---|
| Case No. 4:22-CV-05499-YGR | |
| **CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE** | |
| Hon. Yvonne Gonzalez Rogers | |

20
21
22
23
24
25
26
27
28

This Class Action Settlement Agreement and Release (the "Agreement"), is made and entered into by and among: (i) Plaintiffs Jan Markels, William Martin, and Lynn Seda ("Plaintiffs"), on behalf of themselves and each of the members of the Class (as defined herein), and (ii) Defendant AARP ("AARP" or "Defendant") (collectively, the "Parties"). The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein) as against the Releasing Defendant (as defined herein) and compensate Plaintiffs and Class Members for claimed damages, subject to the approval of the Court and the terms and conditions set forth in this Agreement.

## I.    RECITALS

WHEREAS, on September 27, 2022, Jan Markels and Allen Ziman filed a class action complaint against AARP in the United States District Court for the Northern District of California, captioned *Markels et al. v. AARP*, Case No. 4:22-CV-05499-YGR, asserting claims, including claims for alleged violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") (ECF No. 1) (the "Litigation");

WHEREAS, on August 29, 2023, the Court issued an Order granting in part and denying in part a motion by AARP to dismiss the class action complaint (ECF No. 36);

WHEREAS, on September 19, 2023, Plaintiffs filed a First Amended Complaint adding Plaintiff William Martin (ECF No. 38);

WHEREAS, on December 18, 2023, the Court issued an Order denying a motion by AARP to dismiss the First Amended Complaint (ECF No. 43);

WHEREAS, on July 19, 2024, Plaintiffs filed a Second Amended Complaint adding Plaintiff Lynn Seda (ECF No. 75), a copy of which is attached as Exhibit 1;

WHEREAS, Plaintiffs filed a Motion for Class Certification on January 14, 2025 (ECF No. 92), and Defendant filed its opposition to Plaintiffs' Motion on April 15, 2025 (ECF No. 100);

WHEREAS, the Parties mediated before the Honorable Edward A. Infante (Ret.) on June 26, 2024 and the Honorable Jeremy D. Fogel (Ret.) on May 9, 2025;

WHEREAS, the Parties reached an agreement in principle to settle this litigation on May 9, 2025;

WHEREAS, Plaintiffs have conducted discovery, including depositions of six AARP employees and one nonparty, 39 document requests, 16 interrogatories, and 32 requests for admission, and engaged expert witnesses and consultants;

WHEREAS, in entering into this Agreement, Plaintiffs recognize and acknowledge the expense and time it would take to prosecute this action through trial and any subsequent appeals, and the risk that this action could ultimately be unsuccessful in light of AARP's defenses;

WHEREAS, AARP has asserted and would assert numerous defenses to the claims alleged by Plaintiffs, and expressly denies each of the claims asserted by Plaintiffs against AARP and any and all liability arising out of the conduct alleged by Plaintiffs;

WHEREAS, AARP acknowledges that further litigation of this action could be protracted and expensive, and has taken into account the uncertainty and risks inherent in any litigation, including a proposed class action;

WHEREAS, by entering into this Agreement, AARP does not admit any wrongdoing, and this Agreement is not and will not constitute an admission of liability by AARP; and

WHEREAS, Plaintiffs and AARP have therefore each independently determined that it is desirable and beneficial for this action to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and the Class Members) and AARP, by and through its counsel, that, subject to the approval of the Court, the Litigation and the Released Claims will be finally and fully compromised, settled, and released, and the Litigation will be dismissed with prejudice, as to all Parties and their Related Parties (as defined below), upon and subject to the terms and conditions of the Agreement, as follows:

## II.    TERMS OF AGREEMENT

### 1.    Definitions

As used in the Agreement, the following terms have the meanings specified below:

1.1    "AARP" means Defendant AARP.

1.2    "Action" or "Litigation" means *Markels et al. v. AARP*, Case No. 4:22-CV-05499-YGR, pending in the United States District Court for the Northern District of California.

1.3    "Agreement," "Settlement Agreement," or "Settlement" means this Class Action Settlement Agreement and Release.

1.4    "Approved Claim" means a Claim Form submitted by a Class Member that: (a) is submitted timely and in accordance with the directions on the Claim Form; (b) is fully and truthfully completed by a Class Member with all of the information requested on the Claim Form; (c) is signed by the Class Member, physically or electronically; and (d) is approved by the Claims Administrator under the provisions of this Agreement, including its incorporated exhibits.

1.5    "Approved Claimant" means any Class Member whose claim has been allowed as an Approved Claim.

1.6    "Claimant" means a person who submits a Claim.

1.7    "Claims Administrator" means Simpluris, Inc., or such other notice and claims administrator as the Court approves.

1.8    "Claims Deadline" means 110 calendar days after Preliminary Approval.

1.9    "Claim Form" means a document, substantially in the form of Exhibit 2 hereto, that a Class Member must complete and submit to receive a payment from the Net Settlement Fund.

1.10    "Class" means all persons who, between September 27, 2020, to and through the Preliminary Approval date, requested or obtained video content on AARP.org while in the United States and at a time the person had a Facebook account and was either an AARP member or a registered user of AARP.org. The Class excludes AARP, its parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which AARP has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

1.11    "Class Member" means a person who falls within the definition of the Class and does not exercise his or her right to opt out of the Settlement before the Opt-Out Deadline.

1.12    "Class Counsel" means Girard Sharp LLP.

1.13    "Court" means the United States District Court for the Northern District of California.

1.14    "Defendant" means AARP.

1.15    "Defendant's Counsel" means Cooley LLP.

3

1.16    "Effective Date," or the date upon which this Settlement becomes "effective," means the date the Court has entered the Final Order and Judgment and the Final Order and Judgment has been upheld through the resolution of all appeals and writs of certiorari, if any, and through the expiration of all time to appeal and file writs of certiorari, except that the Effective Date will not be delayed or modified by an appeal from those parts of the Final Order and Judgment that pertain solely to any award of attorneys' fees or expenses.

1.17    "Escrow Account" means the interest-bearing account constituting a qualified settlement fund, as defined in Treasury Regulation § 1.468B-1 *et seq.*, to be maintained by the Escrow Agent, subject to the continuing jurisdiction of the Court.

1.18    "Escrow Agent" means Citibank, or such successor escrow agent agreed upon by the Parties or appointed by the Court.

1.19    "Fee and Expense Award" means the order awarding attorneys' fees and reimbursement of litigation expenses incurred by Class Counsel in the Litigation.

1.20    "Final Approval Hearing" means the hearing before the Court where the Parties will request that the Court enter the Final Order and Judgment, approving the Settlement Agreement, the Plan of Allocation, the Fee and Expense Award, and the Service Awards to the Class Representatives.

1.21    "Final Order and Judgment" or "Final Approval Order" means an order, substantially in the form of Exhibit 5 hereto, to be entered by the Court in this Action granting final approval of this Settlement Agreement and dismissing the Litigation with prejudice.

1.22    "Group Opt-out" means a request for exclusion submitted on behalf of two or more persons belonging to the Class, including "mass" or "class" opt-outs.

1.23    "Net Settlement Fund" means the Settlement Fund, less attorneys' fees and expenses and Class Representative Service Awards that may be approved by the Court, less Notice and Administration Expenses, less any taxes due on earnings on the Settlement Fund, less any expenses related thereto, and less any other Court-approved deductions.

1.24    "Notice" means the Notice of Proposed Settlement of Class Action, which, subject to approval of the Court, will be substantially in the form attached as Exhibit 3 hereto.

1.25    "Notice Date" means 35 calendar days after Preliminary Approval.

1.26    "Notice and Administration Expenses" means reasonable costs and expenses incurred by the Claims Administrator in connection with providing Notice (including CAFA notice), processing and distributing claims, responding to inquiries from members of the Class, and related services.

1.27    "Objection or Opt-Out Deadline" means 110 days after Preliminary Approval.

1.28    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any of their heirs, successors, representatives, or assigns.

1.29    "Plaintiffs" or "Class Representatives" means Jan Markels, William Martin, and Lynn Seda.

1.30    "Plan of Allocation" means the plan for allocating the Net Settlement Fund as described in Section 3 of this Agreement.

1.31    "Preliminary Approval Order" means the Order Preliminarily Approving Settlement and Providing for Notice, substantially in the form attached as Exhibit 4 hereto.

1.32    "Preliminary Approval" means the date on which the Preliminary Approval Order is entered.

1.33    "Related Parties" means, as applicable, each of a person or entity's respective present and former parents, subsidiaries, divisions, affiliates, and each of their and a person or entity's respective present and former employees, members, partners, principals, agents, officers, directors, controlling shareholders, attorneys, insurers and reinsurers, agents, related or affiliated entities, predecessors, successors, spouses, estates, heirs, executors, trusts, trustees, administrators, representatives, and assigns, in their capacity as such, and any entity in which such a person or entity has a controlling interest.

1.34    "Released Claims" means all claims, causes of action, complaints, allegations of wrongdoing, or demands for relief by Class Members, whether known or unknown, asserted or unasserted, regardless of legal theory, including but not limited to those based on federal, state, or local law, arising out of the same factual predicate underlying this Action, including but not limited to facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions,

1    and/or failures to act regarding alleged disclosures of Class Members' personally identifiable information

2    and video viewing or requesting behavior. "Released Claims" includes all such claims, causes of action,

3    complaints, allegations of wrongdoing or demands for relief in any other action or proceeding of any type

4    before any court, arbitrator, tribunal, administrative body, or regulatory body, whether federal, state,

5    local, or otherwise, and includes those that were presented, could have been presented, or might not have

6    been presentable in this Action, including but not limited to claims under the VPPA, claims under

7    California's Unfair Competition Law, and/or claims for unjust enrichment.

8         1.35    "Released Defendant" and "Releasing Defendant" means AARP and its Related Parties.

9         1.36    "Released Plaintiffs" and "Releasing Plaintiffs" means Plaintiffs and each Class Member.

10         1.37    "Releasing Defendant's Claims" means all claims and causes of action, whether known

11    or unknown, whether arising under federal, state, common, or foreign law, solely to the extent that such

12    claims arise out of or relate to the institution, prosecution, or settlement of the Litigation or the Released

13    Claims against the Released Defendant. Notwithstanding the foregoing, "Releasing Defendant's Claims"

14    does not include claims relating to the enforcement of the Settlement.

15         1.38    "Releasing Parties" means the Releasing Defendant and the Releasing Plaintiffs.

16         1.39    "Service Awards" mean the awards sought by Class Representatives, subject to Court

17    approval, in consideration for their service during the course of the Action.

18         1.40    "Settlement Amount" means $12,500,000.00, which shall be paid to the Escrow Agent by

19    Defendant within fourteen (14) business days of Preliminary Approval of the Settlement.

20         1.41    "Settlement Fund" means the non-reversionary cash fund consisting of the Settlement

21    Amount, together with accrued interest thereon, less the advance for Notice and Administration Expenses

22    (paragraph 2.2). The Parties agree that the Settlement Fund is intended to be at all times a "qualified

23    settlement fund" within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated

24    under Section 468B of the Internal Revenue Code of 1986, as amended, from the earliest date possible,

25    and further agree to any relation-back election (as described in Treas. Reg. §1.468B-1(j)) required to treat

26    the Settlement Fund as a "qualified settlement fund" from the earliest date possible. The Settlement Fund

27    will be maintained by the Escrow Agent with permissions granted to the Claims Administrator to access

28    said funds until such time as the payments set forth herein are made. The Settlement Fund includes all

interest that will accrue on the sums deposited in the Escrow Account. The Claims Administrator, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), will be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. Neither the Class Representatives, Class Counsel, Defendant, nor Defendant's Counsel will have any liability or responsibility for any tax arising with respect to the Settlement Fund.

1.42    "Unique ID" means the identifier assigned to persons potentially belonging to the Class by the Claims Administrator.

1.43    "Unknown Claims" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by them, might affect their agreement to release the Released Parties or the Released Claims or might affect their decision to agree, object or not to object to the Settlement. **Upon the Effective Date, the Releasing Parties will be deemed to have, and will have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides as follows:**

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

**Upon the Effective Date, the Releasing Parties also will be deemed to have, and will have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code.** The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NO. 4:22-CV-05499-YGR

## 2.    Settlement Relief

2.1    Defendant's total financial commitment under this Agreement shall be the Settlement Amount ($12,500,000.00), to be paid in full into an interest-bearing escrow account (the "Escrow Account"). For avoidance of doubt, under no circumstances will AARP ever have to pay more than the Settlement Amount under this Settlement Agreement. Within fourteen (14) business days of Preliminary Approval, Defendant shall pay, or cause to be paid, the Settlement Amount to the Escrow Agent in accordance with the instructions to be provided by the Escrow Agent, if the Escrow Agent provides such instructions within 7 days of Preliminary Approval. If the Escrow Agent provides these instructions at a later date, Defendant shall pay, or cause to be paid, the Settlement Amount to the Escrow Agent within 5 business days of receipt of the instructions. The interest from this escrow account will accrue in the Settlement Fund for the benefit of the Class.

2.2    Within seventeen (17) business days of Preliminary Approval, an amount totaling $525,000 for initial costs associated with Notice and Administration Expenses will be disbursed by the Escrow Agent from the Escrow Account to the Claims Administrator. To the extent the disbursement thereafter is actually expended on Notice and Administration Expenses, the amount expended will not be returned to Defendant, and Defendant will have no claim for reimbursement of that amount.

2.3    If Final Approval is granted, no portion of the Settlement Fund or Net Settlement Fund will revert to Defendant; but if Final Approval is not granted, the balance of the Escrow Account, plus any interest earned, will be returned to Defendant within twenty-one (21) business days after the Court enters its order denying Plaintiffs' motion for final approval of the settlement.

2.4    Within 45 days of Preliminary Approval, except as otherwise provided in sections 2.5 and 2.6, AARP will cease or limit the operation of the Meta Pixel on any pages on the AARP.org website that include video content, where the information transmitted via the Meta Pixel identifies a person as having requested or obtained specific video materials on that page, unless and until the VPPA is amended or repealed in relevant part, otherwise judicially invalidated in relevant part, or judicially construed not to be violated by the use of pixel or other website tracking technology in similar circumstances, or until AARP obtains consent in the form required by the VPPA, 18 U.S.C. § 2710(b)(2)(B).

2.5     The obligations set forth in section 2.4 do not apply in situations where the Meta Pixel transmits information about pages on the AARP.org website where video content is included along with other content, including without limitation text, editorial content, pictures, infographics, self-help tools, or listing directories, provided that no specific video materials are identified in any URL for such a page.

2.6     Nothing within this Section 2 shall prohibit the use of the Meta Pixel where the disclosure of information to Meta via the Meta Pixel would not violate the prevailing legal standard under U.S. Supreme Court or Ninth Circuit law.

