Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Reid Gaa (SBN 330141)
Anthony Rogari (SBN 353784)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
rgaa@girardsharp.com
arogari@girardsharp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| JAN MARKELS, WILLIAM MARTIN, and LYNN SEDA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>AARP,<br><br>                    Defendant. | Case No. 4:22-cv-05499-YGR<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     Hon. Yvonne Gonzalez Rogers<br>Date:      February 10, 2026<br>Time:      2:00 p.m.<br>Courtroom: 1, 4th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ......................................................................................... VII

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     INTRODUCTION ............................................................................................................ 1

II.    STATEMENT OF THE ISSUE TO BE DECIDED ........................................................ 2

III.   BACKGROUND AND PROCEDURAL HISTORY ...................................................... 2

       A.     Plaintiffs' Investigation and Allegations. ......................................................... 2

       B.     AARP's Challenges to Plaintiffs' Complaints. ................................................. 2

       C.     Fact and Expert Discovery. ................................................................................ 3

       D.     Plaintiffs' Motion for Class Certification ......................................................... 4

       E.     The Settlement Negotiations. ............................................................................. 4

       F.     Settlement Terms and Preliminary Approval. .................................................... 4

IV.    NOTICE AND SETTLEMENT ADMINISTRATION .................................................. 5

       A.     The Class Notice. ............................................................................................... 5

              1.     Direct Notice by Email and Postcard. ................................................... 5

              2.     Media Notice. ........................................................................................ 7

              3.     The Settlement Website and Toll-Free Number. ................................... 7

       B.     Claims, Objections, and Requests for Exclusion. .............................................. 7

       C.     Notice and Administration Expenses. ................................................................ 8

V.     ARGUMENT ................................................................................................................... 8

       A.     The Proposed Class Should Be Certified. .......................................................... 8

              1.     Class Members Are Too Numerous to Be Joined. ................................ 9

              2.     There Are Common Questions of Law and Fact. .................................. 9

              3.     Plaintiffs' Claims Are Typical of the Class. ......................................... 10

              4.     Plaintiffs and Class Counsel Will Fairly and Adequately Protect the
                     Interests of Class Members. .................................................................. 10

B.   Rule 23(b)(3) is Satisfied For Settlement Purposes.........................................................11

1.   Common Questions of Fact and Law Predominate. ................................12

2.   A Class Action is a Superior Means of Resolving This Case.............................13

C.   The Settlement is Fair, Reasonable and Adequate. .........................................................13

1.   Class Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class...........................................................................................................14

2.   The Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel. .................................................................................14

3.   The Relief Under the Proposed Settlement is Adequate....................................15

i.    The Strengths of Plaintiffs' Case, Balanced Against the Risks of Continuing Litigation, Weigh in Favor of Approval. ...........................15

ii.   Method of Distribution of Settlement Funds. .........................................20

iii.  Attorneys' Fees and Expenses ................................................21

iv.   Other Agreements. ..................................................................21

4.   The Settlement Treats All Class Members Equitably..........................................21

5.   The Settlement Satisfies the Remaining Ninth Circuit Approval Factors. .........22

i.    The Settlement Has Been Well Received ..............................................22

ii.   Class Counsel Endorses the Settlement ..............................................23

iii.  The Presence of a Government Participant............................................23

D.   The Class Notice Satisfied Due Process and Rule 23........................................................23

VI.  CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hawaii State Dep't of Educ.*
30 F.4th 828 (9th Cir. 2022) ................................................................................................. 9

*Aarons v. BMW of N. Am., LLC*
2014 WL 4090564 (C.D. Cal. 2014) ...................................................................................... 17

*Aguilar Auto Repair, Inc. v. Wells Fargo Bank, N.A.*
2025 WL 1753509 (N.D. Cal. May 23, 2025) ........................................................................ 24

*Aikens v. Malcolm Cisneros*
2019 WL 3491928 (C.D. Cal. July 31, 2019) ......................................................................... 18

*Alcazar v. Fashion Nova, Inc.*
2022 WL 19975445 (N.D. Cal. Sept. 6, 2022) ................................................................ 12, 13

*Allen v. Bedolla*
787 F.3d 1218 (9th Cir. 2015) ............................................................................................... 13

*Black v. T-Mobile USA, Inc.*
2019 WL 3323087 (N.D. Cal. July 24, 2019) .......................................................................... 9

*Briseno v. Henderson*
998 F.3d 1014 (9th Cir. 2021) ............................................................................................... 20

*Brown v. Google, LLC*
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ....................................................................... 9

*Carlotti v. ASUS Computer Int'l*
2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ....................................................................... 24

*Chinitz v. Intero Real Est. Servs.*
2020 WL 7391299 (N.D. Cal. July 22, 2020) .......................................................................... 9

*Churchill Village, L.L.C. v. Gen. Elec.*
361 F.3d 566 (9th Cir. 2004) ........................................................................................... 14, 22

*Cottle v. Plaid Inc.*
340 F.R.D. 356 (N.D. Cal. 2021) ........................................................................................... 24

*Coulter-Owens v. Time, Inc.*
308 F.R.D. 524 (E.D. Mich. 2015) ........................................................................................ 10

*Cruz v. Sky Chefs, Inc.*
2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ....................................................................... 23

*Ehret v. Uber Techs., Inc.*
148 F. Supp. 3d 884 (N.D. Cal. 2015) ................................................................................... 12

*Feldman v. Star Trib. Media Co. LLC*
2024 WL 3026556 (D. Minn. June 17, 2024) ........................................................................ 19

*Foster v. Adams & Assocs., Inc.*
2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) ....................................................................... 19

*Fraley v. Facebook, Inc.*
  966 F. Supp. 2d 939 (N.D. Cal. 2013)
  *aff'd sub nom*; *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) .................................. 19

*Free Range Content, Inc. v. Google, LLC*
  2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ....................................................................... 24

*G. F. v. Contra Costa Cty.*
  2015 WL 4606078 (N.D. Cal. July 30, 2015) ........................................................................ 14

*Gold v. Lumber Liquidators, Inc.*
  323 F.R.D. 280 (N.D. Cal. 2017) ............................................................................................ 12

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 15

*Hefler v. Wells Fargo & Co.*
  2018 WL 6619983 (N.D. Cal. Dec. 17, 2018)
  *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ......................... 14, 15, 22

*Hendricks v. StarKist Co.*
  2015 WL 4498083 (N.D. Cal. 2015) ....................................................................................... 20

*Hodges v. Akeena Solar, Inc.*
  274 F.R.D. 259 (N.D. Cal. 2011) ............................................................................................ 10

*Hughes v. Nat'l Football League*
  2025 WL 1720295 (2d Cir. June 20, 2025) ........................................................................... 17

*In re Bluetooth Headset Prods. Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011) .................................................................................................. 20

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*
  2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ......................................................................... 13

*In re Coll. Athlete NIL Litig.*
  2025 WL 1675820 (N.D. Cal. June 6, 2025) ......................................................................... 20

*In re Extreme Networks, Inc. Sec. Litig*
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................................................ 15

*In re Facebook Biometric Info. Priv. Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) ............................................................................................ 13

*In re Google Referrer Header Priv. Litig.*
  2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ....................................................................... 18

*In re Hulu Priv. Litig.*
  2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................................................................... 17

*In re Hyundai & Kia Fuel Econ. Litig.*
  926 F.3d 539 (9th Cir. 2019) ...................................................................................... 11, 12, 21, 23

*In re Nexus 6P Prod. Liab. Litig.*
  2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ...................................................................... 24

