UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAN MARKELS, ET AL.,**<br><br>     Plaintiffs,<br><br>     vs.<br><br>**AARP,**<br><br>     Defendant. | Case No. 4:22-cv-05499-YGR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**GRANTING IN PART MOTION FOR ATTORNEYS' FEES; AND**<br><br>**JUDGMENT**<br><br>Dkt. Nos. 131, 132 |

The Court previously granted a motion for preliminary approval of the class action settlement between plaintiffs Jan Markels, William Margin, and Lynn Seda, and defendant AARP, a 501(c)(4) nonprofit that advocates for older Americans. (Dkt. No. 119.) Now before the Court are plaintiffs' motions for final approval of the class action settlement (Dkt. No. 131) and for attorney fees, reimbursement of litigation expenses, and service awards (Dkt. No. 132). The Court held a hearing and took arguments from the parties on February 10, 2026.

Having considered the motion briefing, the terms of the Settlement Agreement, and the arguments of counsel, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable. The provisional appointments of the Class Representatives and class counsel are confirmed.

The Motion for Attorneys' Fees, Costs, and Incentive Awards is **GRANTED IN PART**. The Court **ORDERS** that (1) class counsel shall be paid $3,125,000 in attorneys' fees, which is 25% of the settlement fund, and $182,275.46 in litigation costs; (2) named plaintiffs Jan Markels, William

Margin, and Lynn Seda shall each be paid a $7,500 incentive award; and (3) former plaintiff Allen Ziman shall be paid $2,500.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiffs filed the operative putative class action complaint on September 27, 2022 against defendant alleging violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200. (Dkt. No. 1.) Plaintiffs filed their First Amended Complaint ("FAC") on September 19, 2023, adding plaintiff William Martin and more allegations relative to the claims. (Dkt. No. 38.) AARP moved to dismiss the FAC on October 17, 2023. The Court denied the motion to dismiss on December 18, 2023. (Dkt. No. 43.) Plaintiffs moved to voluntarily dismiss former plaintiff Allen Ziman's individual claims, which the Court granted on July 31, 2024. (Dkt. No. 76.) Plaintiffs' Second Amended Complaint, filed July 19, 2024, added plaintiff Lynn Seda to the litigation but otherwise left the allegations and claims asserted against AARP unchanged. (Dkt. No. 75.)

The parties reached a settlement prior to class certification with the assistance of an experienced mediator, the Honorable Jeremey D. Fogel, executed on July 25, 2025. Class counsel filed a motion requesting preliminary approval of a settlement agreement and the Court preliminarily approved the agreement on September 12, 2025. (Dkt. No. 119.) The Settlement Administrator has since implemented the Notice Plan as ordered by the Court.

### B. TERMS OF THE SETTLEMENT AGREEMENT

Under the terms of the Settlement Agreement, defendant will make a $12,500,000, non-reversionary cash payment, for the benefit of Class Members. This amount includes attorneys' fees and costs, the cost of class notice and settlement administration, and plaintiffs' incentive awards.

#### 1. Attorneys' Fees and Costs

Plaintiffs' counsel seek $3,750,000 in attorneys' fees and $182,275.46 in costs awards. (Dkt. No. 141.) The common settlement fund also includes a provision for up to $10,000 to be paid to plaintiffs as an incentive award in exchange for a general release of all claims against defendants.

2

(Dkt. No. 112-1 ¶ 8.6.) Counsel seeks $7,500 to be paid to plaintiffs Jan Markels, William Margin, and Lynn Seda (the "Class Representatives") as well as $2,500 to former plaintiff Allen Ziman.

### 2. Class Relief

Plaintiffs' counsel seeks fees of 30% of the settlement fund. After deducting the requested fees, expenses, incentive awards, and notice and administration expenses, plaintiffs will receive approximately $85 per class member. (Dkt. No. 141.) Claimants will be paid a *pro rata* share of the net class settlement amount. The Settlement Agreement provides that no amount will revert to defendant.

### 3. Cy Pres / Remainder

No *cy pres* award is contemplated by the Settlement Agreement.

**C. CLASS NOTICE AND CLAIMS ADMINISTRATION**

The Settlement Agreement was administered by Simpluris, Inc. Following the Court's preliminary approval and conditional certification of the settlement, the Settlement Administrator's direct notice campaign initially emailed notice to 2,704,164 email addresses and mailed postcard notice to 230,301 valid mailing addresses by November 24, 2025. (Dkt. No. 142 ¶ 7.) Concurrently with this direct notice campaign (mail and email notice), the Settlement Administrator ran a digital notice campaign consisting of clickable digital ads across popular social media platforms and websites. The digital notice campaign resulted in 4,016,900 impressions and 59,181 unique clicks. (Dkt. No. 135 ¶ 21.) The Settlement Administrator calculated that the combined direct and digital campaigns reached over 99.8% of Class Members. (*Id.* ¶ 22.)

The Settlement Administrator also established a settlement website including the settlement notice; the FAC and SAC; procedures for Class Members to submit claims or exclude themselves; a contact information page that includes an address, email, and telephone numbers for the Settlement Administrator; an FAQ page regarding the case and settlement; the Settlement Agreement; and the signed order of preliminary approval.[1] (*Id.* ¶ 7.) The Settlement Administrator also operated a toll-free number for class member inquiries. (*Id.* ¶ 8.)

---

[1] The website is available at https://www.aarpsettlement.com.