**3.     Allocation of the Settlement Fund**

3.1     Class Members will have until the Claims Deadline to submit a Claim.

3.2     There will be one Claim Form, and each Class Member may submit one claim. The Claim Form will require an attestation under oath that between September 27, 2020 through the date of Preliminary Approval, the Claimant (a) accessed video content on AARP.org, (b) as an AARP member or registered user of AARP.org (c) while in the United States and (d) while the Claimant had an active Facebook account, and that all information provided is true and correct to the best of the Claimant's knowledge.

3.3     The Claim Form will require that a Class Member support their claim by providing the link associated with the Class Member's Facebook profile. The Notice and Settlement Website will provide instructions to Class Members regarding how to access this information.

3.4     The Claims Administrator will audit a sample of claims. If the Claims Administrator determines a Claim is inadequately supported, suspicious, or contains indicia of fraud, the Claims Administrator may disallow the claim or request additional supporting documentation, including documentation showing that the Claimant accessed video content on aarp.org while he or she had a Facebook account.

3.5     The Claims Administrator will give Claimants a reasonable opportunity to cure defective claim submissions during a period of up to 60 days ("Cure Period").

3.6     The Claims Administrator will have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator, provided the distribution of the Net Settlement Fund to Approved Claimants will not be materially delayed thereby.

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NO. 4:22-CV-05499-YGR

3.7    For each claim, the Claims Administrator will make the final determination as to whether the claim is an Approved Claim. The Parties and their counsel will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each Claimant.

3.8    After review of all claims and after expiration of the Cure Period, the Claims Administrator will determine the total number of Approved Claims and divide the Net Settlement Fund by the number of Approved Claims.  The Claims Administrator shall thereafter distribute equal shares to each Approved Claimant within 15 business days of the Effective Date, but in no event shall any such distribution occur before the Effective Date.

3.9    The determination of the validity of Claims and the proper amount of the payment to a Claimant is the sole responsibility of the Claims Administrator. No Party to this Agreement will be deemed in default of its obligations due to a dispute between a Claimant and the Claims Administrator, including a dispute over the amount of a payment or the return of a payment due to the death or unavailability of a Class Member. If a Class Member believes that a determination made by the Claims Administrator requires correction, the Class Member may seek correction pursuant to the following process:

a)    A Claimant who objects to the Claims Administrator's determination of his or her claim must so notify the Claims Administrator within thirty (30) days after the date that the Claims Administrator mailed or emailed the determination to the Claimant.  The Claimant must provide a written statement setting forth the basis for his or her disputed claim.  Any disputed claim that is not postmarked or emailed within that thirty (30) day period will be waived.

b)    Upon the timely submission of a disputed claim, the Claims Administrator, and the objecting Claimant, will have thirty (30) days to attempt to resolve the disputed claim by agreement.  At the end of this thirty (30) day period, the Claims Administrator will provide the Claimant with its written notice of its decision regarding the disputed claim.  The decision of the Claims Administrator will be binding and not subject to further review or appeal.

c)    No person will have any claim against the Parties or their counsel or the Claims Administrator, or any other person designated by Class Counsel, based on conduct or

communications substantially in accordance with this Settlement Agreement or further order(s) of the Court.

3.10    The Claims Administrator will provide the Parties with weekly written reports, beginning on the Notice Date and continuing until submission of the final post-distribution accounting (and thereafter upon request), summarizing all statistics and actions taken by the Claims Administrator in connection with administering the Settlement. The Claims Administrator shall provide an accounting of all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

3.11    All cash payments to Approved Claimants that have not been deposited within 90 days after the date of issuance will be redistributed *pro rata*, after deducting necessary settlement administration expenses from such uncashed funds, to all Class Members who deposited a check or were paid by electronic payment (*e.g.*, Venmo, Zelle, etc.) during the initial distribution.

3.12    Class Counsel shall require that the Claims Administrator shall have a contractual obligation to indemnify and hold Class Counsel, the Class, Class Representatives, and AARP and its Related Parties harmless for (a) any act or omission or determination of the Claims Administrator, or any of the Claims Administrator's designees or agents, in connection with the notice plan and the administration of the Settlement; (b) the management, investment, or distribution of the Settlement Fund; (c) the formulation, design, or terms of the disbursement of the Settlement Fund; (d) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (e) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (f) the payment or withholding of any taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

**4.    Releases**

4.1    Upon the Effective Date, all Releasing Plaintiffs and anyone claiming through or on behalf of any of them, will be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against the Released Defendant and Defendant's Counsel, whether arising under federal, state, common or foreign law. Upon the Effective Date, the Releasing Plaintiffs will be forever barred and enjoined from commencing, instituting, prosecuting, or

11

continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claim against the Released Defendant and Defendant's Counsel. Releasing Plaintiffs are aware of California Civil Code § 1542 and expressly waive and relinquish any rights or benefits available to them under this statute or any comparable or equivalent law or principle of another state or territory or of any jurisdiction outside of the United States.

4.2     Upon the Effective Date, the Releasing Defendant will be deemed to have fully, finally, and forever released, relinquished, and discharged all Releasing Defendant's Claims (including Unknown Claims) against Released Plaintiffs, and Class Counsel, whether arising under federal, state, common or foreign law. Upon the Effective Date, the Releasing Defendant will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Releasing Defendant's Claims against any of the Released Plaintiffs, and Class Counsel.

4.3     All Persons granting any release pursuant to sections 4.1 and 4.2 above covenant not to sue with respect to all Claims released by such Person.

4.4     All Persons granting any release pursuant to sections 4.1 and 4.2 above will be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any claim released by them under the releases in sections 4.1 and 4.2, in any capacity, against any of the Released Parties.

4.5     No person will have any claim of any kind against the Parties or their counsel or the Claims Administrator with respect to the Settlement and the matters set forth herein, or based on determinations or distributions made substantially in accordance with this Agreement, the Final Order and Judgment, or further order(s) of the Court.

**5.      Obtaining Court Approval of the Agreement**

5.1     Promptly after execution of the Agreement, Plaintiffs will submit the Agreement, including its incorporated Exhibits, to the Court and will apply for entry of the Preliminary Approval Order.

12

Docusign Envelope ID: BE31B815-D8FC-4B52-8E70-7FF9A67B37A3

5.2     Pursuant to 28 U.S.C. § 1715, within ten days after this Agreement is filed with the Court, the Claims Administrator will cause notice of the Settlement to be sent to the Attorneys General of each State in which Class Members reside, the Attorney General of the United States, and any other required government officials.

5.3     In accordance with the schedule set under the Preliminary Approval Order, Class Counsel will draft the motion for final approval, and the Fee and Expense Application, and will appear at the Final Approval Hearing.

5.4     Any order or proceeding relating to the Plan of Allocation, or to the Fee and Expense Application, will not operate to terminate or cancel the Agreement or affect the finality of the Court's Final Order and Judgment.

5.5     If the Settlement is not approved by the Court or otherwise fails to become effective in accordance with its terms, the Parties will be restored to their respective positions in the Litigation as of May 9, 2025, and will jointly propose a revised schedule for case deadlines. In such event, the terms and provisions of the Agreement (with the exception of Paragraphs 2.2 and 2.3) will be null and void and will not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Agreement will be treated as vacated, *nunc pro tunc*, and will not be used in the Litigation or in any other proceeding for any purpose.

**6.     Notice and Settlement Administration**

6.1     Within seven business days after Preliminary Approval, AARP will provide the Claims Administrator with the names, email addresses, and other contact information appearing within AARP's records of potential Class Members, subject to AARP having a reasonable opportunity to evaluate the information security protocols and practices of the Claims Administrator and, if acceptable, to approve the provision of this information to the Claims Administrator, which approval will not be unreasonably withheld.

6.2     The Claims Administrator will assign each potential person belonging to the Class a Unique ID. The Unique ID will be required to access the online claim form and opt-out form. Any person belonging to the Class who does not receive a Unique ID may request one from the Claims Administrator by providing documentation, such as browsing history, that demonstrates the person requested or

obtained video content on the AARP website (AARP.org) between September 27, 2020 and Preliminary Approval, while in the United States and at a time the person had a Facebook account and was an AARP member or a registered user of AARP.org.

6.3     Following Preliminary Approval, no later than the Notice Date, the Claims Administrator will send Notice via email substantially in the form attached as Exhibit 6, along with an electronic link to the Claim Form, substantially in the form attached as Exhibit 2, to all potential Class Members for whom a valid email address is available. The Claims Administrator will format these emails to maximize the likelihood they will be received and understood by Class Members. To the extent the transmission of email notice results in "bounce-backs," the Claims Administrator will use a reverse look-up or similar process to obtain an alternative email address and make a second attempt to re-send the email notice, if feasible. For individuals for whom a mailing address is also available, direct notice via mail will be utilized if their email address is returned as undeliverable.

6.4     At the election of Class Counsel, and at least seven days prior to the Claims Deadline, the Claims Administrator may, on one to three occasions, send Notice via email substantially in the form attached as Exhibit 6 (with minor, non-material modifications to indicate this is a reminder email), along with an electronic link to the Claim Form, substantially in the form attached as Exhibit 2, to all potential Class Members for whom a valid email address is available.

6.5     Following Preliminary Approval, no later than the Notice Date, the Claims Administrator will send Notice via U.S. mail substantially in the form attached as Exhibit 7, to all potential Class Members for whom only a valid mailing address is available. To the extent the transmission of U.S. mail notice results in "bounce-backs," the Claims Administrator will use a reverse look-up or similar process to obtain an alternative mailing address or an email address and make a second attempt to re-send the notice, if feasible.

6.6     Following Preliminary Approval, no later than the Notice Date, the Claims Administrator will execute a paid media notice plan consisting of outreach to potential Class Members via various forms of digital media. This outreach will include digital advertising on social media platforms owned by Meta (including Facebook), programmatic banner advertisements, and keyword search advertisements that will

1    be displayed to users who conduct internet searches containing keywords related to the case or

2    Settlement.

3        **7.        Objections and Opt-Outs**

4        7.1    Any objections from Class Members regarding the Settlement must be submitted in

5    writing to the Court no later than the Objection or Opt-Out Deadline, in accordance with the procedures

6    set forth in the Preliminary Approval Order.

7        7.2    The Parties may file responses to any timely written objections no later than 15 days after

8    the Objection or Opt-Out Deadline, or such later time as the Court may allow.

9        7.3    Any opt-out notice from a person belonging to the Class regarding the Settlement must be

10    submitted individually and in writing no later than the Objection or Opt-out Deadline, in accordance with

11    this paragraph and the procedures set forth in the Preliminary Approval Order. Any person who would

12    otherwise be a Class Member who wishes to be excluded from this Settlement must notify the Claims

13    Administrator in writing of that intent by either (a) U.S. mail postmarked no later than the Objection or

14    Opt-out Deadline; or (b) submission of an opt-out request on the Settlement Website no later than the

15    Objection or Opt-out Deadline. Group Opt-outs are prohibited. Opt-out requests must include the

16    person's Unique ID (provided by the Claims Administrator), a statement that the individual meets the

17    requirements for Class membership, first and last name, email address, mailing address, and telephone

18    number.

19        7.4    This Settlement Agreement will not bind a Class Member who timely and validly opts out

20    of the Class. The Settlement Agreement will, however, bind any Class Member who does not timely and

21    validly opt out of the Class.

22        7.5    Within 14 days after the Objection and Opt-Out Deadline, the Claims Administrator will

23    provide Class Counsel and Defendant's Counsel with the number of persons who have timely and validly

24    excluded themselves from the Settlement.

25        7.6    AARP shall also have the sole discretion to terminate this Agreement if a certain number

26    of Class members elect to opt out of this Settlement.  That number is separately agreed by the Parties and

27    will be filed with the Court under seal so as to preserve its confidentiality.  If AARP elects to terminate

28    the Agreement on this basis, it must notify Class Counsel that it intends to invoke this termination right

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NO. 4:22-CV-05499-YGR

no later than 35 days after the Opt-Out Deadline.  If AARP makes this election, it may revoke this election at any time.  If AARP terminates the Agreement pursuant to this proposal, the Settlement Amount shall be returned to AARP (less any amounts actually expended pursuant to Paragraph 2.2).

**8.      Attorneys' Fees and Expenses; Service Awards**

8.1     Pursuant to Fed. R. Civ. P. 23(h), Defendant agrees that Class Counsel will be entitled to an award of reasonable attorneys' fees and expenses to be paid exclusively out of the Settlement Fund in an amount to be determined by the Court.

8.2     The Parties have reached no agreement on the amount of fees and expenses that Class Counsel will seek. Defendant takes no position as to the amount of fees and expenses to be sought.

8.3     Class Members will have at least 35 days to object to and oppose Class Counsel's Fee and Expense Application by filing with the Court, and serving on Class Counsel, any objections relating to such application.

8.4     Any Fee and Expense Award will be paid from the Settlement Fund within 15 business days after the Court enters the Final Order and Judgment and an order of such fees and expenses, notwithstanding any timely objections or potential for appeal therefrom, or collateral attack on the Settlement or any part hereof. If, however, the Final Judgment is reversed or rendered void as a result of an appeal, Class Counsel will return such funds to the Settlement Fund.

8.5     Procedures connected with the application by Class Counsel for attorneys' fees and expenses form no part of this Settlement Agreement, and the application will be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement Agreement. Any order or proceeding relating to the application for attorneys' fees and expenses, the pendency of the application, or any appeal from any such order, will not operate to terminate or cancel this Settlement or to affect or delay the finality effected by entry of the Final Order and Judgment.

8.6     Class Counsel may apply for Service Awards not to exceed $10,000 for each Class Representative. Any such Service Awards shall be paid within 15 business days of the Effective Date, but in no event shall any such distribution occur before the Effective Date.  This amount is not a measure of damages, but instead solely an award for the Class Representatives' services, time, and effort on behalf of Class Members. Class Counsel will provide a Form W-9 to each Class Representative who may be

awarded a Service Award, and the Claims Administrator will issue an IRS Form Misc. 1099 for such a Service Award to each such Class Representative.

8.7    The Class Representatives' approval of this Settlement Agreement is not contingent on Class Counsel applying for Service Awards or the Court approving any such application. Any order or proceeding relating to the application for Service Awards, the pendency of the application, or any appeal from such an order will not operate to terminate or cancel this Settlement Agreement, or to affect or delay the finality effected by entry of the Final Order and Judgment.

8.8    Any fees and/or expenses, including the Fee and Expense Award, and/or Service Awards awarded by the Court will be paid solely from the Settlement Fund. Defendant and its Related Parties will have no responsibility for any payment of attorneys' fees and/or expenses to Class Counsel, or any Service Award to any Plaintiff.

**9.    Miscellaneous Provisions**

9.1    The Parties acknowledge that it is their intent to consummate this Agreement, and agree to cooperate as necessary to secure Court approval of the Agreement and to implement all terms and conditions of the Agreement, and to exercise their best efforts to accomplish the foregoing terms and conditions. The Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement. The Parties and their respective counsel will not make any public statement that disparages the Settlement.

9.2    This Agreement is deemed to have been prepared by counsel for all Parties. Because all Parties have contributed substantially and materially to the preparation of this Agreement, it will not be construed more strictly against one Party than another, nor will the Agreement be construed against any Party on grounds that it was the drafter.