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 4:22-cv-05499-YGR

*In re Pac. Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995) ................................................................................................ 23

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................ 21

*In re Toys R Us-Delaware, Inc.*
    300 F.R.D. 347 (C.D. Cal. 2013) ....................................................................................... 12

*In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................................................................... 23

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
    2016 WL 3648478 (N.D. Cal. 2016) ................................................................................. 16

*Jancik v. WebMD LLC*
    2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ...................................................................... 10

*Just Film v. Buono*
    847 F.3d 1108 (9th Cir. 2017) ........................................................................................... 10

*Kacsuta v. Lenovo (United States) Inc.*
    2014 WL 12585783 (C.D. Cal. Sept. 15, 2014) ................................................................ 12

*Kim v. Allison*
    8 F.4th 1170 (9th Cir. 2021) .............................................................................................. 20

*Lilly v. Jamba Juice Co.*
    2015 WL 2062858 (N.D. Cal. May 4, 2015) ..................................................................... 17

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998) ........................................................................................... 20

*Maree v. Castanares*
    2025 WL 2268254 (9th Cir. August 8, 2025) .................................................................... 20

*Martinez v. D2C, LLC*
    2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ...................................................................... 16

*Mendoza v. Hyundai Motor Co.*, Ltd
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ...................................................................... 16

*Mollett v. Netflix, Inc.*
    795 F.3d 1062 (9th Cir. 2015) ........................................................................................... 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*
    339 U.S. 306 (1950)........................................................................................................... 23

*Mullins v. Premier Nutrition Corp.*
    2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ................................................................... 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 23

*Opperman v. Path, Inc.*
    2016 WL 3844326 (N.D. Cal. July 15, 2016)...................................................................... 9

*Rogers v. BNSF Ry. Co.*
  680 F. Supp. 3d 1027 (N.D. Ill. 2023) ............................................................. 17

*Schaffer v. Litton Loan Servicing, LP*
  2012 WL 10274679 (C.D. Cal. 2012) ............................................................. 17

*Solomon v. Flipps Media, Inc.*
  136 F.4th 41 (2d Cir. May 1, 2025) ................................................................ 16

*St. Louis, I.M. & S. Ry. Co. v. Williams*
  251 U.S. 63 (1919) ........................................................................................... 17

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ........................................................................... 11

*Torres v. Mercer Canyons Inc.*
  835 F.3d 1125 (9th Cir. 2016) ......................................................................... 10

*Valentino v. Carter-Wallace, Inc.*
  97 F.3d 1227 (9th Cir. 1996) ........................................................................... 13

*Wakefield v. ViSalus, Inc.*
  51 F.4th 1109 (9th Cir. 2022) .......................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ........................................................................................... 9

*Wolin v. Jaguar Land Rover N. Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ......................................................................... 13

*Zepeda v. PayPal, Inc.*
  2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ................................................ 22

**Statutes**

Cal. Bus. And Prof. Code § 17200 ............................................................................ 2

**Other Authorities**

Newberg on Class Actions § 3:31 (5th ed.) ............................................................ 10

Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1 ............. 2

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. passim

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 4:22-cv-05499-YGR

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 10, 2026, at 2:00 p.m., before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Plaintiffs Jan Markels, William Martin, and Lynn Seda, will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for entry of the proposed Final Approval Order and Judgment granting final approval of the proposed settlement of this action.

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the Declaration of Simon S. Grille ("Grille Decl."), the Declaration of Settlement Administrator Simpluris, Inc. ("Simpluris Decl."), the Declaration of John Chandler ("Chandler Decl."), the record in this action, the argument of counsel, and any other matters the Court may consider.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 4:22-cv-05499-YGR

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs respectfully request the Court grant final approval of their non-reversionary $12.5 million cash settlement with AARP. Consistent with the Court's September 12, 2025 preliminary approval order, the Settlement Administrator sent more than 2.7 million e-mail notices and more than 230,000 postcard notices to Class Members and implemented a robust digital media notice campaign. The Administrator calculates that the combined notice program reached over 99.8% of Class Members. More than 42,000 Class members have submitted claims, with over a month left in the claim period. There are no objections and 93 opt outs, a tiny fraction of the Class.[1] By submitting a simple claim that can be completed in minutes, Class Members will receive payments likely exceeding $100. AARP will also conform its use of the Pixel to the requirements of the VPPA.

This Settlement followed sharply contested litigation that included several pleading challenges, extensive party and non-party discovery, and intensive expert work on complex computer science and online advertising issues. The Settlement was reached at a significant inflection point, following a mediation with the Honorable Jeremy D. Fogel (Ret.) and in the midst of briefing on Plaintiffs' motion for class certification. The well-developed record gave the parties a sound understanding of the strengths and weaknesses of their litigation positions.

Absent settlement, Plaintiffs would not only need to overcome AARP's vigorous class certification and merits defenses, but also withstand potential adverse developments in unrelated VPPA cases that could reduce or eliminate the prospects for a favorable resolution in this case. The Settlement avoids these uncertainties and delays while delivering a favorable result that puts real money in Class Members' pockets, conforms AARP's data collection practices to the VPPA, and satisfies the Northern District's Procedural Guidance for Class Action Settlements. For all these reasons, Plaintiffs respectfully ask that the Court enter the proposed Final Approval Order and Judgment.

---

[1] The deadline to submit claims, object, or opt out is December 31, 2025. Preliminary Approval Order, ECF No. 119. Plaintiffs will respond to any objections and will update the Court on the status of the notice program, objections, and the final number of claims and opt-outs in their reply brief and supplemental statement. *Id.*

## II. STATEMENT OF THE ISSUE TO BE DECIDED

Should the Court grant final approval of the Parties' Settlement under Fed. R. Civ. P. 23(e)?

## III. BACKGROUND AND PROCEDURAL HISTORY

### A. Plaintiffs' Investigation and Allegations.

Plaintiffs filed a Class Action Complaint on September 27, 2022, alleging that AARP disclosed to Meta the specific video materials its subscribers requested or obtained from its website without first obtaining their consent in the form required under the VPPA. ECF No. 1. Plaintiffs also asserted claims against AARP for unjust enrichment and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. And Prof. Code § 17200, *et seq.*, and Rhode Island's Deceptive Trade Practices Act ("DTPA"), R.I. Gen. Laws § 6-13.1-1, *et seq. Id.* After filing, Class Counsel continued to develop their claims, interviewing AARP users who accessed prerecorded video content on AARP's website while logged into their Facebook account. Grille Decl. ¶¶ 4-5. Class Counsel also worked with experts in computer science to develop their technical understanding of AARP's conduct and the operation of Meta Pixel. *Id.* ¶ 5.