Class Members were given until December 31, 2025 to object or to exclude themselves from the Settlement Agreement. (*Id.* ¶ 23.) Out of 2,940,169 potential Class Members, 159 persons filed timely requests to opt out of the Settlement Class as of the December 31, 2025 deadline. (*Id.* ¶ 23); (Dkt. No. 142 ¶¶ 15-16.) The persons who requested exclusion from the Class as of the objection or opt out deadline are attached as Exhibit 1. These persons shall not share in the benefits of the settlement, and this judgment does not affect their legal rights to pursue any claims they may have against AARP. All other members of the Class are hereinafter barred and permanently enjoined from prosecuting any Released Claims against AARP and AARP's counsel in any court of law or equity, arbitration tribunal, or administrative forum.

## II. FINAL APPROVAL OF SETTLEMENT

### A. LEGAL STANDARD

Courts may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the

product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B. ANALYSIS

#### 1. The Settlement Meets the Prerequisites for Certification

As the Court found in its Order granting preliminary approval and conditional certification of the settlement class, the prerequisites of Rule 23 have been satisfied for the purposes of certification of the Settlement Class. (Dkt. No 119.)

#### 2. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class Members of the settlement and their rights to object or exclude themselves. (Dkt. No. 119.) Pursuant to those procedures, the Settlement Administrator implemented the Notice Plan.

The Settlement Administrator mailed the first wave of postcard notices on October 17, 2025. (Dkt. No. 142 ¶ 11.) 5,935 of those postcards were returned to the Settlement Administrator as of

5

January 14, 2026. (*Id.* ¶ 12.) After skip-tracing the addresses, 3,869 notices were re-mailed and 2,066 notices were deemed undeliverable. (*Id.*) On November 3, 2025, the Settlement Administrator mailed a supplemental notice postcard to 36, 693 Class Members for whom email notice was not successfully delivered and a valid mailing address was available. (*Id.* ¶ 13.) 2,484 supplemental notice postcards were returned to Settlement Administrator. (*Id.*) After a computerized skip-trace, the Settlement Administrator re-mailed 1,461 notices to new or updated addresses. (*Id.*) 1,023 of those re-mailed, supplemental postcard notices were deemed undeliverable. (*Id.*) Undeliverable packets did not yield any updated address, notwithstanding the Settlement Administrator's skip-tracing efforts.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### 3. The Settlement is Fair and Reasonable

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats Class Members equitably relative to one another. (Dkt. No. 119.)

The reaction of the class was overwhelmingly positive. The Court received no objections and 159 opt-outs as of the December 31, 2025 deadline. (Dkt. No. 142 ¶¶ 15-16.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper). The plan of allocation is fair and reasonable and treats Class Members equitably.

The Court finds the plan of allocation to be fair and reasonable and to treat Class Members equitably and therefore approves that plan of allocation.

### 4. Objections

There are no objections to the settlement. (Dkt. No. 142 ¶ 16.)

### 5. Certification is Granted and the Settlement is Approved

6

After reviewing all the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper.

### III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

#### A. ATTORNEYS' FEES

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id*. at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id*. at 964.

The Court analyzes an attorneys' fees request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944 45 (citing Vizcaino, 290 F.3d at 1050–51.) Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community'"). Under the percentage-of-the-fund (or "common fund") method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the

percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant."

Class counsel requests an attorneys' fees award of **$3,750,000**, which is 30% of the settlement fund. Based on the time records submitted by counsel, the attorneys' fees sought amount to approximately 1.7 its lodestar of $2,205,812.50. Defendants do not oppose the fees request. (Dkt. No. 132 at 14-15.) Plaintiffs claim hourly rates that are commensurate with their experience and with the legal market in this district. The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market.

Using the percentage-of-the fund method, the Court finds the attorneys' fees sought are too high.

Here, the parties estimated the total settlement value to be $12,500,000. The attorneys' fees requested of $3,750,000 would come to 30% of this total. This is above the Ninth Circuit's 25% benchmark. The Court rarely, if ever approves such a high percentage. While counsel achieved a settlement that is fair, free of collusion, and consistent with plaintiffs' fiduciary obligations to the class, the result is not extraordinary. Further, when presented with an opportunity to make their case for the requested fees at the February 10 final approval hearing, counsel did not provide justification for an extraordinary fees award.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $3,125,000 or 25% of the settlement fund, to be fair, reasonable, and adequate.

**B. COSTS AWARD**

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation

expenses, and provides records documenting those expenses, in the amount of $182,275.46. (Dkt. No. 141.) The Court finds this amount reasonable, fair, and adequate.

### C. INCENTIVE AWARD

The district court must evaluate named plaintiffs' requested awards using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, Class Representatives came forward to represent the interests of over two million others, with very little personally to gain. Class Representatives assisted counsel with the investigation and prosecution of the claims and risked a judgment for attorneys' fees and costs. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others.

Thus, the Court approves the requested $7,500 incentive award payment for plaintiffs Jan Markels, William Martin, and Lynn Seda. The Court also approves the requested $2,500 incentive award payment for former plaintiff Allen Ziman.

### IV. CONCLUSION

Accordingly, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Counsel is awarded $3,125,000 in attorneys' fees and $182,275.46 in litigation costs. Class Representatives are granted incentive awards of $7,500 each and former plaintiff Ziman is granted an incentive award of $2,500.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement for a period of one year.

**It Is Hereby Ordered, Adjudged and Decreed** that final judgment is **Entered** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on September 12, 2025, and this Order. This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than July 31, 2026. The Court **Sets** a compliance deadline on August 7, 2026 on the Court's 9:01 a.m. calendar to verify timely filing of the post-distribution accounting.

**It Is So Ordered**

This terminates Dkt. Nos. 131 & 132.

**Date**: February 20, 2026

_____
**Yvonne Gonzalez Rogers**
**United States District Court Judge**