9.3    The Settlement Amount and the other terms of the Settlement Agreement were negotiated in good faith by the Parties, as a result of arms' length negotiations, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The Parties will not assert in any forum that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or on a frivolous basis.

9.4     If, at any time prior to Final Approval, any Party is in material breach of the terms hereof and fails to cure such material breach within 14 days of notice, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate the Agreement on notice to the former Party. If the Agreement is terminated, the Parties will be restored to their respective positions in the Litigation as of May 9, 2025, and will jointly propose a revised schedule for case deadlines. In such event, the Settlement Amount shall be returned to Defendant (less any amounts actually expended pursuant to Paragraph 2.2); the terms and provisions of the Agreement (with the exception of Paragraphs 2.2 and 2.3) will be null and void and will not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Agreement will be treated as vacated, *nunc pro tunc*, and will not be used in the Litigation or in any other proceeding for any purpose.

9.5     Neither this Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, the truth of any of the allegations in the Litigation of any wrongdoing, fault, or liability of Defendant or its Related Parties, or that Plaintiffs or any Class Members have suffered any damages, harm, or loss; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on the part of Defendant or its Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

9.6     Defendant may file this Agreement and/or the Final Order and Judgment in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim.

9.7     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

9.8     All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference. This Agreement and its Exhibits constitute the entire agreement

between the Parties related to the Settlement. No covenants, agreements, representations, or warranties of any kind have been made by any Party hereto, except as provided for herein.

       9.9    Where this Agreement requires notice to the Parties, such notice will be sent to the following: for Plaintiffs, the Class, and/or Class Counsel, Simon Grille, Girard Sharp LLP, 601 California Street, Suite 1400, San Francisco, CA 94108; for Defendant, David Morales, AARP, 601 E St., NW, Washington, DC 20049 and Matthew D. Brown, Cooley LLP, 3 Embarcadero Center, 20th Floor, San Francisco, CA 94111.

       9.10    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

       9.11    The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successor(s)-in-interest.

       9.12    This Agreement may be executed in one or more counterparts. Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement. All executed counterparts, and each of them, will be deemed to be one and the same instrument.

       9.13    This Settlement Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

       9.14    This Settlement Agreement will be governed by and construed in accordance with the laws of the State of California.

       9.15    The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement.

       IN WITNESS WHEREOF, each of the parties hereto has caused the Agreement to be executed.

Dated: _7/24/2025_           By: _Jan Markels_
                         Plaintiff Jan Markels

Dated: _7/24/2025_           By: _W. Wm Mart_
                         Plaintiff William Martin

Dated: _7/24/2025_           By: _Lynn Seda_
                         Plaintiff Lynn Seda

CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE
CASE NO. 4:22-CV-05499-YGR

1

2  Dated: _7/25/2025_____

3

4

5

6  Dated: _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GIRARD SHARP LLP**

By: _____
      Simon S. Grille

*Counsel for Plaintiffs and the Proposed
Settlement Class*

By: _____

Name: _____

Title: _____

*Defendant AARP*

1

2     Dated: _____

3

4

5

6     Dated: 7/25/2025 | 6:26 AM PDT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GIRARD SHARP LLP**

By: _____
       Simon S. Grille

*Counsel for Plaintiffs and the Proposed
Settlement Class*

By: _____

Name: David C. Morales

Title: Executive Vice President & General Counsel

*Defendant AARP*

# EXHIBIT 1

1  Adam E. Polk (SBN 273000)
   Simon Grille (SBN 294914)
2  Reid Gaa (SBN 330141)
   Anthony Rogari (SBN 353784)
3  **GIRARD SHARP LLP**
   601 California Street, Suite 1400
4  San Francisco, CA 94108
   Telephone: (415) 981-4800
5  apolk@girardsharp.com
   sgrille@girardsharp.com
6  rgaa@girardsharp.com
   arogari@girardsharp.com
7
8  *Attorneys for Plaintiffs*
9

10

11                    **UNITED STATES DISTRICT COURT**

12                    **NORTHERN DISTRICT OF CALIFORNIA**

13

14  JAN MARKELS, ALLEN ZIMAN,                  Case No. 4:22-cv-05499-YGR
    WILLIAM MARTIN, and LYNN SEDA,
15  individually and on behalf of all others   **JURY DEMAND**
    similarly situated,
16                                             **SECOND AMENDED CLASS ACTION**
17                Plaintiffs,                  **COMPLAINT**

18         vs.

19  AARP,

20                Defendant.

21

22

23

24

25

26

27

                    SECOND AMENDED CLASS ACTION COMPLAINT
                        CASE NO. 4:22-CV-05499-YGR

Plaintiffs Jan Markels, Allen Ziman, William Martin, and Lynn Seda, on behalf of themselves and all others similarly situated, allege as follows.

## **INTRODUCTION**

1.      This is a consumer privacy class action against AARP for violating the Video Privacy Protection Act ("VPPA" or "the Act") and California law by disclosing its digital subscribers' identities and video-viewing preferences to Meta Platforms, Inc. ("Meta") without proper consent.

2.      AARP's operations model relies in large part on providing a wide variety of prerecorded video content to paying subscribers like Plaintiffs. AARP features thousands of videos on its website, many of which contain information about particularly sensitive topics related to aging and serious health conditions. It directs a significant portion of its operations to producing and delivering prerecorded video content online and is substantially involved in creating and maintaining its own prerecorded video content, including through AARP Studios, its in-house video production entity. Further, AARP derives substantial revenues from the prerecorded video content on its website, both by promoting members-only content to attract and retain subscribers and by selling advertising space associated with that content to businesses.

3.      The VPPA prohibits "video tape service providers," such as AARP, from knowingly disclosing consumers' personally identifiable information ("PII"), including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without the person having expressly given consent in a standalone consent form.

4.      AARP collects and shares users' personal information with Meta using a "Meta Pixel" or "Pixel." A Meta Pixel is a snippet of programming code that tracks users as they navigate through a website, including what searches they performed and which items they have clicked on or viewed.

5.      The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta, which owns the popular social media

1

platforms Facebook and Instagram, then stores this data on its own servers.

6.     Because it incorporated the Meta Pixel onto its website, AARP shares PII with Meta that includes at least the user's Facebook Profile ID and the title of the video that the user watched. A user's Facebook Profile ID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details.

7.     AARP discloses the user's Facebook Profile ID and viewing content to Meta together in a single, unencrypted transmission in violation of the VPPA. Because the user's Facebook Profile ID uniquely identifies an individual's Facebook account, Meta—or any other person—can use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook profile. In other words, the Pixel allows Meta to know what video content one of its subscribers viewed on AARP's website.

8.     Plaintiffs are AARP subscribers and, thus, consumers entitled to the VPPA's protections including because, in exchange for their annual membership fees, they received access to prerecorded video content and programming that is not available to the general public. Among other exclusive benefits, AARP gives Plaintiffs and other AARP subscribers access to members-only video content and exclusive discounts for on-demand classes and presentations, such as driver safety courses for seniors, taking the form of prerecorded video content.

9.     In contravention of the VPPA, AARP does not require subscribers like Plaintiffs to consent in a standalone consent form to its dissemination of their viewing content, along with their Facebook Profile IDs, to a third party. Consequently, by disclosing this information to Meta, AARP violates the VPPA.

10.    On behalf of a Class of similarly situated AARP users, Plaintiffs seek relief through this action. The facts set forth in this Complaint establish that AARP violated both the VPPA and California's Unfair Competition Law ("UCL").

## PARTIES

11.    Plaintiff Jan Markels is a citizen and resident of San Francisco, California.

2

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

12.     Plaintiff Allen Ziman is a citizen and resident of Warwick, Rhode Island.

13.     Plaintiff William Martin is a citizen and resident of Huntington Beach, California.

14.     Plaintiff Lynn Seda is a citizen and resident of Redlands, California.

15.     Defendant AARP is a Washington, D.C. corporation headquartered at 601 E Street, NW, Washington, D.C. 20049.

## DIVISIONAL ASSIGNMENT

16.     Pursuant to Civil L.R. 3-5(b), assignment to the Oakland Division is appropriate under Civil L.R. 3-2(c) because at least one plaintiff is domiciled in San Francisco and a substantial part of the conduct at issue in this case occurred in San Francisco County.

## JURISDICTION AND VENUE

17.     This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710.

18.     This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

19.     This Court has personal jurisdiction over AARP because AARP has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary. AARP continuously and systematically conducts business in California. Additionally, AARP's violations occurred in part in California as AARP collected and shared information that is the subject of this action from California Plaintiffs' devices while they were in California.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PLAINTIFF-SPECIFIC ALLEGATIONS

### Jan Markels

21.     Plaintiff Markels used his internet-connected devices and the browser installed on

3

those devices to visit and watch prerecorded video content on AARP's website, https://www.aarp.org, during the Class Period as defined herein.

22.     Mr. Markels is an AARP member and subscriber, who pays approximately $16 per year in AARP subscription fees.

23.     Mr. Markels provided AARP with his PII, including at least his name and address, when subscribing to its services.

24.     Mr. Markels has maintained a Facebook account for approximately 14 years and spends approximately 30 minutes per day on Facebook. His Facebook profile includes personal information about him including his name and other personal details.

25.     Mr. Markels visited the AARP website using his web browser to view prerecorded video content.

26.     After joining AARP, Mr. Markels accessed prerecorded video content on AARP's website that is not available to non-members, including on-demand classes and programs.

27.     Mr. Markels also participated in AARP Rewards, viewed video content on the AARP website in order to obtain AARP Rewards points, and redeemed points for contest entries and other prizes.

28.     Mr. Markels receives daily and weekly emails from AARP, with links to video content and other benefits, including members-only videos.

29.     Mr. Markels requests and watches videos on AARP using the same browser that he uses to log in to Facebook, including while he is logged in to Facebook. He uses the same device to request and watch videos on AARP that he uses for Facebook.

30.     AARP transmitted to Meta Mr. Markels's PII, including his Facebook Profile ID, as well as the title of each video he viewed, without obtaining his consent through a standalone consent form.

31.     Mr. Markels's PII and viewing history are private and confidential in nature and information to which no third party has a presumptive right to access without his clear, informed consent.

**Allen Ziman**

32.     Plaintiff Ziman used his internet-connected devices and the browser installed on those devices to visit and watch prerecorded video content on AARP's website, https://www.aarp.org, during the Class Period.

33.     Mr. Ziman is an AARP member and subscriber, who pays approximately $16 per year in AARP subscription fees.

34.     Mr. Ziman provided AARP with his PII, including his name, email address, and date of birth, when subscribing to its services.

35.     The ability to watch AARP's subscriber-only video content was an important factor in Mr. Ziman's decision to subscribe.

36.     Mr. Ziman has maintained a Facebook account for approximately seven years and spends approximately two hours per day on Facebook. His Facebook profile includes personal information about him including his name and other personal details.

37.     Mr. Ziman visited the AARP website using his web browser to view video content.

38.     After joining AARP, Mr. Ziman accessed prerecorded video content on AARP's website that was not available to non-members, including on-demand classes and programs.

39.     Mr. Ziman also participated in AARP Rewards, viewed video content on the AARP website in order to obtain AARP Rewards points, and redeemed points for contest entries and other prizes.

40.     Mr. Ziman receives weekly emails from AARP, with links to prerecorded video content and other benefits, including members-only videos.

41.     Mr. Ziman requests and watches videos on AARP using the same browser that he uses to log in to Facebook, including while he is logged in to Facebook. He uses the same device to request and watch videos on AARP that he uses for Facebook.

42.     AARP transmitted to Meta Mr. Ziman's PII, including his Facebook Profile ID, as well as the title of each video he viewed, without obtaining his consent through a standalone consent form.

43.     Mr. Ziman's PII and viewing history are private and confidential in nature and information to which no third party has a presumptive right to access without his clear, informed consent.

**William Martin**

44.     Plaintiff Martin used his internet-connected devices and the browser installed on those devices to visit and watch prerecorded video content on AARP's website, https://www.aarp.org, during the Class Period.

45.     Mr. Martin is an AARP member and subscriber, who pays approximately $16 per year in AARP subscription fees.

46.     Mr. Martin provided AARP with his PII, including his name, email address, and date of birth, when subscribing to its services.

47.     The ability to watch AARP's subscriber-only video content was an important factor in Mr. Martin's decision to subscribe.

48.     Mr. Martin has maintained a Facebook account for approximately 14 years and spends approximately ten to fifteen minutes per day on Facebook. His Facebook profile includes personal information about him including his name and other personal details.

49.     Mr. Martin visited the AARP website using his web browser to view video content.

50.     After joining AARP, Mr. Martin accessed prerecorded video content on AARP's website that was unavailable to non-members.

51.     Mr. Martin also participated in AARP Rewards, viewed video content on the AARP website in order to obtain AARP Rewards points, and redeemed points for contest entries and other prizes.

52.     Mr. Martin receives weekly emails from AARP, with links to prerecorded video content and other benefits, including members-only videos.

53.     Mr. Martin requests and watches videos on AARP using the same browser that he uses to log in to Facebook, including while he is logged in to Facebook. He uses the same device to request and watch videos on AARP that he uses for Facebook.

54.     AARP transmitted to Meta Mr. Martin's PII, including his Facebook Profile ID, as well as the title of each video he viewed, without obtaining his consent through a standalone consent form.

55.     Plaintiff Martin's PII and viewing history are private and confidential in nature and information to which no third party has a presumptive right to access without his clear, informed consent.

**Lynn Seda**

56.     Plaintiff Seda used her internet-connected devices and the browser installed on those devices to visit and watch prerecorded video content on AARP's website, https://www.aarp.org, during the Class Period.

57.     Ms. Seda is an AARP member and subscriber, who paid approximately $45 in fees for a five-year AARP subscription.

58.     Ms. Seda provided AARP with her PII, including her name, email address, and date of birth, when subscribing to its services.

59.     Ms. Seda has maintained a Facebook account for approximately thirteen years and accesses Facebook about once per month. Her Facebook profile includes personal information about her including her name and other personal details.

60.     Ms. Seda visited the AARP website using her web browser to view video content.

61.     After joining AARP, Ms. Seda accessed prerecorded video content on AARP's website that was unavailable to non-members.

62.     Ms. Seda also participated in AARP Rewards, viewed video content on the AARP website in order to obtain AARP Rewards points, and redeemed points for contest entries and other prizes.

63.     Ms. Seda receives daily and weekly emails from AARP, with links to prerecorded video content and other benefits, including members-only videos.

64.     Ms. Seda requests and watches videos on AARP using the same browser that she uses to log in to Facebook, including while she is logged in to Facebook. She uses the same device

7

to request and watch videos on AARP that she uses for Facebook.

65.     AARP transmitted to Meta Ms. Seda's PII, including her Facebook Profile ID, as well as the title of each video she viewed, without obtaining her consent through a standalone consent form.

66.     Ms. Seda's PII and viewing history are private and confidential in nature and information to which no third party has a presumptive right to access without her clear, informed consent.