### B. AARP's Challenges to Plaintiffs' Complaints.

AARP moved to dismiss the Complaint on December 6, 2022, challenging the sufficiency of Plaintiffs' allegations in support of their VPPA, UCL, DTPA, and unjust enrichment claims, and arguing that the applicable statute of limitations barred Plaintiffs' claims. ECF No. 22. On August 29, 2023, the Court granted in part and denied in part the motion to dismiss with leave to amend. ECF No. 36. The Court dismissed Plaintiffs' VPPA claims, finding that while Plaintiffs had adequately alleged that AARP "knowingly disclosed" their "personally identifiable information" and that AARP's conduct did not fall within the "ordinary course of business" exemption, Plaintiffs had failed to sufficiently allege that they were VPPA "consumers" or that AARP was a video tape service provider. *Id.* The Court dismissed Plaintiffs' UCL and DTPA claims to the extent they relied on the VPPA claim, and because Plaintiffs failed to establish that they suffered any economic harm from AARP's conduct. *Id.* The Court also dismissed Plaintiffs' unjust enrichment claim, reasoning that Plaintiffs had not alleged the elements of the claim because AARP's privacy policy "informs users that their information may be shared with social media networks for advertising purposes." *Id.*

Plaintiffs filed a First Amended Complaint ("FAC") on September 19, 2023, in response to the Court's August 29 motion to dismiss order, also adding Plaintiff William Martin. ECF No. 38. Plaintiffs elected not to re-plead their unjust enrichment and DPTA claims. *See id.* AARP moved to dismiss the FAC on October 17, 2023. ECF No. 40. Plaintiffs opposed on November 16, 2023, and AARP replied on December 7, 2023. ECF Nos. 41, 42. On December 18, 2023, the Court issued an Order denying AARP's second motion to dismiss, finding that Plaintiffs sufficiently alleged their VPPA and UCL claims. ECF No. 43.

On June 14, 2024, Plaintiffs moved to voluntarily dismiss former Plaintiff Ziman's individual claims over AARP's objection. ECF Nos. 67, 71, 72. On July 31, 2024, the Court granted Plaintiffs' Motion and dismissed Mr. Ziman. ECF No. 76.

Plaintiffs filed a Second Amended Complaint ("SAC") on July 19, 2024, adding Plaintiff Lynn Seda to the litigation but otherwise leaving the allegations and claims asserted against AARP unchanged. ECF No. 75.

### C.    Fact and Expert Discovery.

Settlement negotiations followed factual development through formal and informal discovery. Plaintiffs served AARP with thirty-eight document requests, sixteen interrogatories, and thirty-two requests for admission. Grille Decl. ¶ 16. The Parties conducted thorough, iterative exchanges regarding the search terms AARP used to identify responsive documents, and AARP produced approximately 14,400 documents. *Id.* Plaintiffs' Counsel reviewed and analyzed AARP's document production, which provided critical information about AARP's operations and use of the Meta Pixel and served as the foundation for Plaintiffs' strategy for depositions, class certification, expert analysis, and settlement. *See id.*

Plaintiffs' Counsel deposed six current and former AARP employees, including three Rule 30(b)(6) witnesses. *Id.* Plaintiffs invoked the Court's joint discovery letter procedure to address a dispute about the relevant time period and two definitions in Plaintiffs' Rule 30(b)(6) deposition notice. *Id.* ¶ 17; ECF Nos. 85, 88. The Court ordered AARP to provide Rule 30(b)(6) testimony for the full time noticed by Plaintiffs and approved Plaintiffs' definitions for the disputed terms. Grille Decl. ¶ 17; ECF No. 91. Plaintiffs' Counsel also defended the depositions of Plaintiffs Jan Markels, William

Martin, and Lynn Seda, as well as the deposition of Plaintiffs' expert Zubair Shafiq. Grille Decl. ¶ 16.
Each Plaintiff responded to document requests and interrogatories. *Id*.

Plaintiffs also pursued and obtained critical documents and testimony from third party Meta.
Grille Decl. ¶¶ 18-19. After extensive negotiations, Plaintiffs ultimately negotiated four productions,
which consisted of voluminous data sets corresponding to Meta Pixel transmissions associated with the
named Plaintiffs and Class members in this action. *Id*. ¶ 18. Plaintiffs then deposed Meta's corporate
designee, eliciting critical testimony about the Pixel and its functionality, including the Pixel's
capabilities, the transmission of data via the Meta Pixel, and Meta's storage and retention of Pixel data.
*Id*. ¶ 19. The documents and testimony obtained through the Meta subpoena were critical to Plaintiffs'
class certification arguments and bolstered Plaintiffs' mediation and settlement positions.

### D.    Plaintiffs' Motion for Class Certification

On January 14, 2025, Plaintiffs moved for class certification. ECF No. 92. Plaintiffs' class
certification motion was supported by the expert report of Dr. Zubair Shafiq. Grille Decl. ¶ 13; ECF
No. 93-9. On April 15, 2025, AARP opposed Plaintiffs' class certification motion and filed a motion to
strike Dr. Shafiq's expert opinions. ECF Nos. 100, 101. Plaintiffs were preparing to oppose AARP's
motion to strike and file their reply in support of class certification when the parties reached an
agreement in principle to resolve this matter. Grille Decl. ¶ 13.

### E.    The Settlement Negotiations.

The Parties held a first mediation before the Honorable Edward A. Infante (Ret.) on June 26,
2024. *Id*. ¶ 20. There was little progress. Concurrently with briefing on Plaintiffs' class certification
motion (*see* ECF No. 92), the Parties agreed to renewed mediation with retired Northern District Judge
Jeremy D. Fogel. The parties reached agreement in principle on May 9, 2025. Grille Decl. ¶ 21. The
Parties then negotiated the settlement agreement in the following weeks, executing it on July 25, 2025.
*Id*.; ECF No. 112-1.

### F.    Settlement Terms and Preliminary Approval.

The Class consists of all persons in the United States who, between September 27, 2020, and
the date of Preliminary Approval, requested or obtained video content on AARP.org while in the
United States and at a time the person had a Facebook account and was either an AARP member or a

registered user of AARP.org. Grille Decl. ¶ 24; ECF No. 112-1 § 1.10. AARP will make a $12.5 million, non-reversionary cash payment, for the benefit of Class Members. ECF No. 112-1 §§ 1.40, 2.1. Notice costs, administration expenses, attorneys' fees and costs, and service awards awarded by the Court will be deducted from the $12.5 million fund and the balance (the "Net Settlement Fund") will be applied to pay claims. *Id.* § 1.23. AARP will also agree to new limits on its use of the Meta Pixel. Specifically, AARP will cease or limit the operation of the Meta Pixel on any pages on the AARP.org website that include video content, where the information transmitted via the Meta Pixel identifies a person as having requested or obtained specific video materials on that page, unless: (a) the VPPA is amended or repealed in relevant part, judicially invalidated in relevant part, or judicially construed not to be violated by use of the Meta Pixel or other website tracking technology in similar circumstances; or (b) AARP obtains consent in the form required by the VPPA, 18 U.S.C. § 2710(b)(2)(B); or (c) the disclosure of information to Meta via the Meta Pixel would not violate the prevailing legal standard under U.S. Supreme Court or Ninth Circuit law. ECF No. 112-1 §§ 2.4-2.6.

On July 25, 2025, Class Counsel filed for preliminary approval of the Settlement. ECF No. 112. Class Counsel's declaration, prepared in consultation with the Settlement Administrator, as well as the Settlement Administrator's own declaration, addressed the relevant claims administration topics in the Northern District of California's Procedural Guidance for Class Action Settlements. *See* ECF Nos. 112-2, 112-6. The Parties believe the Settlement complies in all respects with the Guidance.

## IV.    NOTICE AND SETTLEMENT ADMINISTRATION

### A.    The Class Notice.

The Court's preliminary approval order appointed Simpluris, Inc. as Settlement Administrator. ECF No. 119 at 8. As detailed in the Declaration of Simpluris, Inc. ("Simpluris Decl."), the Settlement Administrator has implemented the Notice Plan as ordered by the Court. Simpluris Decl. ¶¶ 5-22; ECF No. 119-1 § 6; ECF No. 119 at 6.