## COMMON ALLEGATIONS

**A.     AARP is engaged in the business of delivering audio visual materials.**

67.     AARP is a subscription-based organization for people over the age of 50. Membership requires an annual subscription fee that automatically renews each year.

68.     AARP's website includes information on various topics such as health, money, and entertainment. This information is provided in a variety of forms, including prerecorded videos, short-form articles, podcasts, quizzes, and games.

69.     AARP provides prerecorded audiovisual content on its website to its members, which Plaintiffs requested and viewed.

70.     The prerecorded video content on AARP's website includes daily news recaps, fitness and exercise videos, informational videos about Social Security and Medicare, videos about recognizing serious medical conditions, and multi-episode TV series, among other subjects. In total, AARP features nearly 5,000 videos on its website.[1]

71.     Many of these videos contain information on sensitive issues, including topics associated with aging (like dementia and Alzheimer's), serious health conditions, and family caregiving.

72.     AARP members obtain access to additional prerecorded video content and programming that is not available to the general public.

---

[1] https://videos.aarp.org/category/videos/all-videos (last visited June 13, 2024).

73.     Exclusive prerecorded video content for AARP members includes specially curated AARP entertainment content; fitness, meditation, and lifestyle videos; full-length movies; interview videos with celebrities and best-selling authors; and on-demand video classes and presentations, such as driver safety courses for seniors.

74.     AARP highlights access to members-only prerecorded video content in its marketing materials and communications with members. For example, the AARP Member Benefits Guide touts "[m]embers-only films" as one of the exclusive benefits of becoming a member by paying for an online account.[2] (See image below.)



**GET MORE EXCLUSIVE BENEFITS WITH AN ONLINE ACCOUNT**

Create yours at **aarp.org/createaccount** to access:

- 50% more AARP Rewards points
- Coupons for nearby restaurants and stores
- Members–only films, books and articles
- Text or email alerts about new benefits
- And much more

75.     Moreover, AARP sends weekly emails to members with links to prerecorded video content, including members-only videos.

76.     AARP offers various online and on-demand programs and classes—which incorporate prerecorded video content—for purchase, such as AARP Online Fitness, the AARP

---

[2] https://www.aarp.org/content/dam/aarp/benefits_discounts/documents/aarp-member-benefits-guide.pdf?intcmp=DSO-MEM-HUB-MBG1 (last visited June 13, 2024).

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

Smart Driver course, and AARP Skills Builder for Work. AARP gives members exclusive discounts for these video programs and classes, which require an AARP log-in to watch.

77.     AARP promotes these courses and the discounted rates for members on its website and through emails sent directly to members.

78.     AARP further encourages members to watch certain videos by offering "AARP Rewards" points, which can be redeemed for contest entries, discounted gift cards, and other prizes.

79.     Members can earn AARP Rewards points by watching specific prerecorded video content (including some members-only videos), playing games, and taking quizzes. AARP members who sign up for AARP Rewards receive additional benefits, compared to non-members, for watching qualifying prerecorded video content. For example, AARP members earn "50% more AARP Rewards points" than non-members, which members can then redeem for members-only content.

80.     AARP promotes the AARP Rewards program and the exclusive members-only benefits in its marketing materials and in direct communications with members. For instance, the AARP Member Benefits Guide highlights that members earn "50% more AARP Rewards points" and can "access members-only rewards and experiences."[3] (See image above.) Emails sent by AARP to members concerning AARP Rewards link to qualifying videos and showcase special rewards items.

81.     AARP directs a significant portion of its operations to producing and delivering prerecorded video content online. AARP is substantially involved in creating and maintaining the prerecorded video content that it provides to members and non-members, including through AARP Studios, AARP's in-house production entity.

82.     AARP Studios produces feature-length films, documentaries, and digital series of shows. In recent years, AARP Studios has released multiple original full-length films and

---

[3] *Id.*

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

documentaries.[4] AARP Studios also has produced multi-episode digital series on a variety of topics, including a celebrity interview series hosted by Don Rickles and a documentary series on military veterans and service members.[5] AARP Studios' productions have garnered millions of views[6] and even won a New York Emmy Award for original short film.[7]

83. AARP derives substantial revenues from the prerecorded video content it produces on its website. It promotes members-only prerecorded video content both to attract and retain paying AARP members. It also monetizes the prerecorded video content on its website by selling advertising space before members-only videos—known as "pre-roll ads"—to businesses.

84. Additionally, AARP tracks the online activities of its users, including their video browsing, in order to deliver targeted content and optimize its advertising revenue.

85. AARP highlights its prerecorded video content in promotional materials to advertisers. AARP's marketing materials for its video content stress the significant increase in video consumption among AARP members and emphasize the use of first-party data to optimize and target advertising.[8] For example, AARP touts that "[v]ideo consumption is up 43% among AARP members" and advertises that its Video Everywhere platform "leverages AARP's first-party data . . . to expand reach and amplify advertisers' video."[9]

---

[4] https://www.aarp.org/about-aarp/purpose-prize/hidden-power-of-purpose-film.html (last visited June 13, 2024); https://www.aarp.org/caregiving/stories/info-2018/care-to-laugh-jesus-trejo.html?CMP=RDRCT-CON-CAREGIVING-071818 (last visited June 13, 2024).

[5] https://www.aarp.org/entertainment/celebrities/info-2017/dinner-with-don-rickles.html (last visited June 13, 2024); https://www.aarp.org/home-family/voices/veterans/info-2022/angela-salinas-reporting-for-duty.html (last visited June 13, 2024).

[6] https://blog.aarp.org/aarp-media-relations/vote-today-dinner-with-don-series-nominated-for-2018-webby-award (last visited June 13, 2024); https://blog.aarp.org/aarp-media-relations/aarp-wins-sharecare-award-for-video-celebrating-men-as-family-caregivers (last visited June 13, 2024).

[7] https://blog.aarp.org/fighting-for-you/emmy-andantes-motowns-secret-blend (last visited June 13, 2024).

[8] https://advertise.aarp.org/aarp-media/video (last visited June 13, 2024).

[9] Id.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

**B.    AARP disclosed Plaintiffs' and Class members' private video-viewing information to Meta.**

86.    While Plaintiffs and Class members were viewing prerecorded video content on AARP's website, AARP transmitted their video-viewing information to Meta.

87.    AARP's transmission of information to Meta included the specific names of video content viewed by users, as well as the user's Facebook Profile ID ("FID"), a string of numbers unique to each Facebook profile that personally identifies the user.

88.    Anyone who possesses an FID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile by simply visiting www.facebook.com/[the user's FID]. Facebook profiles contain large amounts of personal information.

89.    A Facebook profile typically shows the Facebook user's name, gender, place of residence, career, educational history, a multitude of photos, and the content of the user's posts. This information may reveal even more sensitive personal information; posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

90.    Just as Meta can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of a FID. Facebook admits this capability on its website. Thus, equipped with a FID and the video content name and URL—all of which AARP provides to Meta without appropriate consent from its members—any ordinary person can determine the identity of the AARP member and the specific video or media content they viewed on AARP's website.

91.    AARP transmitted the video title and Facebook Profile ID information in a single, unencrypted transmission, through an invisible tracking tool called a "Meta Pixel." A Meta Pixel is a snippet of programming code that, once installed on a website, sends information to Meta. This transmission occurs when a member views a prerecorded video on AARP's website.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

92.     The screenshots below show the means of AARP's transmission of this PII. The "c-user" value highlighted in the first screenshot is the Facebook Profile ID. The second screenshot highlights the full title of the requested video being transmitted to Meta.



SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

93.     Hence, when an AARP member visits an AARP webpage and requests a prerecorded video, the Pixel transmits to Meta both the member's FID and the title of the video—information highlighted, respectively, in the red boxes above.

94.     The Pixel is an advertising tool that allows website owners to track visitor actions on their websites for the purposes of sending the corresponding information to Meta; websites use the Pixel in hopes of better targeting their products and services on Facebook to interested customers. Accordingly, an organization such as AARP chooses to install the Pixel on its website in order to increase membership and revenue.

95.     According to Meta's website, the Pixel allows it "to match your website visitors to their respective Facebook User account" and that "[o]nce matched, we can tally their actions in the Facebook Ads Manager so you can use the data to analyze your website's conversion flows and optimize your ad campaigns."[10]

96.     AARP knew that by installing the Pixel on its website, the Pixel would send Meta information identifying its members and their video-watching habits. Meta's website explains that, to begin using the Meta Pixel, a business must first "install" the Pixel "by placing the Meta Pixel base code on all pages of your website."[11] AARP made the conscious decision to undertake this installation process.

97.     Further demonstrating that AARP knowingly placed the Pixel in its website code, Meta's own website states that "[d]evelopers and marketers can *optionally choose* to send information about" a visitor's activity on its website. (Emphasis added).[12]

98.     Meta offers its Pixel tool to websites across the internet, and benefits from websites like AARP installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like

---

[10] https://developers.facebook.com/docs/meta-pixel/get-started (last visited June 13, 2024).

[11] *Id.*; https://www.facebook.com/business/tools/meta-pixel/get-started (last visited June 13, 2024).

[12] https://developers.facebook.com/docs/meta-pixel (last visited June 13, 2024).

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

Instagram. In addition, even if the business does not advertise with Meta, the Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from serving more targeted ads. The Pixel is installed on a variety of websites and provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

99.     Using the Meta Pixel likewise benefits AARP's business by improving its ability to promote its content and services to its users.

100.    While AARP describes itself as a non-profit, it is the parent of for-profit subsidiaries and affiliates, including AARP Services, Inc. AARP's website states that AARP Services provides "data licensing" and "world-class data mining, advanced analytics and targeting capabilities" and that it helps "build profitable and lasting relationships between brands and consumers by leveraging our deep data insights, innovative tools, and strategic . . . capabilities."[13]

101.    Through use of the Meta Pixel, AARP discloses to Meta the full name of each video a user watched, together with the user's Facebook Profile ID, thus linking users' viewing content choices and preferences to their Facebook profiles. In other words, this single transmission connects a user's video-viewing choices with their Facebook Profile ID.

102.    AARP violates and invades the privacy rights of users with its practice of sending their FIDs, together with their viewing content, to Meta. Plaintiffs and Class members did not consent to AARP's disclosure of their viewing content and their identities to Meta.

103.    The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. AARP's website includes its Terms of Service and a Privacy Policy, neither of which operates as a standalone consent form disclosing the information shared through the Meta Pixel and requesting user consent. Accordingly, no user provided AARP with the level of consent required by the VPPA for disclosure of their viewing content and identities to Meta.

---

[13] https://www.aarp.org/about-aarp/aarp-services/ (last visited June 13, 2024).

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 4:22-CV-05499-YGR

**C.     AARP's privacy violations harmed Plaintiffs and Class members.**

104.     AARP shared Plaintiffs' personal information with Meta, including their video-viewing histories and associated Facebook Profile IDs, which they reasonably expected would be kept private.

105.     The personal information AARP obtained from Plaintiffs and Class members commands value in digital advertising markets dependent upon such consumer information. AARP's acquisition and use of their personal, private information deprived Plaintiffs and Class members of control over that information and prevented them from realizing its full value for themselves.

106.     AARP's conduct caused economic harm to Plaintiffs and Class members, who were AARP subscribers during the Class Period, in that they paid subscription fees to AARP for services, including access to exclusive prerecorded video content, that they did not expect would subject them to the practices described herein. Plaintiffs and Class members would not have subscribed to AARP, or would not have paid as much as they did for a subscription, had AARP fully and fairly disclosed its practice of sharing their video-watching behavior with third parties in the manner mandated by the VPPA.

## CLASS ALLEGATIONS

107.     Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class and Subclass:

> **Nationwide Class**: All persons residing in the United States who subscribed to AARP, viewed prerecorded video content on https://www.aarp.org, and used Facebook during the time Meta's Pixel was active on https://www.aarp.org.

> **California Subclass:** All persons residing in California who subscribed to AARP, viewed prerecorded video content on https://www.aarp.org, and used Facebook during the time Meta's Pixel was active on https://www.aarp.org.

108.     Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members

16

of their immediate families, and Plaintiffs' counsel.

109.   The "Class Period" extends from January 1, 2013 to the present.

110.   Plaintiffs reserve the right to modify, change, or expand the Class definition based upon discovery and further investigation.

111.   **Numerosity**: The Class consists of at least hundreds of thousands of individuals, making joinder impractical.

112.   **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

     a.   Whether AARP's use of the Meta Pixel was without user consent or authorization in a standalone form;

     b.   Whether AARP obtained and shared, or caused to be obtained and shared, Plaintiffs' and Class members' personal information through tracking relying on the Meta Pixel, installed by AARP on its website;

     c.   Whether third parties obtained Plaintiffs' and Class members' personal information as a result of AARP's conduct described herein;

     d.   Whether AARP's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*;

     e.   Whether AARP's conduct violates the Unfair Competition Law, Cal. Bus. and Prof. Code § 17200, *et seq.*;

     f.   Whether AARP's acquisition and transmission of Plaintiffs' and Class members' personal information caused them harm; and

     g.   Whether AARP should be enjoined from engaging in such conduct in the future.

113.   **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, have been injured by AARP's challenged conduct: disclosure of users' PII and viewing content to Meta without appropriate consent.

17

114.    **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

115.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of AARP's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this Complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

116.    **Injunctive relief**: AARP has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

117.    All applicable statute(s) of limitations have been tolled by AARP's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and Class members could not have reasonably discovered AARP's practices of sharing their personal viewing content and PII with Meta using a piece of programming code until shortly before this class action litigation commenced.

118.    AARP was and remains under a continuing duty to disclose to Plaintiffs and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by AARP, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

Case 4:22-cv-05499-YGR   Document 175   Filed 07/25/25   Page 44 of 100

**FIRST CAUSE OF ACTION**
**Violation of the Video Privacy Protection Act (the "VPPA")**
**18 U.S.C. § 2710, *et seq.***
**(On Behalf of the Nationwide Class)**

119.    Plaintiffs incorporate and reallege the above factual allegations by reference.

120.    The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any consumer to a third party without the consumer's "informed, written consent . . . in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b).

121.    As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." AARP is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because its operations model substantially relies on creating and providing a range of prerecorded video content to paying subscribers, as demonstrated by the following facts, among others:

   a.    AARP features thousands of videos on its website.

   b.    AARP's prerecorded video content concerns, among other subjects, daily news recaps, fitness and exercise videos, videos about recognizing serious medical conditions, on-demand video classes and presentations, and multi-episode TV series and a sizable portion of this prerecorded content is provided exclusively or at discounted rates to members.

   c.    AARP directs a significant portion of its operations to producing and delivering prerecorded video content online and is substantially involved in creating and maintaining its own video content, including through AARP Studios, its in-house video production entity, which produces a range of prerecorded video content, including feature-length films, documentaries, and multi-episode digital series.

   d.    AARP derives revenue from the prerecorded video content on its website, both by promoting members-only video content to attract and retain subscribers and by selling advertising space associated with that content to businesses.

19

122.    As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

123.    AARP knowingly caused personal viewing information, including Facebook Profile IDs, concerning Plaintiffs and Class members to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Meta as an individual who viewed AARP's content, including the specific video materials requested and watched on AARP.