#### 1.    Direct Notice by Email and Postcard.

AARP provided the Settlement Administrator with a list containing the names and email addresses or mailing addresses for each potential Class Member ("Potential Class List"). Simpluris Decl. ¶ 6. After removing duplicates, the Potential Class List contained records for a total of 2,940,169

5

individuals, with at least one valid email address available for 2,740,857 of them. *Id.* The Potential Class List contained valid mailing addresses for 198,827 individuals whose records had invalid or missing email addresses. Just 485 records within the Potential Class List contained neither a valid email address nor a valid mailing address. *Id.*

Between October 6, 2025, and October 17, 2025, Simpluris sent direct email notice to the 2,740,857 potential Class Members for whom a valid email address was available. *Id.* ¶ 10. The Settlement Administrator skip-traced and sent postcard notice to 36,693 potential Class Members who had undeliverable email addresses. *Id.* ¶ 14. Ultimately, email notice was successfully delivered to 2,704,164 potential Class Members. *Id.* ¶ 10. Accordingly, approximately 82.7% of potential Class Members received direct notice via email.

In addition, on October 17, 2025, Simpluris sent direct postcard notice to the 198,827 potential Class Members for whom only a valid mailing address was available. *Id.* ¶ 12. The Settlement Administrator skip-traced undeliverable mailing addresses and re-sent postcard notice to 1,224 mailing addresses. *Id.* ¶ 13. The Settlement Administrator also sent postcard notice to 36,693 potential Class Members who had an undeliverable *email* address, and re-sent postcard notice to 1,020 mailing addresses after skip-tracing undeliverables. *Id.* ¶ 14. Ultimately, the Settlement Administrator estimates that postcard notice was successfully delivered to 230,301 potential Class Members. *Id.* ¶ 15. Accordingly, approximately 7.0% of potential Class Members received direct notice via mail. Altogether, approximately 89.7% of potential Class Members received direct notice via email or mail.

Not all persons receiving notice are Class Members, however. Only those who simultaneously maintained a Facebook account such that the Meta Pixel would communicate their video viewing choices and personal information to Meta are Class Members. Grille Decl. ¶ 48. Based on publicly available data from the Pew Research Center regarding Facebook usage among adults in the United States during the Class Period, Plaintiffs estimate that about 68.7% of the approximately 3.271 million potential Class Members, or approximately 2.25 million people, are Class Members. *Id.* On November 17, 2025, Simpluris sent the first reminder email to Class Members who had not submitted a claim form or a request for exclusion. Simpluris Decl. ¶ 11. The Settlement Administrator will send additional reminders. *Id.*; *see also* Grille Decl. ¶ 51.

### 2.    Media Notice

Between October 17, 2025, and November 15, 2025, Simpluris executed a digital notice program consisting of social media ads on Facebook and Instagram, banner ads, and ads on Google properties such as YouTube, Gmail, and Google Search. Simpluris Decl. ¶¶ 16-21. The Facebook and Instagram ads were designed to reach users who share interests and characteristics similar to known Class Members. *Id.* ¶ 18. The Google and banner ads were similarly designed to reach users who share interests and characteristics similar to known Class Members, as well as a custom audience of known Class Members. *Id.* ¶ 19. Google Search ads were presented to users who had conducted a search using keywords related to the case or settlement. *Id.* ¶ 20. The media notice program resulted in 4,016,900 impressions and 59,181 unique clicks. *Id.* ¶ 21.

### 3.    The Settlement Website and Toll-Free Number.

The Settlement Administrator maintains a dedicated Settlement Website ("Website")— www.AARPSettlement.com—as well as a dedicated toll-free number and monitored email inbox. Simpluris Decl. ¶¶ 7-9. These resources provide real-time information about the Settlement and claims process to potential Class Members and allow them to access the online claim form, FAQs, and other case documents. *Id.* The website was made available to the public on October 6, 2025, and has been available without interruption since then. *Id.* ¶ 7.

### B.    Claims, Objections, and Requests for Exclusion.

The deadline to submit a claim, opt out, or object is December 31, 2025. ECF No. 112. As of November 24, Simpluris has received 42,335 total claims. *Id.* ¶ 26.[2] As of November 24, all but 95 of these claims are valid. *Id.* The remainder will require follow-up for Facebook links or other missing information. *Id.* ¶ 27.

The Claim Form was drafted in plain English for comprehension and ease of use by potential Class Members and tailored to the Northern District's Procedural Guidance. Grille Decl. ¶ 44. Class Members are encouraged to submit claims online, which is faster and easier. *Id.* ¶¶ 29, 31, 45. Class Members with questions about the Claim Form or the Settlement can contact Class Counsel or the

---

[2] The Settlement Administrator will submit a further declaration with updated claim, objection, and opt-out numbers no later than 14 days before the fairness hearing.

1   Administrator. *See id.* ¶¶ 45, 52. As of November 24, only 93 Class Members have opted out and no

2   objections have been filed. Simpluris Decl. ¶ 24.

3       To ensure the integrity of the claims-administration process, the Settlement Administrator has

4   employed a series of fraud-prevention measures, including: (a) required two data point module login

5   for Class Members (Unique ID and PIN); (b) an "auto-lock out" feature restricting users from

6   continuously attempting to login using invalid credentials; (c) the capture and review of various

7   metadata elements used to determine if a login is attempted by a legitimate source or if the login was

8   attempted by software programmed to obfuscate identity; and (d) industry standard reCAPTCHA

9   verification. *Id.* ¶ 25. Further, Claims are subject to review and audit. *Id.* ¶¶ 27-28.

10      To ensure valid claimants are not disqualified, those who submit claim forms that do not meet

11  the submission requirements will receive notice and an opportunity to cure deficiencies. Simpluris

12  Decl. ¶ 27; ECF No. 112-1 §§ 3.4–3.5.

13      **C.      Notice and Administration Expenses.**

14      As of November 24, 2025, Simpluris has incurred $575,788.57 in expenses associated with

15  notifying Class Members and administering the Settlement. Simpluris Decl. ¶ 29. Simpluris is on track

16  to complete claims administration on time and anticipates it will further incur approximately

17  $125,421.43 in expenses related to claim intake and processing, the anticipated disbursement activities,

18  and case closure. *Id.* These amounts are within the not-to-exceed amount previously provided to the

19  Court in the Simpluris declaration submitted on July 25, 2025. *See* ECF No. 112-6. All payments to the

20  Settlement Administrator from the Settlement Fund are subject to prior Court approval. *See* ECF No.

21  130-1. The Settlement Administrator will provide updated declarations regarding its fees and expenses

22  14 days prior to the final approval hearing and in connection with the parties' Post-Distribution

23  Accounting. *See* ECF No. 119 at 9.

24  **V.    ARGUMENT**

25      **A.      The Proposed Class Should Be Certified.**

26      The Court previously found that "for purposes of settlement, plaintiffs have satisfied the

27  requirements of Rule 23(a) as well as the requirements for certification under one or more subsections

28  of Rule 23(b)." ECF No. 119 at 4; *see also* Fed. R. Civ. P. 23(e)(1)(B)(i-ii) (by granting preliminary

approval, the court finds that it will likely grant final approval). There have been no objections and no intervening events that warrant the Court's reconsideration of its provisional conclusion. *See, e.g.*, *Black v. T-Mobile USA, Inc.*, No. 17-CV-04151-HSG, 2019 WL 3323087, at *2 (N.D. Cal. July 24, 2019) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . . this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.").