124.    As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Plaintiffs and Class members are subscribers of AARP who pay approximately $16 per year to subscribe to AARP's services. In exchange for their annual subscription fees, Plaintiffs receive access to AARP's members-only prerecorded video content. This exclusive prerecorded video content includes specially curated AARP entertainment content; fitness, meditation, and lifestyle videos; full-length movies; interview videos with celebrities and best-selling authors; and on-demand video classes and presentations. In addition, AARP gives Plaintiffs and other members exclusive discounts for paid video programs and classes, which likewise incorporate prerecorded video content. AARP also gives Plaintiffs and other AARP members who participate in its loyalty program, AARP Rewards, additional benefits (compared to non-members) for watching its prerecorded video content, including bonus points and exclusive prizes.

125.    As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. AARP failed to obtain informed, written consent that satisfied these statutory requirements.

126.    Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C.

§ 2710(b)(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." AARP failed to provide an opportunity to opt out as required by the Act.

127.     AARP was aware that the disclosures to Meta that were shared through the Pixel identified Plaintiffs and Class members. AARP also knew that Plaintiffs' and Class members' personal viewing content was disclosed to Meta because AARP programmed the Meta Pixel into its website code, knowing that Meta would receive video titles and the subscriber's Facebook Profile ID when a user watched a video.

128.     By disclosing Plaintiffs' and Class members' personal viewing content, AARP violated Plaintiffs' and Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

129.     As a result of the above violations, AARP is liable to Plaintiffs and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "actual damages but not less than liquidated damages in an amount of $2,500" per violation. 18 U.S.C. § 2710(c)(2)(A). Under the Act, AARP is also liable for reasonable attorneys' fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by AARP in the future.

## SECOND CAUSE OF ACTION
### Violation of California's Unfair Competition Law (the "UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of the California Subclass)

130.     California Plaintiffs incorporate and reallege the above factual allegations by reference.

131.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

132.     California Plaintiffs bring this cause of action in the alternative to their claim at

law. There is no adequate remedy at law that would provide redress to California Plaintiffs and the California Subclass or ensure that AARP will not deploy the same data practices in the future.

### Unlawful

133.   A business practice is "unlawful" under the UCL if it violates any other law or regulation.

134.   AARP's business acts and practices are unlawful because they violate the VPPA, as set forth above. AARP therefore is in violation of the "unlawful" prong of the UCL.

### Unfair

135.   AARP committed unfair business practices, moreover, by disclosing California Plaintiffs' and Subclass members' Facebook Profile ID and viewing content to Meta without their clear, informed consent.

136.   AARP's conduct violates California's and the nation's legislatively declared public policy in favor of protection of consumer privacy. *See* S. Rep. No. 100-500 at 7-8 (1988) (finding that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems . . . create[s] privacy interests that directly affect the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard."); California Bill Analysis, A.B. 375 Assem. (June 27, 2017) (noting that "[t]he unregulated and unauthorized disclosure of personal information and the resulting loss of privacy can have devastating effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to the destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.").

137.   The disclosure of California Plaintiffs' and Subclass members' personal information without their express consent raises significant privacy concerns. The gravity of harm resulting from AARP's practice of sharing California Plaintiffs' and Subclass members' personal information—without first obtaining their clear and informed consent to that practice—outweighs any potential utility therefrom. AARP's conduct set forth in this Complaint violates established

public policy and is unscrupulous, offensive, and substantially injurious.

138.    AARP actually and proximately caused harm to California Plaintiffs and Subclass members in that, among other things, they suffered economic injury by overpaying for their subscriptions. California Plaintiffs and Subclass members paid AARP subscription fees and, in exchange, received access to members-only prerecorded video content. California Plaintiffs and Subclass members would not have subscribed to AARP, or would not have paid as much as they did for a subscription, had AARP fully and fairly disclosed its practice of sharing their video-watching behavior with third parties in the manner required by the VPPA.

139.    California Plaintiffs therefore seek restitution, an injunction, and all other appropriate relief in equity, including reasonable attorneys' fees and costs of suit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court:

A.    Certify this case as a class action, and appoint Plaintiffs as Class representative and the undersigned attorneys as Class Counsel;

B.    Enter judgment in favor of Plaintiffs and the Class;

C.    Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of the challenged conduct and an accounting and purging of wrongfully obtained personal information;

D.    Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages or restitution to which Plaintiffs and Class members are entitled;

E.    Award Plaintiffs and Class members pre- and post-judgment interest as provided by law;

F.    Award Plaintiffs and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

G.      Award such other and further relief as the Court deems necessary and appropriate.

### **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues triable as of right.

Dated: July 19, 2024                    Respectfully submitted,

By: */s/ Simon S. Grille*
Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiffs*

# EXHIBIT 2

*Markels et al. v. AARP*
c/o Settlement Administrator
ADDRESS
[email address]
[www. _____.com]

## CLAIM FORM

## YOUR CLAIM MUST BE SUBMITTED BY: [DATE]

### UNIQUE ID NUMBER

To access the Claim Form, please provide the Unique ID and PIN located on the notice of the Settlement you received.

If you did not receive a Unique ID and PIN but believe you are a class member, you should contact the Settlement Administrator at [email] to request a Unique ID and PIN. You will be asked to provide documentation, such as your browsing history, that demonstrates that you requested or obtained video content on the AARP website (aarp.org) between September 27, 2020, and [Preliminary Approval date], while in the United States and at a time when you had a Facebook account and also were an AARP member or a registered user of AARP.org.

**FOR MORE INFORMATION, READ THE NOTICE AND FAQ AVAILABLE AT WWW.[INSERT WEBSITE URL].COM OR CALL THE SETTLEMENT ADMINISTRATOR AT 1-######.**

*Markels et al. V. AARP*
c/o Settlement Administrator
ADDRESS
[email address]
[www._____.com]

## SECTION A:  NAME AND CONTACT INFORMATION

Please provide your name and contact information below. If your name or contact information changes after you submit this Claim Form, please notify the Claims Administrator of the new information by visiting www._____.com or emailing [address].

| FIRST NAME | LAST NAME |
|---|---|
|  |  |
| **EMAIL ADDRESS** | **PHONE NUMBER** |
|  |  |

| MAILING ADDRESS |
|---|
|  |

## SECTION B:  PAYMENT INFORMATION

Please select your preferred payment method and provide the requested information.

| Selection | Payment Method | Verification Method |
|---|---|---|
| ☐ | <<Zelle>> | Phone number: |
| ☐ | <<Venmo>> | Phone number: |
| ☐ | <<PayPal>> | Email: |
| ☐ | <<Electronic Transfer>> | Bank Account Type: <br><br> Bank Account Number: <br><br> Bank Routing Number: |
| ☐ | <<Paper Check>> | Mailing Address: |

Questions? Visit www._____.com or call toll-free 1-#####

*Markels et al. V. AARP*
c/o Settlement Administrator
ADDRESS
[email address]
[www._____.com]

## SECTION C:  PROOF OF FACEBOOK ACCOUNT

You must include proof of your Facebook account. Copy and paste the link to your Facebook profile page in the box below:

**How to get your Facebook profile link on a web browser**

1. **Log in to Facebook.** Open your web browser and go to facebook.com. Log in with your username and password.

2. **Go to your profile.** Click on your profile picture in the top right corner and then click your name to go to your profile page. If you are using a web browser on a mobile device, you must first click the three horizontal lines in the top right corner of the screen and then your name in the top left corner.

3. **Identify the link.** Look at the address bar in your browser. The link for your Facebook profile page is located there. If you are using a web browser on a mobile device, you will need to tap the address bar to see the full link. Below are examples of how the link may appear:

    a. https://www.facebook.com/profile.php?id=1234567890

       or

    b. https://www.facebook.com/username

4. **Copy the link and insert it in the box below.**

**How to get your Facebook profile link from the mobile Facebook App**

1. **Open the Facebook app.** Open the Facebook app on your mobile device. If necessary, log in with your username and password.

2. **Go to your profile.** Tap the three horizontal lines above the word "Menu" in the bottom right corner. Then click on your name or profile picture in the top left corner to go to your profile page.

3. **Copy profile link.** Tap the button with three dots (it appears next to the "Edit profile" button). Scroll to the bottom of the list of options and tap "Copy profile link."

4. **Insert the link in the box below**.

**What to do if you cannot access your Facebook account**

1. If your Facebook account is currently deactivated, deleted, or you are otherwise unable to access it, you can provide your Facebook profile link in the following format:

    a. https://www.facebook.com/FirstNameLastName/Inactive

2. If the Claims Administrator cannot verify your account based on your initial submission, you may be asked for more information.

Questions? Visit www._____.com or call toll-free 1-#####

*Markels et al. V. AARP*
c/o Settlement Administrator
ADDRESS
[email address]
[www._____.com]

**Facebook Profile URL:**

**Claims will be audited**.

| SECTION D:  VERIFICATION AND DECLARATION |
|---|

☐     **I declare under oath that (a) between September 27, 2020, and [Preliminary Approval date], I requested or obtained video content on the AARP website (AARP.org) while in the United States and at a time when I had a Facebook account and also was an AARP member or a registered user of AARP.org; and (b) all information in this Claim Form is true and correct to the best of my knowledge**.

| SIGNATURE | DATE |
|---|---|
|  |  |

| PRINT NAME |
|---|
|  |

4

# EXHIBIT 3



United States District Court for the Northern District of California

*Markels et al. v. AARP*

Case No. 4:22-CV-05499-YGR

# Class Action Notice

## Authorized by the U.S. District Court for the Northern District of California

**Were you an AARP member or a registered user of AARP.org and access videos on AARP.org in the U.S. while you also had a Facebook account between September 27, 2020, and [preliminary approval date]?**

*A class action Lawsuit and a Settlement of that Lawsuit could affect your rights.*

*You may be eligible to receive payment from this Settlement.*

**Your Options:**

**1. Submit a claim.** Get a payment.

**2. Do nothing.** You will be bound by the Settlement and you will get no payment.

**3. Opt out of the Settlement.**

**4. Object to the Settlement.**

**You are not being sued.**

*This notice explains the Lawsuit, the Settlement, and your legal rights and options.*

*Please read the entire notice carefully.*

Important things to know:

- You **must submit a claim** to receive money from the settlement.

- If you do nothing, you will still be bound by the Settlement and your rights will be affected.

- If you want to opt out or object, you must do so by [DATE].

- You can learn more at: [website].

2

# Table of Contents

**Table of Contents**........................................................................................3

**Key Information**.........................................................................................5

What is happening in this lawsuit?................................................................5

Why did I get this notice?.............................................................................5

What are my options?...................................................................................6

What are the most important dates?.............................................................6

**Learning About the Lawsuit**......................................................................7

What is this lawsuit about?............................................................................7

Why is there a settlement?...........................................................................7

What happens next in this lawsuit?...............................................................7

**Important Facts About How the Settlement Might Affect You**...........................8

How do I know if I am a member of the Settlement Class?.................................8

What if I'm still not sure if I'm included in the Settlement Class?.......................8

What are the benefits of the Settlement?.......................................................8

How can I verify or update my mailing address?..............................................9

**Your Options as a Settlement Class Member**...............................................9

What are my options if I am a Settlement Class Member?..................................9

Do I need to do anything to get paid?...........................................................10

How do I submit a claim?............................................................................10

How much will my payment be?...................................................................12

When will I get my payment?.......................................................................12

What do I give up by making a Settlement Claim?..........................................12

What are the consequences of doing nothing?..............................................13

What if I don't want to be a part of the Settlement Class?...............................13

How do I opt out?......................................................................................13

What are the consequences of excluding myself?..........................................14

How do I tell the Court if I don't like the Settlement?.....................................14

How do I submit an objection to the Settlement?...........................................15

What information must be included in an objection?.......................................16

What's the difference between objecting and excluding yourself? ........................ 16

**The Final Approval Hearing** ................................................................................ **17**

When and where will the Court decide whether to approve the Settlement? ....... 17

Do I have to come to the Final Approval Hearing? ..................................................... 17

May I speak at the hearing? ........................................................................................ 18

**The Lawyers Representing You** ............................................................................. **18**

Do I have a lawyer in this lawsuit? ............................................................................. 18

How will the lawyers be paid? .................................................................................... 19

Should I get my own lawyer? ...................................................................................... 19

**Key Resources** ....................................................................................................... **19**

How can I get more information? ................................................................................ 19

# Key Information

## What is happening in this lawsuit?

A group of people (called Plaintiffs) filed a class action lawsuit against AARP—the defendant in this lawsuit. These Plaintiffs claimed that AARP disclosed the identities and aarp.org video-viewing activity of certain members and registered users of aarp.org without consent, in violation of federal law. AARP denies these allegations.

### What is a class action lawsuit?

A class action is a lawsuit in which one or more people sue on behalf of a larger group, called the Class.

In July 2025, AARP agreed to pay $12.5 million to settle the claims against it. The group of people that AARP has agreed to pay is called the Settlement Class and it includes everyone who, between September 27, 2020, and [Preliminary Approval date], requested or obtained video content on the AARP website (AARP.org) while in the United States and at a time the person had a Facebook account and also was an AARP member or a registered user of AARP.org. If you are in this group and want to get paid, **you must submit a claim**. Details on how to submit a claim are provided below.

## Why did I get this notice?

A court authorized this Notice because you have the right to know about the proposed settlement in the class action lawsuit, *Markels et al. v. AARP.* **You received this notice because you may be a member of the group of people whose rights are affected by the proposed settlement.** This notice gives you information about the case and tells you how to opt out if you don't want to be part of it.

It is an important legal document, and we recommend that you read all of it. If you have questions or need assistance, please go to [website] or call [phone number].

5

## What are my options?

| Submit A Claim Form | The only way to get a payment. |
|---|---|
| Exclude Yourself by Opting Out | Get no payment.<br><br>This is the only option that allows you to keep your right to bring any other claim against AARP related to the subject matter of the claims in this case. |
| Object to the Settlement and/or Attend a Hearing | You can write to the Court about why you like or do not like the Settlement. The Court cannot order a different settlement.<br>You can also ask to speak to the Court at the hearing on _____, 2025 about the fairness of the Settlement, with or without your own attorney.<br><br>You may also attend the hearing via Zoom (see the Public Hearings link and instructions at https://cand.uscourts.gov/judges/gonzalez-rogers-yvonne-ygr/). |
| Do Nothing | Get no payment. Give up rights and be bound by the Settlement. |

## What are the most important dates?

The deadline to submit a claim for a payment from the Settlement is [DATE].

The deadline to opt out of the Settlement is [DATE].

The deadline to object to the Settlement is [DATE].

# Learning About the Lawsuit

## What is this lawsuit about?

Plaintiffs claim that AARP violated the Video Privacy Protection Act ("VPPA") by disclosing the identities and aarp.org video-viewing activity of certain members and registered users of aarp.org without lawful consent. The lawsuit contends that AARP transmitted this information to Meta Platforms, Inc. ("Meta")—the owner of Facebook—through use of a tool called the Meta Pixel. The case is *Markels et al. v. AARP*, Case No. 4:22-cv-05499-YGR (N.D. Cal.).