### 1.    Class Members Are Too Numerous to Be Joined.

For a class to be certified, its members must be so numerous that their joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs estimate that the Settlement Class consists of approximately 2.25 million people. Grille Decl. ¶ 48. This estimate is derived from AARP's records, which show that approximately 3.271 million AARP members and registered users accessed video content on AARP.org while in the United States during the Class Period. *Id.* Publicly available data regarding Facebook usage indicate that about 68.7% of the 3.271 million subscribers, or 2.25 million, possessed a Facebook account during the Class Period such that the Meta Pixel would pass their video viewing choices and personal information to Meta. *Id.* Numerosity is thus satisfied.

### 2.    There Are Common Questions of Law and Fact.

"The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims 'depend upon a common contention' that 'is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Commonality is "construed permissively" and it does not require that all questions of fact and law be common to the class. *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *8 (N.D. Cal. July 22, 2020) (citation omitted). Moreover, the common question does not have to be answered in favor of the class. *See Opperman v. Path, Inc.*, 2016 WL 3844326, at *4 (N.D. Cal. July 15, 2016). Commonality is met because the common contentions in this case revolve around AARP's use of the Pixel. *See Brown v. Google, LLC*, 2022 WL 17961497, at *14 (N.D. Cal. Dec. 12, 2022) (common questions include whether the defendant was improperly collecting and using private user information).

9

Here, common questions include: (1) whether AARP is a "video tape service provider"; (2) whether the Pixel on AARP's website was configured to transmit information constituting "personally identifying information" under the VPPA; (3) whether AARP "knowingly" transmitted this information; and (4) whether AARP's transmission of its subscribers' personally identifying information was done without consent in the form required by 18 U.S. Code § 2710(b)(2)(B). *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533 (E.D. Mich. 2015) (finding with respect to the similar Michigan Video Rental Privacy Act that common questions included whether the defendant was a business subject to the law and disclosed identifying information). Because the answers to these questions are at the heart of every VPPA claim, the commonality requirement is met. *See Jancik v. WebMD LLC*, 2025 WL 560705, at *7 (N.D. Ga. Feb. 20, 2025) (finding commonality satisfied in VPPA case and explaining that "at least one common contention exists regarding all class members, including . . . whether the Facebook Pixel disclosed video-viewing behavior to Facebook [and] whether that behavior or any other data constitutes PII").

### 3. Plaintiffs' Claims Are Typical of the Class.

A plaintiff's claims are typical under Rule 23(a)(3) "if they are reasonably coextensive with those of absent class members." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'" *Id.* (citation omitted). Here, Plaintiffs and Class Members have the same types of claims stemming from the same alleged violations concerning AARP's transmission of their personal information to Meta via the Pixel, thus satisfying typicality. *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (typicality met when "[a]ll members of the putative class were allegedly injured by the same course of conduct[.]"); *see also Just Film v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (class representative's "claim is typical of the class because it shares 'some common question of law and fact with class members' claims'") (quoting Newberg on Class Actions § 3:31 (5th ed.)).

### 4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the

**Interests of Class Members.**

The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The test is met here.

Plaintiffs and their counsel have no conflicts with Class Members and have vigorously prosecuted this case through pre-complaint investigation, motion practice, fact discovery, and settlement negotiations. Plaintiffs agreed to serve in a representative capacity, communicated frequently with their attorneys, produced documents, responded to discovery requests, sat for depositions, and contributed to the preparation of the complaints. Plaintiffs' declarations further detail the time and effort they expended on this litigation. *See* Declaration of Jan Markels, Declaration of William Martin, and Declaration of Lynn Seda, submitted herewith.

Class Counsel are experienced consumer advocates and are well qualified to continue serving as Class Counsel. ECF No. 112-1. Class Counsel have decades of experience successfully representing plaintiffs and classes in complex class action litigation, including in consumer privacy cases. *See* Grille Decl. ¶ 56, Ex. 1. Class Counsel have diligently prepared this matter for trial in accordance with the Court's schedule and presented this settlement to the Court in conformity with this District's Procedural Guidance for Class Action Settlements. *Id.* ¶¶ 3-21, 28-65.

Accordingly, the representative parties are adequate.

**B.    Rule 23(b)(3) is Satisfied For Settlement Purposes.**

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members," and that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The trial manageability criteria of Rule 23(b)(3)(A) drop out of the analysis when "certifying a settlement class, where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019). As the Court preliminarily found, common questions predominate over individualized questions for settlement purposes, and a class action is a superior method for resolving this controversy. ECF No. 119 at 5.

1          **1.    Common Questions of Fact and Law Predominate.**

2          The predominance analysis "focuses on the relationship between the common and individual

3   issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication

4   by representation." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (citation

5   omitted). In the settlement context, predominance is ordinarily satisfied when the claims arise out of

6   the defendant's common conduct. *See, e.g.*, *In re Hyundai & Kia*, 926 F.3d at 559 ("We have held that

7   these types of common issues, which turn on a common course of conduct by the defendant, can

8   establish predominance in nationwide class actions."); *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D.

9   280, 288, 290-93 (N.D. Cal. 2017) (holding that predominance was satisfied where claims were based

10  on the same alleged defect); *Kacsuta v. Lenovo (United States) Inc.*, 2014 WL 12585783, at *3 (C.D.

11  Cal. Sept. 15, 2014) (common issues "significantly outweigh any individual questions" where the

12  claims arise out of the "same alleged course of conduct" by the defendant).

13         To establish liability under the VPPA, a plaintiff must show that "(1) a defendant is a 'video

14  tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any

15  customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not

16  authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Each

17  Class Member's personal information was allegedly transmitted to Meta via AARP's Pixel without

18  consent in violation of the VPPA. So, whether AARP violated the VPPA in its implementation of the

19  Meta Pixel can be determined in a single class proceeding. Predominance is thus met. *See Alcazar v.*

20  *Fashion Nova, Inc.*, 2022 WL 19975445, at *2 (N.D. Cal. Sept. 6, 2022) ("Whether Fashion Nova's

21  website complies with those laws or whether it violates them can be answered in one fell swoop.").

22  Predominance is further satisfied because the VPPA's statutory damages obviate the need for complex,

23  individualized damages calculations. *See In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D.

24  Cal. 2013) ("Courts have been more willing to find predominance where, as here, the class seeks only

25  statutory damages.").

26

27

28

### 2.    A Class Action is a Superior Means of Resolving This Case.

A class action is superior under Rule 23(b)(3) when "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). When, as in this case, individual recoveries would be relatively small and individual litigation would needlessly duplicate discovery and expert work, it is "an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010); *see In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) (statutory damages not enough to incentivize individual litigation due to high cost of discovery and Facebook's vigorous defense); *Alcazar*, 2022 WL 19975445, at *4 (availability of $4,000 in statutory damages was not enough to incentivize individual litigation because "that sum pales in comparison with the cost of pursuing litigation") (citation omitted). "Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution." *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016).

Therefore, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the Class in this case.

### C.    The Settlement is Fair, Reasonable and Adequate.

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[3]

As explained more fully below, the proposed Settlement is fair, reasonable, and adequate. Class Counsel are experienced in complex class action litigation; litigated this case on a priority basis — balancing the delays and risks presented by class certification, summary judgment, and trial, and the uncertain future of VPPA case law— and reached an arms-length settlement under the supervision of a retired district court judge acting as mediator. The Settlement provides substantial monetary and non-monetary relief for Class Members, particularly when balanced against the risks and expenses of continuing litigation.