AARP denies the allegations made in the lawsuit and denies that it did anything improper or unlawful.

The Court has not determined who is right. The proposed settlement to resolve this case is not an admission of liability or wrongdoing by AARP.

### Where can I learn more?

You can get a complete copy of the key documents in this lawsuit by visiting: [website]

## Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendant. Instead, both sides agreed to a Settlement. That way, they avoid the costs and risks of a trial, and the affected Class Members can get benefits or compensation. The class representatives and their attorneys think the Settlement is best for the Class.

## What happens next in this lawsuit?

The Court in charge of this case will decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeal is resolved.

7

# Important Facts About How the Settlement Might Affect You

## How do I know if I am a member of the Settlement Class?

The Settlement Class includes all persons who, between September 27, 2020, and [Preliminary Approval date], requested or obtained video content on the AARP website (AARP.org) while in the United States and at a time the person had a Facebook account and also was an AARP member or a registered user of AARP.org.

If you are in this group, you are a member of the Settlement Class and you must submit a claim in order to receive payment.

Class Members will receive a Unique ID and PIN from the Settlement Administrator. If you did not receive a Unique ID and PIN but believe you are a class member, you can contact the Settlement Administrator at [email] to request a Unique ID and PIN. You will be asked to provide documentation, such as your browsing history, that demonstrates that you requested or obtained video content on the AARP website (AARP.org) between September 27, 2020, and [Preliminary Approval date], while in the United States and at a time when you had a Facebook account and also were an AARP member or a registered user of AARP.org.

## What if I'm still not sure if I'm included in the Settlement Class?

If you are not sure whether you are included in the class, you can ask for free help by calling Simpluris Inc. (the Claims Administrator) at XXX-XXX-XXXX for more information. You can also visit www.XXXX.com.

## What are the benefits of the Settlement?

AARP will pay $12,500,000 into an agreed-upon fund to settle this case.

AARP has also agreed to cease or limit the operation of the Meta Pixel on any pages on the AARP.org website that include video content, where the information transmitted via the Meta Pixel identifies a

person as having requested or obtained specific video materials on that page unless: (a) the VPPA is amended or repealed in relevant part, judicially invalidated in relevant part, or judicially construed not to be violated by use of the Meta Pixel or other website tracking technology in similar circumstances; (b) AARP obtains consent in the form required by the VPPA; or (c) the disclosure of information to Meta via the Meta Pixel would not violate the prevailing legal standard under U.S. Supreme Court or Ninth Circuit law.

AARP's obligation does not include situations where the Meta Pixel transmits information about pages on the AARP.org website where video content is included along with other content, including without limitation text, editorial content, pictures, infographics, self-help tools, or listing directories, so long as no specific video materials are identified in any URL for such a page.

Eligible claimants under the Settlement will receive a pro rata (or equal) portion of the Settlement Fund after deductions for administration expenses, attorneys' fees and costs, and service award payments to the Plaintiffs.

## How can I verify or update my mailing address?

You can update your contact information by visiting www.XXXXX.com or emailing [email address].

# Your Options as a Settlement Class Member

## What are my options if I am a Settlement Class Member?

You have four options as a member of the Settlement Class. You can:

(1)  submit a claim to get paid from the Settlement;

(2)  opt out of the Settlement Class and retain your right to sue AARP related to the subject matter of the claims in this case;

9

(3)  object to any part of the Settlement that you do not like, if you do not opt out of the Settlement Class; or

(4)  do nothing and remain in the Settlement Class. If you do nothing and do not submit a claim, you will not receive a payment.

## Do I need to do anything to get paid?

YES. To receive a payment from the Settlement you MUST submit a claim.

**The deadline to submit a claim is [DATE].**

## How do I submit a claim?

If you are a class member (see page 8) and you want to receive a payment, you can submit a claim by filling out and submitting the claim form available at www.XXXXX.com.

You must provide the link for your Facebook profile page on the claim form, so that the Claims Administrator can verify that you are a Class Member. The link you provide must correspond with a Facebook profile that includes your personal information. To find your Facebook profile page link, you can use the following steps:

**How to obtain your Facebook profile link on a web browser**

(1)  **Log in to Facebook.** Open your web browser and go to Facebook. Log in with your username and password.

(2)  **Go to your profile.** Click on your profile picture in the top right corner and then click your name to go to your profile page. If you are using a web browser on a mobile device, you must first click the three horizontal lines in the top right corner of the screen and then your name in the top left corner.

(3)  **Identify the link.** Look at the address bar in your browser. The link for your Facebook profile page is located here. If you are using a web browser on a mobile device, you will need to tap the address bar to see the full link. Below are examples of how the link may appear:

10

(a) https://www.facebook.com/profile.php?id=1234567890

**or**

(b) https://www.facebook.com/username

**How to obtain your Facebook profile link on the mobile phone Facebook App**

(1) **Open the Facebook app.** Open the Facebook app on your mobile device. If necessary, log in with your username and password.

(2) **Go to your profile.** Tap the three horizontal lines above the word "Menu" in the bottom right corner. Then click on your name or profile picture in the top left corner to go to your profile page.

(3) **Copy profile link.** Tap the button with three dots (it appears next to the "Edit profile" button). Scroll to the bottom of the list of options and tap "Copy profile link."

**What to do if you cannot access your Facebook account**

(1) If your Facebook account is currently deactivated, deleted, or you are otherwise unable to access it, you can provide your Facebook profile link in the following format:

(a) https://www.facebook.com/FirstNameLastName/Inactive

(2) If the Claims Administrator cannot verify your account based on your initial submission, you may be asked for more information.

The Claim Form requires that you attest under oath that you accessed video content on AARP.org while in the United States and at a time when you had a Facebook account and also were an AARP member or a registered user of AARP.org.

It is important to provide accurate information in the Claim Form because claims will be audited by the Claims Administrator. If the Claims Administrator cannot verify your claim based on your initial submission, you may be asked for more information. The Claims Administrator will provide you with further instructions in the event you are required to submit this information.

11

If you have questions, you can contact the Claims Administrator by telephone (XXX-XXX-XXXX) or email [insert email address].

**The deadline to submit a claim form is [DATE].**

## How much will my payment be?

After deduction of the costs of notice and settlement administration, any Court-approved award of attorneys' fees (up to 30% of the Settlement Fund), litigation costs, and any service awards for the Class Representatives (up to $10,000 to each of the three individual Class Representatives), the Settlement Fund will be divided equally among eligible class members.

We will not know the final amount that each class member will receive until all claims are evaluated. Based on claims rates in similar cases, Class Counsel estimate that eligible class members could receive between $47 and $237 each. The actual amount that each class member receives will be determined once all claims are evaluated, and may be higher or lower than these estimates.

## When will I get my payment?

Payments will be made if the Court approves the Settlement after the Final Approval Hearing and there is no appeal from the order approving the Settlement. For updates please visit www.website.com or follow @GirardSharp on X (Twitter).

## What do I give up by making a Settlement Claim?

Unless you exclude yourself with an opt-out request (see page 13), you cannot sue, continue to sue, or be part of any other lawsuit against AARP about the issues in this case. The "Releases" section in the Settlement Agreement describes the legal claims that you give up if you remain a Settlement Class Member.

The Settlement Agreement is available at www.XXXX.com.

12

## What are the consequences of doing nothing?

If you do nothing, you won't be able to start, continue, or be part of any other lawsuit against AARP for alleged violation of the VPPA during the Class Period. If you do nothing and do not submit a claim, you will not receive a payment.

## What if I don't want to be a part of the Settlement Class?

You can opt out of the Settlement Class.

Information about how to opt out of the Settlement Class is contained below.

## How do I opt out?

You can opt out of the Settlement Class by going to www.XXXX.com and filling out the online form, or by sending a letter via first class U.S. mail saying that you want to opt out of the Settlement in *Markels et al. v. AARP*, Case No. 4:22-cv-05499-YGR (N.D. Cal.) to the Claims Administrator at the below address:

> Simpluris Inc.
> 3194-C Airport Loop Drive
> Costa Mesa, CA 92626
> [Phone Number]

Opt-out requests must be submitted individually and in writing. You must include your Unique ID (provided by the Claims Administrator in the notice emailed to you), a statement that you meet the requirements for Class membership, first and last name, email address, mailing address, and telephone number. If you are under 18 years old and do not want your name included on the list of opt-outs filed with the Court, your letter must state that you are under 18. The deadline to opt out is [DATE]. Opt-outs submitted by U.S. Mail must be postmarked no later than [DATE].

13

If you cannot locate your Unique ID, or did not receive a Unique ID and believe you are a Class Member, you should contact the Settlement Administrator by email: [insert email address]. You may be asked to provide the email address or physical mailing address associated with your AARP account or documentation, such as your browsing history, that demonstrates that you requested or obtained video content on the AARP website (AARP.org) between September 27, 2020, and [Preliminary Approval date], while in the United States and at a time when you had a Facebook account and also were an AARP member or a registered user of AARP.org.

## What are the consequences of excluding myself?

If you are a class member (see page 8 above), unless you opt out, you give up the right to sue AARP for the claims resolved by the Settlement. If you are a class member and you want to pursue your own lawsuit, you must opt out. You will be responsible for the cost of any services provided by your lawyer.

This is your only opportunity to opt out of the Settlement Class.

**What happens if I opt out of the Settlement Class?**

If you opt out of the Settlement Class, you will:

- Not be eligible to receive payment from the Settlement;

- Not have any rights as a member of the class under the Settlement;

- Not be bound by any further orders or judgments in this case; and

- Keep the right, if any, to file a lawsuit against (or continue to sue) AARP about the legal claims brought on behalf of the Settlement Class.

## How do I tell the Court if I don't like the Settlement?

If you are a Settlement Class Member and do not opt out of the Settlement, you have the right to object to the Settlement, the Plan of Allocation, or Class Counsel's request for attorneys' fees, expenses and service awards. You can't ask the Court to order a different settlement. The Court can only approve or reject the Settlement.

14

If the Court denies approval of the Settlement, no money will be paid to class members and the lawsuit will continue.

## How do I submit an objection to the Settlement?

To object to the Settlement, you (or your lawyer if you have one) must submit a written objection to the Court and send the objection to the Claims Administrator at the addresses on page 13. You must submit your objection on or before [DATE]. Your objection can include any supporting materials, papers, or briefs that you want the Court to consider.

If you submit a timely written objection, you may (but are not required to) appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. If you wish to appear at the Settlement Hearing, you must also include a statement of intention to appear in your objection. Notwithstanding these requirements, upon a showing of good cause to the Court, any objecting Class Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court.

You may also attend the hearing via Zoom (see the Public Hearings link and instructions at https://cand.uscourts.gov/judges/gonzalez-rogers-yvonne-ygr/).

All written objections and supporting papers must clearly identify the case name and number (*Markels et al. v. AARP*, Case No. 4:22-cv-05499-YGR (N.D. Cal.)). You can file the objection electronically at https://www.cand.uscourts.gov/cm-ecf or mail the objection by First Class U.S. Mail, so that it is submitted electronically or postmarked no later than [DATE], to the following address:

> Clerk of the Court
> U.S. District Court for the
> Northern District of California
> 1301 Clay Street
> Oakland, CA 94612
> Case No. 4:22-cv-05499-YGR

## What information must be included in an objection?

To submit an objection, you must substantially comply with the following requirements and submit:

(a) a written statement identifying your name, Unique ID (provided by the Claims Administrator), physical mailing address and email address, telephone number, and signature, and, if represented by counsel, the name and address of counsel;

(b) a written statement that you were an AARP member or registered user of AARP.org and had a Facebook account between September 27, 2020 through [Preliminary Approval date], and requested or obtained video content on the AARP website while in the United States during that time;

(c) a written statement of your objection and the reasons for your objection;

(d) a written statement whether the objection applies only to you, to a specific subset of the Class, or to the entire Class; and

(e) any documentation or authorities in support of your objection.

If you do not mail or electronically file the objection, you must have it delivered in person to the above address, no later than [DATE].

If you cannot locate your Unique ID, or did not receive a Unique ID and believe you are a Class Member, you should contact the Settlement Administrator by email: [insert email address]. You may be asked to provide the email address or physical mailing address associated with your AARP account or documentation, such as your browsing history, that demonstrates that you requested or obtained video content on the AARP website (AARP.org) between September 27, 2020, and [Preliminary Approval date], while in the United States and at a time when you had a Facebook account and also were an AARP member or a registered user of AARP.org.

## What's the difference between objecting and excluding yourself?

Objecting is telling the Court that you don't like something about the

16

Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and telling the Court that you don't want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because it no longer affects you.

# The Final Approval Hearing

## When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on _____, 2025 at ____, in Courtroom 1 on the 4th Floor of the Oakland federal courthouse located at 1301 Clay Street, Oakland, CA 94612.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to Class Members who have asked to speak at the hearing.

The Court will also decide how much Class Counsel should receive in fees, expense reimbursements and service awards. After the hearing, the Court will decide whether to approve the Settlement.

The Court may reschedule the Final Approval Hearing or change any of the deadlines described in this Notice. The date of the Final Approval Hearing may change without further notice to Class Members. Be sure to check the website, www._____.com, for news of any such changes. You can also access the case docket via the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

## Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish.

If you send an objection, you do not have to come to the hearing. If you submitted your written objection on time, the Court will consider

17

it. You may also pay your own lawyer to attend, but that is not necessary.

## May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include a statement in your written objection (see pages 14-16) that you intend to appear at the hearing, with your name, address, and signature. The requirement to submit a written objection in order to appear in court to object to the Settlement may be excused upon a showing of good cause.

# The Lawyers Representing You

## Do I have a lawyer in this lawsuit?

Yes. In a class action, the court appoints class representatives and lawyers to work on the case and represent the interests of all the class members. For purposes of the case, the Court has appointed Simon Grille of Girard Sharp LLP to serve as Class Counsel for the Settlement Class.

> Simon S. Grille
> **Girard Sharp LLP**
> 601 California Street, Suite 1400
> San Francisco, CA 94108
> Telephone: (415) 981-4800
> XXX@girardsharp.com

**You will not be charged for Class Counsel's services**, although their fees may be paid with the Court's approval from the settlement negotiated on behalf of the class.

Class Counsel does not represent you individually, only as a member of the Class.

If you want to be represented by your own lawyer, you may hire one at your own expense.

18

## How will the lawyers be paid?

Class Counsel, who have not been paid for their services in this case since it began, will ask the Court for an award of attorneys' fees of up to 30% of the Settlement Fund. Class Counsel will also seek reimbursement of costs and expenses advanced in litigating the case, as well as service awards to the Class Representatives of up to $10,000 each.

All of these amounts, as well as the costs associated with notice and administering the settlement, will be paid from the Settlement Fund.

All awards for attorneys' fees and expenses are subject to Court approval and will be paid from the Settlement Fund only after the Court approves them.

A copy of Class Counsel's Motion for Attorneys' Fees and Expenses and for Plaintiff Service Awards will be available at www.XXXX.com by [DATE].