### 1.   Class Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class.

Plaintiffs and Class Counsel have vigorously prosecuted this case through pleadings, motions, discovery, and mediation. Class Counsel thus "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983, at *6. Against this backdrop, in its Preliminary Approval Order the Court found that Plaintiffs and Class Counsel adequately represented the interests of the Settlement Class. ECF No. 119 at 4. The ongoing notice program and Class Counsel's other work to advance the proposed settlement further confirm the Court's previous finding and support a finding that this element is satisfied.

### 2.   The Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.

The Settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of two well-respected, experienced mediators. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he

---

[3] Before Rule 23 was amended in December 2018, federal courts of appeal developed their own multi-factor tests to evaluate class settlements. *See, e.g., Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). In the notes accompanying the Rule 23 amendments, the Advisory Committee recognized the continuing application of these factors, explaining that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, courts apply the framework of amended Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 WL 6619983, at *6 (noting that the settlement "was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls" supervised by a mediator); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that "involvement of a neutral" in negotiations "may bear on whether they were conducted in a manner that would protect and further the class interests.").

The Settlement was also reached only after thorough analysis and two formal mediation sessions, each supervised by a retired judge. *See* Grille Decl. ¶¶ 3-6, 20-21. Before agreeing on the terms of the Settlement, the parties engaged in several years of hard-fought litigation that included multiple rounds of motion practice, technical investigation of the Meta Pixel on AARP's website, and thorough expert and fact discovery — including production and review of documents, comprehensive written discovery, and depositions of the parties, Plaintiffs' expert, and a critical nonparty. Grille Decl. ¶¶ 7-19. The record was thus sufficiently developed to fully inform the parties and enable them to evaluate the strengths and weaknesses of their respective positions and the risks if the case did not settle.

Further, Class Counsel has acted in the best interests of the Class, and there is no evidence to the contrary—for example, by compromising the claims of the Settlement Class in exchange for higher fees—and there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Class. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("There is no evidence that the parties colluded here. Counsel's fee request is proportionate to the settlement fund, there is no clear sailing provision, and no funds revert").

### 3. The Relief Under the Proposed Settlement is Adequate.

#### i. The Strengths of Plaintiffs' Case, Balanced Against the Risks of Continuing Litigation, Weigh in Favor of Approval.

Under Rule 23(e)(2)(C)(i), courts in the "Ninth Circuit evaluate 'the strength of the plaintiff's case; complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *In re Extreme Networks*, 2019 WL 3290770, at *8 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Northern District has recognized that

1  "[a]pproval of a class settlement is appropriate when 'there are significant barriers plaintiffs must

2  overcome in making their case.'" *Mendoza v. Hyundai Motor Co., Ltd*, 2017 WL 342059, at *6 (N.D.

3  Cal. Jan. 23, 2017) (citation omitted). Further, "a proposed settlement may be acceptable even though

4  it amounts to only a fraction of the potential recovery that might be available to the class members at

5  trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. 2016)

6  (cleaned up).

7      While Plaintiffs are confident in the strength of their case, AARP has vigorously denied

8  liability from the outset. During the course of the litigation, AARP mounted a sophisticated attack on

9  Plaintiffs' VPPA claims and strenuously opposed the class certification motion. *See* ECF Nos. 22, 100.

10  Although Plaintiffs were confident they could certify a class, the inherent uncertainty accompanying

11  Plaintiffs' motion presented a material risk to the prospects for obtaining and enforcing a judgment.

12  *See Martinez v. D2C, LLC*, 2024 WL 4367406, at *9 (S.D. Fla. Oct. 1, 2024) (finding plaintiffs failed

13  to satisfy numerosity where they presented conflicting explanations of the Meta Pixel's functionality

14  and did not have sufficient evidence to support proffered inferences).

15      Even if Plaintiffs succeeded in certifying a class, AARP's merits defenses, adverse

16  developments in VPPA case law, and the difficulties associated with explaining technical concepts to a

17  jury raised significant barriers to Plaintiffs' ability to succeed on the merits at summary judgment and

18  at trial, and if successful, to preserve any verdict on appeal. For instance, at summary judgment and

19  trial, AARP would have continued to dispute that it is a "video tape service provider" and that it

20  "knowingly" disclosed its users' personal information to Meta. *See* ECF No. 100 at 13 n.9 (arguing

21  that "Plaintiffs would face merits obstacles to making the necessary showings that also need to

22  establish that AARP is a 'video tape service provider'"). Rebutting AARP's arguments would require

23  Plaintiffs to explain complex computer science and website coding concepts to a lay jury. Plaintiffs

24  also risked adverse developments in unrelated VPPA cases that could have reduced or eliminated the

25  prospects for a favorable resolution in this case. In particular, recent appellate decisions have narrowly

26  construed the definition of "personally identifiable information" in a manner that could prevent a

27  plaintiff from prevailing on VPPA claims based on allegations identical to this case. *See Solomon v.*

28  *Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. May 1, 2025) (narrowly interpreting the VPPA's

16

definition of "personally identifiable information"); *Hughes v. Nat'l Football League*, 2025 WL 1720295, at *2-3 (2d Cir. June 20, 2025) ("*Solomon* effectively shut the door for Pixel-based VPPA claims."). AARP could have asserted similar arguments at summary judgment or on appeal to undermine the evidence Plaintiffs developed to date demonstrating that data transmitted via the Meta Pixel is "personally identifiable information."

Plaintiffs thus recognized that they faced significant risks at class certification, summary judgment, trial, and likely post-trial appeal. *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. 2014) ("In the absence of a settlement, it is very likely that this case could ultimately be decided at trial by a 'battle of the experts' over the existence of a [defect] . . . taking those issues to trial might be more challenging for Plaintiffs than for BMW, given complex technical nature of the . . . system."); *Lilly v. Jamba Juice Co.*, 2015 WL 2062858, at *3 (N.D. Cal. May 4, 2015) ("[F]act-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery.").

If Plaintiffs prevailed at trial and in a post-trial appeal, AARP would in theory have been exposed to a judgment in excess of $5 billion. *See* Pltfs. Prelim. App. Mot. at 15-16, 19 (ECF No. 112). Setting aside AARP's ability to pay, AARP could be expected to argue that damages under the VPPA are discretionary. *See* 18 U.S.C. § 2710(c)(2)(A) (A "court *may* award actual damages but not less than liquidated damages in an amount of $2,500) (emphasis added); *Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1041 (N.D. Ill. 2023) (finding that the Illinois Biometric Information Privacy Act's use of "may" meant that damages were discretionary). AARP would also argue that a $5+ billion judgment violates its due process rights because aggregated statutory damages, even if constitutional on a per-violation basis, may be limited when they become "wholly disproportion[ate]" and "obviously unreasonable" in relation to the statute's goals and prohibited conduct. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)); *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *23 (N.D. Cal. June 17, 2014) (explaining that the aggregation of VPPA statutory damages in a class action may raise due process concerns). And of course Plaintiffs could lose at trial, thus depriving Class Members of any recovery. *See Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012). ("Estimates of what

constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years).").