You do not individually have to pay any attorneys' fees or expenses in connection with the lawsuit.

## Should I get my own lawyer?

You do not need to hire your own lawyer.

If you want your own lawyer, you may hire one, but you will be responsible for any payment for that lawyer's services. For example, you can ask your own lawyer to appear in court if you want someone other than Class Counsel to speak for you.

You may also appear for yourself without a lawyer.

# Key Resources

## How can I get more information?

This Notice summarizes the proposed Settlement—more details are in

the Settlement Agreement and other case documents. To get a copy of the case documents you can:

- contact the lawyers who represent the class (information below);

- visit the case website at [website];

- access the Court Electronic Records (PACER) system online at: https://ecf.cand.uscourts.gov; or

- by visiting the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays (addresses below).

| Resource | Case Information |
|---|---|
| **Case website** | [website] |
| **Toll Free Number** | [phone number] |
| **Claims Administrator** | [Claims Administrator] [Mailing Address] [Phone Number] |
| **Class Counsel** | Simon Grille **Girard Sharp LLP** 601 California Street Suite 1400 San Francisco, CA 94108 (415) 981-4800 XXX@girardsharp.com |
| **Court (DO NOT CONTACT)** | PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS: Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102 Robert F. Peckham Federal Building and United |

20

| | States Courthouse, 280 South 1st Street, San Jose, CA 95113 |
| --- | --- |
| | Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612 |
| | United States Courthouse, 3140 Boeing Avenue, McKinleyville, CA 95519 |

21

# EXHIBIT 4

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

11
12
13

14  | JAN MARKELS, WILLIAM MARTIN, and
15  | LYNN SEDA, individually and on behalf of all
    | others similarly situated,

Case No. 4:22-CV-05499-YGR

16  |                     Plaintiffs,

**[PROPOSED] ORDER GRANTING**
**PLAINTIFFS' MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION**
**SETTLEMENT AND PROVIDING FOR**
**NOTICE**

17  |          v.

18  | AARP,

19  |                     Defendant.

20
21

This matter comes before the Court on Plaintiffs' Motion for Preliminary Approval of Class

22  Action Settlement for consideration of whether the Court should grant preliminary approval of the

23  proposed Settlement Agreement[1] entered into by Plaintiffs Jan Markels, William Martin, and Lynn

24  Seda, on behalf of themselves and the Class, and Defendant AARP (collectively, the "Parties").

25  The Court is familiar with the record and has read and considered Plaintiffs' Motion, and all

26  supporting documents submitted therewith, including the Settlement Agreement and Declaration of

27
28

[1] Unless otherwise specified, all capitalized terms used herein that are defined in the Settlement
Agreement have the same meanings as set forth in that agreement.

---

Simpluris, Inc. ("Simpluris Decl.") describing the Parties' proposed method of giving notice to Class Members. The Court finds that there are sufficient grounds to preliminarily approve the Settlement under Federal Rule of Civil Procedure 23, that the Court will likely be able to certify the Class for settlement purposes, and that it is appropriate to direct notice of the Settlement to be disseminated to the proposed Class.

Accordingly, it is **HEREBY ORDERED** that:

**<u>Preliminary Approval of the Settlement</u>**

1.      The proposed Settlement Agreement is preliminarily approved as likely to be finally approved under Federal Rule of Civil Procedure 23(e)(2) and as meriting notice to the Settlement Class for its consideration. This determination is not a final finding that the Settlement is fair, reasonable, and adequate, but it is a determination that good cause exists to disseminate notice to Class Members in accordance with the Settlement Agreement and plan for notice described in the Simpluris Decl. and to hold a hearing on final approval of the proposed Settlement.

2.      Considering the factors set forth in Rule 23(e)(2), the Court preliminarily finds as follows:

      a.   Plaintiffs and Class Counsel have adequately represented the Class;

      b.   The Class Settlement Agreement was negotiated at arm's length with the assistance of the Hon. Edward A. Infante (Ret.) and the Hon. Jeremy D. Fogel (Ret.), both former judges of the Northern District of California and experienced private mediators;

      c.   The monetary relief provided to the Settlement Class is adequate given the risks, delay, and uncertainty of continued litigation and trial, the effectiveness of the proposed method of distributing relief to the class, the terms of the proposed award of attorney's fees, and any agreement required to be identified under Rule 23(e)(3); and

      d.   The Settlement Agreement and proposed method of distributing the relief treat all Class Members equitably relative to each other.

## **Certification of the Class**

3.    The Court finds, upon preliminary evaluation and for purposes of the Settlement only, that the Court will likely be able to certify the following proposed class pursuant to Federal Rule of Civil Procedure 23:

> All persons who, between September 27, 2020, to and through the Preliminary Approval date, requested or obtained video content on AARP.org while in the United States and at a time the person had a Facebook account and was either an AARP member or a registered user of AARP.org.

Excluded from the Class are Defendant AARP, its parents, subsidiaries, affiliates, officers, directors, and employees, and employees of AARP's parents, subsidiaries, or affiliates; any entity in which AARP has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

4.    The Court preliminarily finds that:

    a.    Members of the Class are so numerous as to make joinder impracticable;

    b.    There are questions of law and fact common to the Class, and such questions predominate over any questions affecting only individual Class Members for purposes of the Settlement;

    c.    Plaintiffs' claims and the defenses thereto are typical of the claims of the Class Members and the defenses thereto for purposes of the Settlement;

    d.    Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the Settlement Class Members in this action with respect to the Settlement; and

    e.    A class action is superior to all other available methods for fairly and efficiently resolving this action for purposes of the Settlement.

5.    The Court further finds, for the reasons stated in the Motion, that Plaintiffs and Class Counsel should be provisionally appointed to represent the Class.

6.    This provisional certification of the Class shall be solely for settlement purposes, without prejudice to the parties in the event the Settlement Agreement is not finally approved by this Court or

1    otherwise does not take effect.  If the Settlement Agreement is not finally approved, this provisional

2    certification shall be vacated and shall have no effect.

3                                                      **Manner and Form of Notice**

4         7.     The Court approves, as to their form and content, the Notices (Email Notice, Short-Form

5    Notice, and Long-Form Notice) and Claim Form, substantially in the form of Exhibits 2, 3, 6, and 7, to

6    the Settlement Agreement. AARP is hereby authorized to provide the names, email addresses, mailing

7    addresses, and other contact information appearing within AARP's records of persons potentially falling

8    within the Class to the Claims Administrator. The notice plan outlined in the Settlement Agreement and

9    Simpluris Declaration, which includes direct notice via email and mail, publication notice via a social

10   media advertising campaign, and a settlement website, will provide the best notice practicable under the

11   circumstances. The Notice and its manner of transmission are reasonably calculated, under the

12   circumstances, to apprise the Class of the pendency of the Action, the proposed Settlement and its effects

13   (including the Released Claims), the anticipated motion for attorneys' fees, costs, and for service awards

14   to the Class Representatives, and their rights, including to participate in, opt out of, or object to any

15   aspect of the proposed Settlement; constitute due, adequate and sufficient notice to the Class; and satisfy

16   the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable

17   law and rules.  The date and time of the Final Approval Hearing shall be included in the Notice before

18   dissemination.

19        8.     The Court hereby appoints Simpluris, Inc. to serve as the Claims Administrator to

20   supervise and administer the notice procedures, establish and operate a settlement website (the

21   "Settlement Website"), administer the claims process, distribute payments according to the processes

22   and criteria set forth in the Settlement Agreement, and perform any other duties of the Claims

23   Administrator that are reasonably necessary or provided for in the Settlement Agreement.

24        9.     The Notice and Administration Expenses shall be paid from the Settlement Fund as set

25   forth in the Settlement Agreement.  In the event the Settlement is not approved by the Court or otherwise

26   fails to become effective, Class Counsel shall not be obligated to repay amounts paid to, or that are billed

27   by, the Claims Administrator for Notice or administering the Settlement, as set forth in the Settlement

28   Agreement.

10.     No later than 35 calendar days after entry of this Order, the Claims Administrator will complete distribution of the Notice, substantially in the form of Exhibit 6 to the Settlement Agreement, along with an electronic link to the Claim Form, via email to all members of the Class for whom a valid email address is available. No later than 35 calendar days after entry of this Order, the Claims Administrator will complete distribution of the notice, substantially in the form of Exhibit 7 to the Settlement Agreement, via mail to those members of the Class for whom only a valid mailing address is available. To the extent such transmission of email and/or mail notice results in "bounce-backs," the Claims Administrator will perform a "reverse lookup" to locate a more current or another available email address or mailing address and will make a second attempt to re-send the notice where feasible.

11.     Under the Settlement, all Class Members who wish to participate in the Settlement shall complete and submit a Claim Form in accordance with the instructions contained therein.  All Claim Forms must be postmarked or submitted electronically within 110 calendar days after entry of this Order as set forth in the Settlement Agreement, which provides Class Members 75 calendar days from the Notice Date to submit a Claim.

12.     The Claims Administrator shall also establish and maintain the Settlement Website and post the Notice, the Settlement Agreement, the operative Complaint, and other relevant case documents, as well as contact information for Class Counsel and the Claims Administrator.

13.     All payments to the Claims Administrator shall be subject to prior Court approval. The Court approves an advance payment of $525,000 to the Claims Administrator as set forth in Paragraph 2.2 of the Agreement.

14.     Any distribution of residual funds shall be subject to prior Court approval.

15.     The dates provided for herein may be extended by Order of the Court, for good cause shown, without further notice to the Class.

**The Final Approval Hearing**

16.     The Court will hold a Final Approval Hearing on _____, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Courtroom 1 – 4th Floor for the following purposes: (i) to finally determine whether the Class satisfies the applicable requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (ii) to

determine whether the Settlement should be approved as fair, reasonable, and adequate and in the best interests of the Class; (iii) to consider Class Counsel's application for an award of attorneys' fees, expenses, and for service awards to the Class Representatives; and (iv) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

17.     Class Counsel's application for an award of attorneys' fees, expenses, and for service awards will be considered separately from the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the application for attorneys' fees and expenses, any appeal from any order relating solely to Class Counsel's application for an award of attorneys' fees and expenses, and/or to Class Counsel's application for service awards, or any reversal or modification of any such order, shall not operate to terminate or cancel the Settlement or to affect or delay the finality of a judgment approving the Settlement.

18.     Papers in support of final approval of the Settlement and Class Counsel's application for attorneys' fees and expenses and for service awards shall be filed no later than 75 calendar days after entry of this Order. Any Reply in support of final approval of the Settlement or Class Counsel's application for attorneys' fees, expenses and costs and for service awards shall be filed no later than 125 calendar days after entry of this Order.

**Objections and Appearances at the Final Approval Hearing**

19.     Any Class Member may appear at the Final Approval Hearing and show cause why the proposed Settlement should or should not be approved as fair, reasonable, and adequate; why judgment should or should not be entered; or to comment on or oppose Class Counsel's application for attorneys' fees and expenses or Class Counsel's application for service awards. No person or entity shall be heard or entitled to contest the approval of the Settlement, or if approved, the judgment to be entered approving the Settlement, or Class Counsel's application for an award of attorneys' fees and expenses and for service awards, unless that person's objection is received by the Clerk of the United States District Court for the Northern District of California within 110 calendar days after entry of this Order (the "Objection or Opt-out Deadline"), which provides Class Members 75 calendar days from the Notice Date to object.

20.     To object, such Class Members must substantially comply with the following requirements and submit: (a) a written statement identifying such Person's first and last name, Unique

ID (provided by the Claims Administrator), physical mailing address and email address, telephone number, and signature, and, if represented by counsel, the name, and address of counsel; (b) a written statement attesting that the Class Member was a person who, between September 27, 2020 and the Preliminary Approval date, requested or obtained video content on AARP.org while in the United States and at a time the person had a Facebook account and was either an AARP member or a registered user of AARP.org; (c) a written statement of the Class Member's objection and the reasons for such objection; (d) a written statement of whether the objection applies only to the Class Member, to a specific subset of the Class, or to the entire Class; and (e) any documentation or authorities in support of such objection. All written objections and supporting papers must clearly identify the case name and number (*Markels, et al. v. AARP*, Case No. 4:22-cv-05499-YGR (N.D. Cal.)). If the Class Member wishes to appear at the Final Approval Hearing, he or she must also include a statement of intention to appear at the Final Approval Hearing. Notwithstanding these requirements, upon a showing of good cause to the Court, any objecting Class Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court. Objections must be submitted to the Court either by filing electronically or in person at any location of the United States District Court for the Northern District of California or by mailing it to the Clerk, United States District Court for the Northern District of California, at the following address:

> Northern District of California, San Francisco Division
> United States District Court
> 450 Golden Gate Avenue, Box 36060
> San Francisco, CA 94102-3489
> Case No. 4:22-cv-05499-YGR

21.      Any Class Member who does not make their objection in the time and manner provided for herein shall be deemed to have waived such objection and shall forever be barred from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, and to Class Counsel's application for an award of attorneys' fees and expenses and for service awards. By objecting, or otherwise requesting to be heard at the Final Approval Hearing, a person shall be deemed to have submitted to the jurisdiction of the Court with respect to the objection or request to be heard and the subject matter of the Settlement, including but not limited to enforcement of the terms of the Settlement.

22.     Attendance at the Final Approval Hearing is not necessary, but persons wishing to be heard orally in connection with approval of the Settlement, including the proposed method of distribution, and/or the application for an award of attorneys' fees and expenses and for service awards must indicate in their written objection their intention to appear at the hearing, which may be excused upon a showing of good cause.  If an objector hires an attorney for the purpose of making an objection, the attorney must file a notice of appearance with the Court and serve it on Class Counsel and Defendant's Counsel by the Objection Deadline.

23.     Objectors who provide notice of their intention to appear as set forth in this Order may also attend the Final Approval Hearing via Zoom (see the Public Hearings link and instructions at https://cand.uscourts.gov/judges/gonzalez-rogers-yvonne-ygr/).

## Exclusion from the Class

24.     Any requests for exclusion are due no later than the Objection or Opt-out Deadline.  Any person who would otherwise be a member of the Class who wishes to be excluded from the Class must notify the Claims Administrator in writing of that intent by either (i) U.S. mail postmarked no later than the Objection or Opt-out Deadline; or (ii) submission of an opt-out request on the Settlement Website no later than the Objection or Opt-out Deadline. Opt-outs must be submitted individually by U.S. Mail or through the Settlement Website. Group Opt-outs, including "mass" or "class" opt-outs, are prohibited. Opt-out requests must include the class member's Unique ID (provided by the Claims Administrator), a statement that the individual meets the requirements for Class membership, first and last name, physical mailing address and email address, and telephone number. Any person or entity who is a member of the Class and who validly and timely requests exclusion from the Settlement shall not be a Class Member; shall not be bound by the Settlement Agreement; shall not be eligible to apply for or receive any benefit under the terms of the Settlement Agreement; and shall not be entitled to submit an objection to the Settlement.