By comparison, the settlement before the Court provides certain and immediate relief to Class Members while avoiding the inherent risks of litigating class certification, any related appellate proceedings, summary judgment, trial, and appeal. *See, Aikens v. Malcolm Cisneros*, 2019 WL 3491928, at *7 (C.D. Cal. July 31, 2019) ("Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the last opportunity for Class Members to obtain relief."). The Settlement will provide the more than 42,000 Claimants (and counting) with cash payments. These payments, in the range of $185 at present, are by any measure substantial, and will continue to be so even if claims are filed apace between now and the expiration of the claims period. *See* Simpluris Decl. ¶ 26.[4] The claims rate so far is consistent with other VPPA-Pixel cases and Plaintiffs anticipate it will ultimately fall within the range of their initial estimate. *See* Prelim. App. Mot. at 7-8 (ECF No. 112) (estimating a claims rate between 1% and 5% of the noticed population); *Fiorentino v. FloSports, Inc.*, No.1:22-cv-11502 (D. Mass. Feb. 16, 2024), ECF No. 72 (3.3% claims rate); *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195 (D. Mass. Sept. 6, 2023), ECF Nos. 63, 67 (estimated 2.6% claims rate); *Beltran, Jr. v. Sony Pictures Ent. Inc.* (*CrunchyRoll*)*,* No. 1:22-cv-04858 (N.D. Ill. Dec. 7, 2023), ECF No. 53 (1.75% claims rate).

Further, the projected amount per Claimant is well in excess of the recoveries typical in VPPA cases. *See Vela v. AMC Networks, Inc*., No. 1:23-cv-02524 (S.D.N.Y. May 2, 2024), ECF No. 59 (approximately $9 per claimant); *Beltran, Jr. v. Sony Pictures Ent. Inc.* (*CrunchyRoll*), No. 1:22-cv-04858 (N.D. Ill. Dec. 7, 2023), ECF No. 52 (approximately $31); *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502 (D. Mass. Feb. 16, 2024), ECF No. 72 (approximately $85). The recovery here is also substantial when compared to that in other consumer class actions. *See, e.g., In re Google Referrer Header Priv. Litig.*, 2023 WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) ($7.70 payment per settlement class member); *In re Google Plus Profile Litig.*, No. 5:18-cv-06164(N.D. Cal. Oct. 15, 2020), ECF No.

---

[4] Although some claims may be denied after an audit (*see* ECF No. 112-1 § 3.4), the Claim Form was designed to ensure Class Members can easily submit a claim without the need to submit extensive supporting documentation. Plaintiffs therefore anticipate that nearly all Claimants will recover.

96 at 5-6 ($12 or $5 payment per class member); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943 (N.D. Cal. 2013), *aff'd sub nom*; *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) ($15 payment per class member); *Poertner v. The Gillette Co.*, No. 6:12-v-00803(M.D. Fla. Aug. 21, 2014), ECF No. 168 ($6-$12 payment per class member).

The total settlement amount also falls within the upper range of settlements in other comparable VPPA cases. *See, e.g.*, *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502 (D. Mass. Mar. 5, 2024), ECF No. 76 (approving $2.625 million settlement); *Feldman v. Star Trib. Media Co. LLC*, 2024 WL 3026556, at *6 (D. Minn. June 17, 2024) (approving $2.9 million settlement); *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195 (D. Mass. Sep. 8, 2023), ECF No. 70 (approving $4 million settlement); *Stark v. Patreon, Inc.*, No. 3:22-cv-03131 (N.D. Cal. June 5, 2025), ECF No. 227 (approving $7.25 million settlement); *Ade v. Viki, Inc.*, No. 3:23-cv-02161 (N.D. Cal. Oct. 27, 2025), ECF No. 124 (approving $8 million settlement); *CrunchyRoll*, No. 1:22-cv-04858 (N.D. Ill. Jan. 17, 2024), ECF No. 57 (approving $16 million settlement for class of over 19 million class members); *Gregory v. Tubi Inc.*, No. 2024-LA-0000209 (Ill. Cir. Ct., Winnebago Cnty. Jan. 24, 2025) (approving $19.99 million settlement for class of approximately 76 million class members); *see also Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *7 (N.D. Cal. Oct. 21, 2021) (settlement amount "consistent" with those in other similar cases favored approving the settlement). Plaintiffs believe that as of this filing, only *Gregory* and *CrunchyRoll* settled for more money in absolute terms, but the per-class member recovery here ($5.56 per class member) is nearly 7 times higher than *CrunchyRoll* ($0.82 per class member) and 21 times higher than *Tubi* ($0.28 per class member).

In addition, Class Members will benefit from AARP's agreement to cease or limit the operation of the Meta Pixel on any web page on the AARP.org website that contains video content, unless such usage complies with the VPPA. ECF No. 112-1 §§ 2.4-2.6. The non-monetary relief precludes AARP from deploying the Meta Pixel to capture Class Members' lucrative video-viewing data without their express consent. Plaintiffs submit with this motion the declaration of digital advertising expert John Chandler, who attests that the subscriber viewing choice information that would otherwise be transmitted by the Pixel to Meta would have a value to advertisers of $12.15 million over a three-year period. Chandler Decl. ¶¶ 13-14. Even setting aside the non-monetary relief, the fairness analysis is

19

simplified by the non-reversionary nature of the $12.5 million settlement fund and the absence of any sign of collusion. *See Kim v. Allison*, 8 F.4th 1170,1179-80 (9th Cir. 2021); *Maree v. Castanares*, 2025 WL 2268254, at *3-4 (9th Cir. August 8, 2025); *see also In re Coll. Athlete NIL Litig.*, 2025 WL 1675820, at *22 (N.D. Cal. June 6, 2025) ("Because there is no evidence of collusion here and the requested attorneys' fees are reasonable when compared to the settlement class members' recovery under the [settlement agreement] and other factors discussed above, the Court finds that this factor weighs in favor of granting final approval of the [settlement agreement].") (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) and *Briseno v. Henderson*, 998 F.3d 1014, 1026-28 (9th Cir. 2021)).

In light of AARP's defenses, as well as the fact that a trial date is not set and thus it is unknown when, if any, resolution through trial would occur, the Settlement delivers a timely and substantial recovery for the class. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (settlement amounting to a fraction of the potential total recovery was reasonable given the significant risks of going to trial); *Hendricks v. StarKist Co*., 2015 WL 4498083, at *7 (N.D. Cal. 2015) (settlement representing "only a single-digit percentage of the maximum potential exposure" was reasonable given the risks).

### ii.    Method of Distribution of Settlement Funds.

The process for distributing funds is straightforward and readily accessible to Class Members. Class Members with an Approved Claim are entitled to a *pro rata* share of the Net Settlement Fund. The Claim Form simply requires Claimants to provide a link to their Facebook profile and attest to the fact that they accessed video content on AARP.org while having an active Facebook account. ECF No. 112-1 §§ 3.2-3.3. This information serves as a reasonable proxy for Class Membership when combined with AARP's records and expedites payments to Class Members by avoiding the delay and expense of undertaking a forensic data retrieval exercise over the objections of nonparty Meta.

Class Members are given several payment options to choose from, including PayPal, Venmo, Zelle, ACH, and paper check. To the extent Class Members have questions with the claims-submissions process, they can turn to the FAQ on the settlement website, a toll-free line with a full menu of settlement information, or they can email Simpluris or Class Counsel. Simpluris Decl. ¶¶ 7-9;

20

Grille Decl. ¶¶ 45, 52. Claimants are also given the opportunity to cure defective submissions for a period of 60 days ("Cure Period"). ECF No. 112-1 § 3.5. The method of distribution therefore provides no impediments to getting money into the hands of Eligible Claimants.