25.     Any member of the Class who does not notify the Claims Administrator of their intent to be excluded from the Class in the manner stated herein shall be deemed to have waived his or her right to be excluded from the Class. If the Court finally approves the Settlement, any such person or entity shall forever be barred from requesting exclusion from the Class in this or any other proceeding, and

shall be bound by the Settlement and the judgment, including the releases provided for in the Settlement Agreement, and the Final Order and Judgment.

**Termination of the Settlement**

26.    If the Settlement fails to become effective in accordance with its terms, or if the Final Order and Judgment is not entered or is reversed or vacated on appeal, this Order shall be null and void, the Settlement Agreement shall be deemed terminated, and the Parties shall return to their positions without any prejudice, as provided for in the Settlement Agreement.

**Limited Use of This Order**

27.    The fact and terms of this Order or the Settlement, all negotiations, discussions, drafts and proceedings in connection with this Order or the Settlement, and any act performed or document signed in connection with this Order or the Settlement, shall not, in this or any other Court, administrative agency, arbitration forum, or other tribunal, constitute an admission, or evidence, or be deemed to create any inference (i) of any acts of wrongdoing or lack of wrongdoing, (ii) of any liability on the part of Defendant to Plaintiffs, the Class, or anyone else, (iii) of any deficiency of any claim or defense that has been or could have been asserted in this Action, (iv) of any damages or absence of damages suffered by Plaintiffs, the Class, or anyone else, or (v) that any benefits obtained by the Class under the Settlement represent the amount that could or would have been recovered from Defendant in this Action if it were not settled at this time.  The fact and terms of this Order and the Settlement, and all negotiations, discussions, drafts, and proceedings associated with this Order and the Settlement, including the judgment and the release of the Released Claims provided for in the Settlement Agreement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of this Order, the Final Order and Judgment, and/or the Settlement.

**Reservation of Jurisdiction**

28.    The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

29.    All discovery and pretrial and trial proceedings and deadlines are vacated until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement

and this Order.

**Schedule and Deadlines**

30.    The Court sets the following schedule for further Settlement-related proceedings:

| Event | [Proposed] Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of the motion for preliminary approval |
| Notice Date | No later than 35 calendar days after entry of preliminary approval order |
| Plaintiffs to move for final approval of the settlement and submit declaration of Claims Administrator providing overview of notice process and specifying costs and expenses incurred to date | 75 calendar days after entry of preliminary approval order |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | 75 calendar days after entry of preliminary approval order |
| Deadline to file a claim | 110 calendar days after entry of preliminary approval order |
| Deadline for the submission of objections and requests for exclusion ("Objection or Opt-out Deadline") | 110 calendar days after entry of preliminary approval order |
| Reply briefs in support of final approval and motion for attorneys' fees, expenses, and service awards and updated declaration of Claims Administrator | 125 calendar days after entry of preliminary approval order |
| Final Approval Hearing | At least 140 calendar days after entry of preliminary approval order |

**IT IS SO ORDERED.**

DATED: _____     _____

HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 4:22-CV-05499-YGR

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| JAN MARKELS, WILLIAM MARTIN, and LYNN SEDA, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>AARP,<br><br>       Defendant. | Case No. 4:22-cv-05499-YGR<br><br>**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE** |

This matter came before the Court for hearing pursuant to the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, dated _____ ("Preliminary Approval Order"), on the motion of Plaintiffs Jan Markels, William Martin, and Lynn Seda for approval of proposed class action settlement with Defendant AARP. Due and adequate notice having been given of the Settlement as required by the Preliminary Approval Order, the Court having considered all papers filed and proceedings conducted herein, and good cause appearing therefor, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** as follows:

1.      This Judgment incorporates by reference the definitions in the Class Action Settlement Agreement and Release with Defendant dated July 25, 2025 (the "Settlement Agreement") and the Preliminary Approval Order, and all defined terms used herein that are defined in the Settlement Agreement or the Preliminary Approval Order have the same meanings ascribed to them in those respective documents.

2.      This Court has jurisdiction over the subject matter of the Action and over all Parties thereto, and venue is proper in this Court.

3.      The Court reaffirms and makes final its provisional findings, rendered in the Preliminary Approval Order, that, for purposes of the Settlement only, all prerequisites for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied. The Court accordingly certifies the following Settlement Class:

> All persons who, between September 27, 2020, to and through the Preliminary Approval date, requested or obtained video content on AARP.org while in the United States and at a time the person had a Facebook account and was either an AARP member or a registered user of AARP.org.

4.      Excluded from the Settlement Class are Defendant AARP, its parents, subsidiaries, affiliates, officers, directors, and employees, and employees of AARP's parents, subsidiaries, or affiliates; any entity in which AARP has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

5.      The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the

proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process. The Court further finds that the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met.

6.    Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the Settlement and finds that it is, in all respects, fair, reasonable, and adequate and in the best interests of the Settlement Class.

7.    Except as to any individual claim of those Persons identified in Exhibit 1, if any, who have validly and timely requested exclusion from the Class, the Action and all claims contained therein, as well as all of the Released Claims (including Unknown Claims), are dismissed on the merits and with prejudice. It is hereby determined that all Class Members who did not timely and properly elect to exclude themselves from the Class by a written Request for Exclusion delivered on or before the date set forth in the Preliminary Approval Order and the Notice are bound by this Judgment.

8.    The persons and entities identified in Exhibit 1 hereto requested exclusion from the Class as of the Objection or Opt-out Deadline.  These persons and entities shall not share in the benefits of the Settlement and this Judgment does not affect their legal rights to pursue any claims they may have against AARP. All other members of the Class are hereinafter barred and permanently enjoined from prosecuting any Released Claims against AARP in any court, arbitral forum, tribunal, administrative body, or regulatory body, whether federal, state, local, or otherwise.

9.    Upon the Effective Date, Releasing Plaintiffs shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Released Defendant from all Released Claims.

10.   Neither Class Counsel's application for attorneys' fees, reimbursement of litigation expenses, and service awards for Plaintiffs, nor any order entered by this Court thereon, shall in any way disturb or affect this Judgment, and all such matters shall be treated as separate from the Judgment entered herein.

11.    The Parties shall bear their own costs and attorneys' fees, except as set forth in the Settlement Agreement, in this Judgment, or any Order regarding Plaintiffs' request for attorneys' fees, expenses, and service awards.

12.    The fact and terms of this Order or the Settlement; all negotiations, discussions, drafts and proceedings in connection with the Order or the Settlement; and any act performed or document signed in connection with this Order or the Settlement, shall not, in this or any other Court, administrative agency, arbitration forum, or other tribunal, constitute an admission, or evidence, or be deemed to create any inference (a) of any acts of wrongdoing or lack of wrongdoing; (b) of any liability on the part of Defendant to Plaintiffs, the Class, or anyone else; (c) of any deficiency of any claim or defense that has been or could have been asserted in this Action; (d) of any damages or absence of damages suffered by Plaintiffs, the Class, or anyone else; or (e) that any benefits obtained by the Class under the Settlement represent the amount that could or would have been recovered from Defendant in the action if it were not settled at this time.  The fact and terms of this Order and the Settlement, and all negotiations, discussions, drafts, and proceedings associated with this Order and the Settlement, including the judgment and the release of the Released Claims provided for in the Settlement Agreement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of this Order and/or the Settlement.  Notwithstanding the foregoing, nothing in this Judgment shall be interpreted to prohibit the use of this Judgment in a proceeding to consummate or enforce the Settlement Agreement or Judgment, or to defend against the assertion of Released Claims in any other proceeding. All other relief not expressly granted to Class Members is denied.

13.    No Class Member or any other person will have any claim against AARP or its Related Parties, Plaintiffs, Class Counsel, AARP's Counsel, or the Claims Administrator arising from or relating to the Settlement or any actions, determinations or distributions made substantially in accordance with the Settlement or Orders of the Court.

14.    Without affecting the finality of this Judgment, this Court reserves exclusive jurisdiction over all matters related to administration, consummation, enforcement, and interpretation of the Settlement and this Judgment, including (a) distribution or disposition of the Settlement Fund; (b) further

proceedings, if necessary, on the application for attorneys' fees, reimbursement of litigation expenses, and service awards for Plaintiffs; and (c) the Parties for the purpose of construing, enforcing, and administering the Settlement.

15.    If the Settlement does not become effective, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

16.    Without further order of the Court, the Parties may unanimously agree to reasonable extensions of time or other reasonable amendments, modifications, and expansions of the Settlement Agreement necessary to carry out any of the provisions of the Settlement Agreement, provided that such amendments, modifications, and expansions of the Settlement Agreement are not materially inconsistent with this Judgment and do not materially limit the rights of Class Members or the Released Defendant or Released Plaintiffs under the Settlement Agreement.

17.    Judgment shall be, and hereby is, entered dismissing the Action with prejudice and on the merits. There is no just reason for delay in the entry of Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

   **IT IS SO ORDERED.**

DATED: _____    _____

HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

# EXHIBIT 6

| | |
|---|---|
| **To:** | **[Class Member Email Address]** |
| **From:** | *Markels v. AARP* Settlement Administrator |
| **Subject:** | *Markels v. AARP* Settlement |

# If you were an AARP member or a registered user of AARP.org and accessed videos on AARP.org in the U.S. while you also had a Facebook account between September 27, 2020 and [preliminary approval date], you may be eligible for payment from a class action settlement

| **You may be a Settlement Class Member** | | | |
|---|---|---|---|
| **Unique ID:** | «ClaimLoginID» | **PIN:** | <<PIN>> |

Dear <<Name>> *or if no name* Class Member:

A Settlement has been reached with AARP in a class action lawsuit alleging that AARP violated the Video Privacy Protection Act ("VPPA") by disclosing the identities and aarp.org video-viewing activity of certain members and registered users of aarp.org without lawful consent. The lawsuit contends that AARP transmitted this information to Meta Platforms, Inc. ("Meta")—the owner of Facebook—through use of a tool called the Meta Pixel.

AARP denies all of the allegations made in the lawsuit, denies that it violated the VPPA, and denies that AARP did anything improper or unlawful. The proposed Settlement is not an admission of liability or wrongdoing of any kind by AARP. The United States District Court for the Northern District of California approved this notice.

| **Why am I receiving this notice?** |
|---|

You might be a Settlement Class member. AARP's records indicate that you were an AARP member or a registered user of AARP.org between September 27, 2020, and [Preliminary Approval date], and accessed video content on AARP.org. To be eligible for payment, you must demonstrate that you also had a Facebook account when you accessed video content on AARP.org.

**You can submit a claim to be paid from the Settlement using the claim form available here.**

**For more information and to review the full notice, please visit www._____.com.**

| **What does the Settlement provide?** |
|---|

AARP will pay $12.5 million into an agreed-upon fund to settle this case. AARP has also agreed to make certain changes to the use of the Meta Pixel on the AARP.org website.

For a full copy of the Settlement Agreement, including all other Settlement terms, please visit www._____.com.  For more information about how distributions will be made to Settlement Class Members, please visit www._____.com.

| **What are the expected payments?** |
| --- |

After deduction of the costs of notice and settlement administration, any Court-approved award of attorneys' fees (up to 30% of the Settlement Fund), litigation costs, and any service awards for the Class Representatives (up to $10,000 to each of the three individual Class Representatives), the Settlement Fund will be distributed *pro rata* to eligible class members. We will not know the final amount that each class member will receive until all claims are evaluated. Based on claims rates in similar cases, Class Counsel estimate that eligible class members could receive between $47 and $237 each. The actual amount that each class member receives will be determined once all claims are evaluated, and may be higher or lower than these estimates.

| **How can I get a payment?** |
| --- |

If you are a class member and you want to receive a payment, you can make a claim by filling out and submitting the claim form available at www._____.com.

You must provide the link for your Facebook profile page on the claim form, so that the Claims Administrator can verify that you are a Class Member. The link you provide must correspond with a Facebook profile that includes or included your personal information. Instructions for how you can find your Facebook profile page link, or what to do if your Facebook account is deactivated, are available at www._____.com.

The Claim Form will also ask you to attest under oath that you accessed video content on AARP.org while you had an active Facebook account.

If you have questions, you can contact the claims administrator by telephone (8XX-XXX-XXXX) or email _____@_____.com.

| **When is the deadline to submit a claim form?** |
| --- |

To be eligible for payment, claim forms must be submitted no later than [DATE].

| **What are my other options?** |
| --- |

You can do nothing, exclude yourself, or object.  If you do nothing, your rights will be affected and you won't get a payment.

If you don't want to be legally bound by the Settlement, you must exclude yourself from it by [DATE].  Opt-outs submitted by U.S. Mail must be postmarked no later than [DATE]. You may opt out online at www._____.com. Click on the "Opt Out" tab and provide the requested

information. You may also opt out by mailing the Opt-Out form available at _____ to the Claims Administrator at:

Simpluris Inc.
3194-C Airport Loop Drive
Costa Mesa, CA 92626

Opt-out requests must be submitted individually and in writing. Opt-out requests must include your Unique ID (provided at the beginning of this notice), a statement that you meet the requirements for Class membership, first and last name, email address, mailing address, and telephone number.

Unless you exclude yourself, you won't be able to sue or continue to sue AARP for any claim regarding the subject matter of the claims in this case.

If you stay in the Settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your own lawyer to appear and speak at the Final Approval Hearing—at your own cost—but you don't have to.  Upon a showing of good cause to the Court, any objecting Class Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court.  Objections and requests to appear are due by [DATE].

The Final Approval Hearing will be held on [DATE], at [TIME], in Courtroom 1 on the 4th Floor of the Oakland federal courthouse, located at 1301 Clay Street, Oakland, CA 94612.

You may also attend the hearing via Zoom (see the Public Hearings link and instructions at https://cand.uscourts.gov/judges/gonzalez-rogers-yvonne-ygr/).

More information about your options is in the detailed notice available at www._____.com, or you may contact Class Counsel with any questions:

- **Simon S. Grille.** Telephone: (415) 981-4800; email: XXX@girardsharp.com

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**BY ORDER OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

To unsubscribe from this list, please click on the following link: Unsubscribe

# EXHIBIT 7

United States District Court for the Northern District of California
*Markels et al. v. AARP*
Case No. 4:22-CV-05499-YGR



Example QR Code.
Replace this with case
specific QR Code.

# Class Action Notice
### *Authorized by the U.S. District Court for the Northern District of California*

**Were you an AARP member or a registered user of AARP.org who accessed videos on AARP.org in the U.S. while you also had a Facebook account between September 27, 2020, and [Preliminary Approval]?**

▶

**You may be eligible to receive money from a $12.5 million settlement of a lawsuit.**

**Depending on the number of claims, eligible class members could receive between $47 and $237 each.**

▶

**To be eligible for a payment, you must take action by [date].**

**You can visit [website] to learn more.**

**Key things to know:**

- This is an important legal document.
- If you take no action, any ruling from the court will apply to you, and you will not be able to sue AARP about the same issues.
- If you have questions or need assistance, please call [phone number]
- You can learn more at [website] or by scanning the QR code.

# Court-Approved Legal Notice



This is an important notice about a class action lawsuit.

<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>