### iii.    Attorneys' Fees and Expenses

The parties have reached no agreement regarding the amounts of attorneys' fees, expenses, and service awards to be paid. Grille Decl. ¶ 32; *see, e.g., In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 569-70 (en banc) (rejecting objection because counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). The payment of attorneys' fees, expenses, and service awards, if any, is subject to approval of the Court based on a finding that such amounts are fair and reasonable.[5] Further, consistent with this District's Procedural Guidance for Class Action Settlements, Class Counsel is moving for an award of attorneys' fees thirty-five days prior to the deadline for Class Members to object to the Settlement. *See* ECF No. 119. At the time of submission, there are no objections to the Settlement. Simpluris Decl. ¶ 24. There is thus no aspect of the Settlement Agreement regarding the payment of attorneys' fees and expenses that raises any concern about the reasonableness, fairness, or adequacy of the Settlement.

### iv.    Other Agreements.

The Court is also required to consider "any agreements required to be identified under Rule 23(e)(3)," which requires the parties to identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). There are no other agreements to disclose under Rule 23(e)(3).

### 4.    The Settlement Treats All Class Members Equitably.

Rule 23(e)(2)(D) asks whether "the proposal treats class members equitably relative to each other." The crux of the inquiry is whether the agreement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). The Settlement readily satisfies this requirement because

---

[5] Pursuant to the schedule in the Court's order preliminarily approving the Settlement, Plaintiffs have submitted a motion for attorneys' fees concurrently herewith.

Class Members are each entitled to the same recovery; all Class Members benefit from the non-monetary relief and those who submit a valid claim will receive a proportional share of the Net Settlement Fund. *See* Grille Decl. ¶ 37; ECF No. 112-1 § 3.8; *Hefler*, 2018 WL 6619983, at *12 ("The allocation plan disburses the Settlement Fund to class members on a pro rata basis based on the relative size of the potential claims that they are compromising. This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable.") (citation omitted) (internal quotation marks omitted). The Settlement avoids unnecessary distinctions between Claimants who have suffered nearly identical injuries by distributing an equal share of the Net Settlement Fund to all Class Members with a valid claim, and thus all Class Members are treated equitably. *See Hefler*, 2018 WL 6619983, at *12.

### 5. The Settlement Satisfies the Remaining Ninth Circuit Approval Factors.

In addition to the framework of Rule 23 as amended in 2018, Courts "continu[e] to draw guidance from the Ninth Circuit's factors and relevant precedent," in evaluating a proposed class settlement. *Hefler*, 2018 WL 6619983, at *4; *Churchill*, 361 F.3d at 575 (courts should consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). Many of these factors, such as the strength of Plaintiffs' case, the risk and duration of further litigation, and the amount offered, overlap with the Rule 23(e)(2)(C) factors and are addressed above. The remainder favor final approval as well, as described below:

### i. The Settlement Has Been Well Received

As of November 24, out of the more than 2,934,465 potential Class Members contacted, there were 93 opt-outs and zero objections. Simpluris Decl. ¶¶ 10, 15, 24. In comparison, there have been more than 42,000 Claimants so far, and the Claim period will remain open until December 31. *Id.* ¶ 26. These figures represent a positive response. *See Churchill*, 361 F.3d at 577 (noting a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) ("[T]he indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon

which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."). Plaintiffs will submit updated opt-out, objection, and claim statistics with their reply brief and when submitting their supplemental statement prior to the final approval hearing.

### ii.    Class Counsel Endorses the Settlement

In considering whether to grant final approval, courts afford significant weight to the opinions of experienced class counsel who are familiar with the litigation. *See In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("Courts afford 'great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel is experienced in complex class action litigation and settlement, including in complex consumer cases like this one. Grille Decl. ¶ 56, Ex. 1. Based on this experience, Class Counsel believe the Settlement provides a positive outcome for Class Members and, in light of the uncertainties and risks in continued litigation, recommends its approval.

### iii.    The Presence of a Government Participant

No government entities participated in this litigation.

### D.    The Class Notice Satisfied Due Process and Rule 23.

"A binding settlement must provide notice to the class in a 'reasonable manner'" under Rule 23(c)(2)(B) and 23(e)(1)(B). *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 567 (en banc). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court previously approved the parties' proposed class notice procedures, which used plain language and relied on direct email and mail notice, supplemented with a digital media campaign. ECF

No. 119 at 6-7; *see also* Simpluris Decl. ¶¶ 10-21. To the extent the transmission of email notice resulted in "bounce-backs," the Settlement Administrator made an attempt to send the notice via mail. Simpluris Decl. ¶ 14. The notice program fully complies with Rule 23 and the mandates of due process. *See e.g.*, *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 377 (N.D. Cal. 2021) (approving notice plan involving notice "by email to individuals for whom an email address is available and by postcard to a physical mailing address for those for whom no email address is available"); *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *3 (N.D. Cal. Nov. 19, 2019) (similar); *Aguilar Auto Repair, Inc. v. Wells Fargo Bank, N.A.*, 2025 WL 1753509, at *2 (N.D. Cal. May 23, 2025) (finding a notice plan consisting of "mailing postcard notices to class members' last known addresses, widely distributing notice of the settlement via banner ads on social media sites, and maintaining a website and toll-free phone number that class members could access to obtain additional information" satisfied Rule 23).

The Settlement Administrator executed a thorough notice campaign that resulted in almost 90% of potential Class Members receiving direct notice of the Settlement by email or mail. *See* Simpluris Decl. ¶¶ 10, 15. In addition, on November 17, 2025, the Settlement Administrator sent a reminder email to Class Members who had not submitted a claim form or a request for exclusion. *Id.* ¶ 11. More reminder emails will follow. *Id.* To reach potential Class Members who could not be reached by direct notice, the Settlement Administrator executed a digital advertising campaign, which generated more than 4 million impressions. *Id.* ¶¶ 16-21. The Settlement Administrator estimates that the direct notice and digital advertising campaigns reached more than 99.8% of potential Class Members. *Id.* ¶ 22. To assist potential Class Members and provide information to the largest number of individuals, the Settlement Administrator also maintains the Settlement Website and a dedicated toll-free telephone number and monitored email inbox. *Id.* ¶¶ 7-9. The Settlement Notice thus represents the best notice practicable. *See, e.g., In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *7 (N.D. Cal. Nov. 12, 2019) (finding notice that reached "approximately 77% of class members" satisfied Rule 23 and granting final approval); *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23.") (brackets and internal quotation marks omitted).

24

As there is no alternative method of notice that would be more practicable or likely to notify Class Members, the class notice procedures used here constitute the best practicable notice to Class Members and comply with the requirements of Due Process.

## VI.    **CONCLUSION**

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court enter the proposed order certifying the Settlement Class, appointing Girard Sharp LLP as Settlement Class Counsel, appointing Class Plaintiffs to represent the Settlement Class, and granting final approval of the Class Settlement.

Dated: November 26, 2025                 Respectfully submitted,

                                         */s/ Simon S. Grille*
                                         Adam E. Polk (SBN 273000)
                                         Simon S. Grille (SBN 294914)
                                         Reid Gaa (SBN 330141)
                                         Anthony Rogari (SBN 353784)
                                         **GIRARD SHARP LLP**
                                         601 California Street, Suite 1400
                                         San Francisco, CA 94108
                                         Telephone: (415) 981-4800
                                         Facsimile: (415) 981-4846
                                         apolk@girardsharp.com
                                         sgrille@girardsharp.com
                                         rgaa@girardsharp.com
                                         arogari@girardsharp.com

                                         *Attorneys for Plaintiffs*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 4:22-cv-05499-YGR

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on November 26, 2025, I electronically filed the foregoing document with

3  the Clerk of the Court using the CM/ECF system, which will automatically send notification of the

4  filing to all counsel of record.

5

6                                  /s/ Simon S. Grille
                                   Simon S. Grille

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 4:22-cv-05499-YGR